WILLIAM P. COLE
Attorney for the United States,
Acting under Authority Conferred by 28 U.S.C. § 515
TIMOTHY C. PERRY
ROBERT S. HUIE
California Bar Nos. 248543/237374
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7053
Email: Robert.Huie@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOSE SUSUMO AZANO MATSURA (1),<br>          aka Mr. A, aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>          aka Ravi Singh,<br>ELECTIONMALL, INC. (3),<br>MARCO POLO CORTES (4),<br><br>                    Defendants. | Case No.: 14CR0388-MMA<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS:**<br><br>**(1) FOR DISCOVERY;**<br>**(2) TO BE RELEASED FROM THE DISCOVERY PROTECTIVE ORDER**<br><br>Date:        August 25, 2014<br>Time:        2:00 p.m. |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, William P. Cole, Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515, and Timothy C. Perry and Robert S. Huie, Assistant United States Attorneys, hereby files the above-titled response.

# I

## __INTRODUCTION__

On July 30, 2014, Jose Susumo Azano Matsura ("Azano") filed a second supplemental motion for discovery.  Yet, despite being indicted for campaign finance crimes, Azano makes scarcely any discovery requests related to those charges.  Instead, Azano presumes to lead this Court on a tour of his personal bugbears, claiming that a local energy company is responsible for prompting law enforcement agencies to bully and harass him.  Aside from being untrue, these insinuations are irrelevant.  Indeed, Azano himself fails to articulate how they relate to, much less rebut, the substantial evidence of his guilt.  Because Azano's requests generally fail to meet the applicable standard of materiality, or are otherwise moot, this Court should deny his discovery motion.

Azano also moves this Court to rescind the protective order.  But Azano's claimed basis for the motion—that the Court's order prohibits him from using discovery materials in court—is just wrong.   Principally because the protective order continues to protect uncharged third parties from inadvertent leaks and other mischief, the Court should deny the motion to rescind the protective order.

//

//

//

## II

## STATEMENT OF THE CASE

**A.    Initial Charges against Singh, Cortes and ElectionMall**

On January 17, 2014, a United States magistrate judge authorized two separate complaints against Ravneet Singh ("Singh"), ElectionMall, Inc. ("ElectionMall") and Marco Polo Cortes ("Cortes") charging them, in addition to Ernesto Encinas ("Encinas"), with conspiracy to commit offenses against the United States in violation of Title 18, United States Code, Section 371.  On January 21 and 22, 2014, Singh and Cortes were arraigned and pled not guilty.  Each was later released on bond.

On February 18, 2014, in <u>United States v. Singh et al.</u>, 14CR387-MMA, a federal grand jury returned an indictment against Singh, ElectionMall and Cortes, charging them with conspiracy to commit offenses against the United States in violation of Title 18, United States Code, Section 371.  That same day, each defendant was arraigned and pled not guilty.

**B.    Initial Charges against Azano**

On February 18, 2014, in <u>United States v. Azano</u>, 14CR388-MMA, a federal grand jury returned an indictment against Azano, charging him with one count of making a foreign national donation in violation of Title 2, United States Code, Sections 437g and 441e.  On February 19, 2014, FBI special agents arrested Azano.

On February 20, 2014, Azano was arraigned on the indictment and pled not guilty. That same day, this Court set a motion hearing for April 7, 2014.   Azano was later released on bond.

**C.    Superseding Charges against All Defendants**

On August 12, 2014, in United States v. Azano, 14CR388-MMA, a federal grand jury returned a single superseding indictment against Azano, Singh, ElectionMall and Cortes.

This indictment brought all remaining defendants together under one case, charging them variously with: two counts of conspiracy in violation of Title 18, United States Code, Section 371; one count of making foreign national donations and contributions in violation of Title 2, United States Code, Sections 437g and 441e; one count of making a contribution in the name of another in violation of Title 2, United States Code, Sections 437g and 441f; 20 counts of falsification of documents in violation of Title 18, United States Code, Section 1519; one count of bribery in violation of Title 18, United States Code, Section 201(b); and one count of alien in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(5).   An arraignment is presently set for August 21, 2014 at 1:30 p.m.

**D.    Related Cases Resolved through Plea**

As noted above, on January 17, 2014, a United States magistrate judge authorized a complaint charging Encinas (in addition to Singh and ElectionMall) with conspiracy to commit offenses against the United States in violation of Title 18, United States Code,

Section 371.  On January 22, 2014, Encinas was arraigned and allowed to remain on release pending further proceedings.

On February 13, 2014, in <u>United States v. Encinas</u>, 14CR344-MMA, the United States filed a two-count information against Encinas, charging him with making a false statement to the IRS and conspiracy to commit offenses against the United States.  On March 18, 2014, Encinas pled guilty to both counts.  Encinas's sentencing is currently set for September 22, 2014, before this Court.

On April 10, 2014, in <u>United States v. Chase</u>, 14CR926-DHB-MMA, the United States filed an eight-count information against Marc Alan Chase ("Chase"), charging him with eight misdemeanor counts, including conspiracy in violation of Title 18, United States Code, Section 371; making foreign national contributions in violation of Title 2, United States Code, Sections 437g and 441e; and making a conduit contribution in violation of Title 2, United States Code, Sections 437g and 441f.  That same day, Chase pled guilty to all counts.  Chase's sentencing is currently set for April 7, 2015.

Also on April 10, 2014, in <u>United States v. South Beach Acquisitions, Inc., et al.</u>, 14CR927-MMA, the United States filed a one-count information against South Beach Acquisitions, Inc. and West Coast Acquisitions, LLC, charging them with conspiracy to commit offenses against the United States in violation of Title 18, United States Code, Section 371.  That same day, both companies—of which Chase is managing member—entered into a deferred prosecution agreement.  There is currently a status hearing set on April 11, 2019.

## III

## STATEMENT OF FACTS

**A.**    **Summary of Certain Investigations Referred to in Azano's Motion**

1.    Introduction

In his motion, Azano refers to certain investigations undertaken by the FBI, IRS and Homeland Security Investigations ("HSI").  Throughout his motion, Azano speculates about the origins and purpose of these investigations.  Although these investigations are generally irrelevant to the pending indictment, we will provide a brief outline of them to aid the Court in resolving the instant motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



6. <u>Campaign Finance-Related Investigation</u>

In 2012, during the investigation of Azano's financial transactions, Azano's former accountant informed agents—without being specifically asked about the matter—that Azano's assistant had given him money, simultaneously instructing him to donate it to the mayoral campaign of Bonnie Dumanis. At around this time, a local news publication reported that Azano had funded a pro-Dumanis independent expenditure committee. That same article quoted a political consultant as saying Azano had a "green card," which, agents discovered, was untrue. Later, the FBI opened an investigation into campaign

finance and other violations.  This investigation resulted in the charges reflected in the pending indictment against Azano, Singh, ElectionMall and Cortes.

## B.  The Instant Charges

Through investigation, the FBI, IRS and SDPD developed substantial evidence that Azano, Singh, ElectionMall and Cortes conspired to commit campaign finance crimes. The conspiracy was quite successful.  As a result of the coconspirators' efforts, Azano became one of San Diego's major sources of campaign cash, secretly donating more than $600,000 to a series of local and federal campaigns during the 2012 primary and general election cycles.  Azano, however, was a foreign national, and each dollar he gave transgressed the federal prohibition against foreign national donations to American electoral campaigns.

The coconspirators were well aware their conduct was illegal.  To cover it up, they made sure never to make a legitimate direct donation, instead running the gamut of secret campaign finance techniques.  These techniques ranged from the rudimentary (handing out petty cash in a parking lot to straw donors) to the sophisticated (transmitting cash from a Mexico-based company to Washington, D.C.-based ElectionMall, which in turn performed in-kind services for campaigns).  Effective though they were, these various techniques violated several federal laws.  Not only did the coconspirators make illegal donations by a foreign national in violation of Title 2, United States Code, Section 441e, Azano and Cortes also made a straw contribution in connection with federal campaigns, in violation of Section 441f—and all the coconspirators participated in the repeated

falsification of campaign records, in violation of Title 18, United States Code, Section 1519.

Not content to corrupt San Diego's electoral process, Singh went even further, bribing a federal official for classified information on a business rival.  In consummating the bribe, Singh flew to San Diego and met with a person he thought was a corrupt DEA agent in a parking lot, ultimately exchanging $1,000 cash for an envelope.  Later, under video surveillance, Singh opened the envelope and expressed satisfaction with its contents.  For his part, Azano illegally possessed a loaded semiautomatic pistol at a house in Coronado.

We otherwise incorporate by reference the allegations in the indictment as part of this Statement of Facts.

## IV

## RESPONSE

### A.    The Law Governing Criminal Discovery

1.    Obligations under Brady and Giglio

Generally, prosecutors must disclose evidence "favorable to an accused upon request . . . where evidence is material either to guilt or to punishment."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  As part of this general rule, prosecutors must also disclose "evidence affecting credibility" of witnesses.  Giglio v. United States, 405 U.S. 150, 154 (1972).  Such "evidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding

would have been different."  Valdovinos v. McGrath, 598 F.3d 568, 577 (9th Cir. 2010) (Citing Cone v. Bell, 556 U.S. 449, 469-70 (2009)).  While a defendant need not show the evidence would change his verdict, he must at least show suppression of the sought-after evidence would "undermine[] confidence in the outcome of the trial."  United States v. Jernigan, 492 F.3d 1050, 1055 (9th Cir. 2007) (en banc).  Brady's materiality requirement also contains an evidentiary requirement: "To be considered material under Brady, the undisclosed, favorable evidence must either be admissible exculpatory evidence or be [not-necessarily-admissible] impeachment evidence."  United States v. Olsen, 704 F.3d 1172, 1183-84 (9th Cir. 2013) (internal quotations and citations omitted); cf id. (noting that the Ninth Circuit has not held that "[i]nadmissible evidence that could have led to the discovery of admissible evidence" qualifies as "material" under the Brady standard).  The government's obligations are self-executing, but in the context of a motion to produce discovery, the defendant bears the burden: "The proponent of a Brady claim—i.e., the defendant—bears the initial burden of producing some evidence to support an inference that the government possessed or knew about material favorable to the defense and failed to disclose it."  United States v. Price, 566 F.3d 900, 910 (9th Cir. 2009).

Though important, the defendant's right to discovery is not unlimited.  The United States Supreme Court has emphasized that "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  More particularly, "[i]n a response to a request for exculpatory evidence, the prosecution does not have a constitutional duty to disclose every bit of

information that might affect the jury's decision." <u>United States v. Gardner</u>, 611 F.2d 770, 774-75 (9th Cir. 1980). Rather, "it need only disclose information favorable the defense that meets the appropriate standard of materiality." <u>Id</u>. In resolving such questions, a trial judge should apply a commonsense test, using "informed discretion, good sense and fairness." <u>Alderman v. United States</u>, 394 U.S. 165, 185 (1969) ("None of this means that any defendant will have unlimited license to rummage in the files of the Department of Justice."); <u>see</u> <u>also</u> <u>United States v. Mohamed</u>, 410 F. Supp. 2d 913, 916 (S.D. Cal. 2005) (Houston, J.) (holding that the United States need not produce materials "devoid of exculpatory matters" and "not relevant to the pending charges.") Perhaps needless to say, "[t]he government has no obligation to produce information which it does not possess or of which it is unaware." <u>Sanchez v. United States</u>, 50 F.3d 1448, 1453 (9th Cir. 1995) (and collecting cases). Similarly, "[<u>Brady</u>] does not require the government to create exculpatory material that does not exist." <u>United States v. Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980).

> 2.   <u>Obligations under Federal Rule of Criminal Procedure 16</u>

Although not of constitutional dimension, Federal Rule of Criminal Procedure 16 also helps govern prosecutors' discovery obligations. Under Rule 16, prosecutors must produce certain enumerated categories of information—generally upon a defendant's request—as well as any item "material to preparing the defense." Rule 16(a)(1)(E)(i).

Although in some ways "broader than <u>Brady</u>," <u>United States v. Muniz-Jaquez</u>, 718 F.3d 1180, 1183 (9th Cir. 2013), Rule 16 is in other ways more limited. For instance,

14

Rule 16 only applies to "defenses in response to the Government's case in chief." United States v. Armstrong, 517 U.S. 456, 462 (1996); United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) (holding that Rule 16 limits discovery to information "relevant to the development of a possible defense").   In other words, a defendant may only use Rule 16 to obtain information on "the narrower class of 'shield' [defenses], which refute the Government's arguments that the defendant committed the crime charged."   Id. Contrariwise, a defendant may *not* use Rule 16 to obtain information on "sword" claims, such as accusations of selective prosecution, or similar attacks.  Id. at 463.  In addition, by its own explicit terms, Rule 16(a)(2) does not authorize the discovery or inspection of items akin to work product, such as "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent . . . ."

Just as with Brady, proponents of a Rule 16 request bear the burden.  To prevail in a Rule 16 request, a defendant "must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense."   Muniz-Jaquez, 718 F.3d at 1183 (Citing United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010)).

//

//

//

**B.**   **This Court Should Deny Azano's Motion for Discovery**

This Court should deny Azano's motion for discovery because he either fails to demonstrate materiality, or requests items that he has already received or will receive at the appropriate time.  We address each of his requests in turn.

**Requests A(1-3): "Discovery Needed for Recusal Motion . . ."**

Azano asks the Court to compel discovery concerning the reason that United States Attorney Duffy is recused from this case, including the "written recusal request memorandum" to the General Counsel's Office and any other memoranda or evidence of any "conflict."  For several reasons, the Court should deny this request.

First, as noted above, Rule 16 limits discovery to information "relevant to the development of a possible defense."  Mandel, 914 F.2d at 1219; Armstrong, 517 U.S. at 462 (same).  Thus, "defense" refers to "shield" claims; it does not encompass any claim that is a "sword," challenging the prosecution's conduct of the case.  Armstrong, 517 U.S. at 462-63; United States v. Chon, 210 F.3d 990, 995 (9th Cir. 2000).  Furthermore, "conclusory allegations of materiality" do not suffice; "a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense."  Mandel, 914 F.2d at 1219.

Here, Azano does not—and cannot—demonstrate how the reason for the United States Attorney's recusal is material to the defense.  The issue of recusal or non-recusal is not a shield to the United States' case-in-chief or any charge against Azano, but rather a

"sword" claim, challenging the prosecution's alleged conduct of the case. Azano is not entitled to discovery on such a theory. He cites no authority holding otherwise.

Second, Azano's discovery request is a prototypical fishing expedition, based on "mere insinuation and vague suggestion." United States v. Debolt, No. 09CR24, 2010 U.S. Dist. LEXIS 112558, *4 (N.D.W.V. Oct. 21, 2010). The United States Attorney is already recused, so the reason for the recusal does not matter.

Third, not only is Azano's speculation factually irrelevant, it is also irrelevant as a matter of law. "[T]here is no rule or controlling authority that compels the vicarious disqualification of a prosecutors' office based on an individual attorney's personal conflict." United States v. Nosal, No. 08CR0237, 2009 U.S. Dist. LEXIS 14820, *8 (9th Cir. Feb. 25, 2009) (rev'd on other grounds). "In general, Ninth Circuit authority has refused to extend cases that apply the imputed disqualification rule to private law firms equally to government agencies." Id.; see also United States v. Lorenzo, 995 F.2d 1448, 1453 n.1 (9th Cir. 1993) ("The general trend of the law has been to limit the applicability of the vicarious disqualification rules to private organizations."); United States v. Bolden, 353 F.3d 870, 876 (10th Cir. 2003) ("disqualifying an entire United States Attorney's Office is almost always reversible error regardless of the underlying merits of the case"). In short, Azano's speculation about the United States Attorney's recusal is a road leading to nowhere.

Fourth, internal communications between the United States Attorney's Office and its General Counsel's Office are protected by the attorney-client privilege, the attorney

work product doctrine, the deliberative process privilege, and Rule 16(a)(2) of the Federal Rules of Criminal Procedure.  See, e.g., Center for Medicare Advocacy, Inc. v. HHS, 577 F. Supp. 2d 221, 237 (D.D.C. 2008) (the attorney-client privilege functions to protect communications between government attorneys and their client agencies or departments much as it operates to protect attorney-client communications in the private sector"); Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (the deliberative process privilege protects materials bearing on the formulation or exercise of agency policy-oriented judgment, including information that makes recommendations or expresses opinions on legal or policy matters); Fed. R. Crim. P. 16(a)(2) ("this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government attorney in connection with investigating or prosecuting the case").

**Request B(1): "Written or recorded communications between any Jones Day Attorney . . ."**

Azano asks the Court to compel discovery for information "needed for a dismissal motion and to discredit the government's investigation at trial."  To the extent Azano re-invokes the need for discovery related the United States Attorney's recusal, the Court should deny the request for substantially the reasons discussed in response to requests A(1-3).  To the extent Azano requests information for the purpose of "discredit[ing] the government investigation at trial," the Court should deny Azano's for at least three reasons.

First, as set forth above, it is Azano's burden to articulate why discovery is material to the defense.  Price, 566 F.3d at 910.  In meeting the burden, Azano must establish "a reasonable probability" that the evidence would change the outcome of his proceeding. Valdovinos, 598 F.3d at 577.  Here, however, Azano has not—and indeed, cannot—show materiality.  The instant indictment alleges several counts of campaign finance fraud, plus one bribery charge and one firearms charge.  It has nothing to do with Azano's litigation against Sempra, and Azano fails to substantiate any connection between Sempra and the charges against him.  To the contrary, the record shows that his arrest arose from incriminating evidence against him, after various law enforcement agencies undertook investigations into his conduct for routine reasons.  In short, Azano proposes a fishing expedition to "rummage in the files of the Department of Justice," Alderman, 394 U.S. at 185, for materials "devoid of exculpatory matters" and "not relevant to the pending charges." Mohamed, 410 F. Supp. 2d at 916.  Azano is not entitled to such discovery.

Second, Azano fails to show the admissibility of the items he requests.  "To be considered material under Brady, the undisclosed, favorable evidence must either be *admissible* exculpatory evidence or be [not-necessarily-admissible] impeachment evidence." Olsen, 704 F.3d at 1183-84. (Emphasis added.)  Yet, as noted above, Azano's speculation about Sempra and other bugbears has nothing to do with the charges against him, making the admissibility of such information doubtful.  If Azano seeks merely impeaching evidence, he has failed to show whom he would impeach, and how his paranoid fables—so attenuated from this case—could properly be used to impeach them.

Thus, the items Azano seeks are not only immaterial, they are also inadmissible, and Azano's request should be denied.

Third, to the extent Azano seeks this information under Rule 16, he is not entitled to it as a matter of law.  Under Rule 16, a defendant may only seek discovery on so-called "shield" defenses—"defenses in response to Government's case in chief"—and not "sword" defenses, such as those that seek dismissal of the indictment for inappropriate government conduct.  <u>Armstrong</u>, 517 U.S. at 462.  As this request is inappropriate under any standard, the Court should deny the request.

**Request B(2): "Any written or recorded communications between . . . the 'prosecution team' . . . and Sempra"**

The Court should deny this request for substantially the same reasons discussed in response to request B(1).

**Request B(3): "Any written or recorded communications between Sempra and SDPD . . . any other law enforcement agency . . . and any other third party"**

The Court should deny this request for substantially the same reasons discussed in response to request B(1).

//

//

//

**Request B(4): "Any documents or other information about the 'Source of Information . . .'"**

Azano asks this Court to compel discovery of information about the "Source of Information" relied upon by DHS in its investigation of Mr. Azano. The Court should deny this request because Azano fails to meet his heavy burden in demonstrating the need for a confidential informant's identity.

It is well-settled the "government has a qualified privilege to withhold from disclosure the identity of persons who furnish information" to law enforcement. United States v. Amador-Galvan, 9 F.3d 1414, 1417 (9th Cir. 1993). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." Roviaro v. United States, 353 U.S. 53, 59 (1957); United States v. Henderson, 241 F.3d 638, 645 (9th Cir. 2001) (collecting cases). Generally, an informant's identity need only be revealed if it would "be relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro v. United States, 353 U.S. at 60-61. The defendant "bears the burden of demonstrating the need for disclosure, and a mere suspicion that the information will prove helpful will not suffice." United States v. Williams, 898 F.2d 1400, 1402 (9th Cir. 1990) (citations omitted). Even where the defendant "makes a minimal threshold showing that disclosure would be relevant to at least one defense," the district court nevertheless "must hold an in camera hearing" to balance the defendant's and government's interests in disclosure." Henderson, 241 F.3d at 645 (internal quotation marks omitted).

Other than refer obliquely to "the 'Source of Information,'"Azano provides no other details, making it impossible to determine what exactly Azano seeks.  Over the years, several sources have yielded information on Azano's activities, including alleged connections to drug smuggling, money laundering, tax, structuring and campaign finance crimes.  Given the relatively narrow charges in this case, not all these sources can be relevant to the instant case, and Azano does nothing to meet his "burden of demonstrating the need for disclosure" beyond "mere suspicion."  Williams, 898 F.2d at 1402.  The Court should deny the request.

**Request B(5): ". . . Henthorn Review . . ."**

The Court should deny this request as not yet ripe.  The United States intends to abide by its discovery obligations under United States v. Henthorn, 931 F.3d 29, 31 (9th Cir. 1991) at the appropriate time and in the appropriate manner.

**Request B(6): "Reports, memoranda, and any evidence that shows Sempra's involvement in the LNG issues in Mexico . . ."**

Similar to requests B(1-3), this request fails to make the requisite showing of materiality under Brady.  Nor does Azano demonstrate the admissibility of the requested information.  Nor can Azano validly make this request under Rule 16, as it does not appear to pertain to a "shield" defense.  Armstrong, 517 U.S. at 462.  Finally, Rule 16 specifically excludes many of the requested items—such as internal memoranda—from discovery.  See Fed. R. Crim. P. Rule 16(a)(2) ("[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents

made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.")

### Request B(7): "Any evidence of government negligence in the investigation of Azano . . ."

The Court should deny this request for at least three reasons.  First, it is unworkably vague.  Second, whatever is intended by this request, Azano fails to meet his burden.  For substantially the same reasons discussed in response to requests B(1-3), this request falls short of <u>Brady</u>'s materiality standard.   Third, Azano has failed to demonstrate the admissibility of the requested items.

### Request C(1): "Correspondence between agents and officers . . . regarding the preparation of any warrant application"

The Court should deny this request because it seeks the rough equivalent of a litigant's work product.  Rule 16 specifically excludes such items from discovery.  <u>See</u> Fed. R. Crim. P. Rule 16(a)(2) ("[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.")

Of course, to the extent correspondence between agents and others constitutes exculpatory information under the <u>Brady</u> standard, the United States will (or has) produced it.

//

**Request C(2): "Notes or reports prepared and relied upon by any agents in preparing any warrant application"**

The United States will produce (or has produced) these items to the extent they meet the applicable standards under <u>Brady</u> and the Jencks Act.

**Request C(3): ". . . provenance and other information related to the email chain referenced [in Azano's Motion]. . ."**

Azano requests "information . . . regarding the provenance and other information related to the email chain referenced by the government" in a miscellaneous filing docketed at 11MC0853.   Azano contends this is "needed for Fourth Amendment motions."   The Court should deny this request for at least two independently sufficient reasons.

First, there is no valid Fourth Amendment challenge to the methods used by private parties to obtain information later given to the United States.  <u>Burdeau v. McDowell</u>, 256 U.S. 465, 475 (1921); <u>Johnston v. Earle</u>, 245 F.2d 793, 796 n.5 (9th Cir. 1957) ("For more than one hundred years . . . one of the principles of our Constitution has been that these (the Fourth and Fifth) Amendments protect only against invasion of civil liberties by the Government whose conduct they alone limit.") (Internal quotations and citations omitted.) As noted in Azano's own quote of the document, federal authorities obtained the email chain from a private party.

Second, Azano's motion specifically calls for discovery on an "Application" with case number 11MC0853.  As docketed, this application is a request under Title 18, United

States Code, Section 2703.  Contrary to Azano's implicit assumption, suppression is not available, even where such applications are defective.  <u>United States v. Smith</u>, 155 F.3d 1051, 1056 (9th Cir. 1998) ("the Stored Communications Act [at § 2701 et seq.] does not provide an exclusion remedy."); <u>United States v. Clenney</u>, 631 F.3d 658, 667 (4th Cir. 2011) (same); <u>United States v. Navas</u>, 640 F. Supp. 2d 256, 262 (S.D.N.Y. 2009) (collecting case).

Since Azano cannot validly mount a Fourth Amendment challenge to this application, his discovery requests fail to meet the materiality standard of <u>Brady</u>.  The Court should deny this request.

### Request C(4): "Any materials or correspondence related to any electronic surveillance of Mr. Azano, his family . . . by any agency . . ."

Azano requests any "materials or correspondence" related to any electronic surveillance of him, his family, his colleagues, or his businesses conducted by any agency, including the NSA, CIA, FBI, DHS, or the U.S. Attorney.  The Court should deny this request.

First, Azano provides no basis for the suggestion that either the NSA or the CIA has any discoverable information.  The prosecution team has no reason to believe that any part of the United States' evidence in this case was obtained directly or indirectly from any electronic surveillance conducted by either agency.  Moreover, neither the NSA nor the CIA "is acting on the government's behalf in this case." <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995).  Thus, the government has neither a constitutional obligation under <u>Brady v.</u>

Maryland, 373 U.S. 83 (1963), nor an obligation under Federal Rule of Criminal Procedure 16 to search for or produce the requested information.  See, e.g., United States v. Zuno-Arce, 44 F.3d 1420, 1427 (9th Cir. 1995) (the prosecutor is deemed to have knowledge of and access to anything in "the custody or control of any federal agency *participating in the same investigation of the defendant*") (emphasis added; citation omitted); United States v. Merlino, 349 F.3d 144, 154 (3d Cir. 2003) (the government had no duty to learn of incarcerated witnesses' recorded telephone calls maintained by the Bureau of Prisons when that agency had no involvement in the investigation or prosecution of the case); United States v. Morris, 80 F.3d 1151, 1169 (7th Cir. 1996) (affirming district court's finding that "Brady did not require the government here to seek out allegedly exculpatory information in the hands of the Office of Thrift Supervision ('OTS'), the Securities Exchange Commission ('SEC'), or the Internal Revenue Service ('IRS') when it had been unaware of the existence of that information" because "none of those agencies were part of the team that investigated this case or participated in its prosecution"); United States v. McDavid, 2007 WL 926664, at *2 (E.D. Cal. March 27, 2007) ("Although defendant discusses the NSA's activities at length, he has failed to link them to this prosecution or to make any sort of showing that the prosecutor has knowledge of and access to any results of the NSA's surveillance.").

Second, as for the NSA, CIA, and DHS, Azano's request is purely speculative.  The Constitution "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the government . . . .'"  United States

v. Mayes, 917 F.2d 457, 461 (10th Cir. 1990) (quoting Jencks v. United States, 353 U.S. 657, 667 (1957)).  And, to obtain discovery under Rule 16, "a defendant must make a prima facie showing of materiality."  United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990).  "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense."  Id. Azano has presented no facts.

Third, as for the FBI, the United States is aware of its discovery obligations and intends to comply with them.  The United States has already provided Azano with discoverable information concerning electronic surveillance conducted by the FBI under Title III in connection with this case.  However, Azano's vague reference to "any electronic surveillance" of "his family," "his colleagues," or "his businesses" is unhelpful. If he has specific facts tending to show that the FBI (or HSI, for that matter) possesses electronic surveillance of some specific, named person or entity, and also facts establishing a "prima facie showing of materiality" with respect to such surveillance, Mandel, 914 F.2d at 1219, he should state them.  His motion fails entirely to do so.

### Request D(1):  "Any evidence of investigative incompetence or worse . . ."

Azano requests "evidence of investigative incompetence or worse."  The Court should deny this request for at least four reasons.

First, it is unworkably vague.  Second, whatever is intended by this request, Azano fails to meet his burden.  In conclusory fashion, Azano has labeled his request "General

Discovery Needed," but in doing so fails to show materiality.   <u>Valdovinos</u>, 598 F.3d at

577.  Third, Azano has failed to show how this evidence would be admissible, or how (or

even whom) it would be used to impeach.   Fourth, to the extent this request seeks

discovery under Rule 16, it is unavailable as a matter of law, as the request's wording—

vague though it may be—seems to contemplate a "sword" defense, evidence of which

may not be given under Rule 16.  <u>Armstrong</u>, 517 U.S. at 462.

### Request D(2): "Rough notes of any interviews . . . ."

The Court should deny this request as moot.  The United States will produce (or has

produced) all recorded statements by the defendants.   In addition, the United States

intends to produce prior witness statements, whether written or recorded, consistent with

the Jencks Act, 18 U.S.C. § 3500, and the <u>Brady</u> standard.

### Request D(3): "Any . . . evidence of corrupt activity by Encinas"

The Court should deny this request as moot.  The United States will produce (or has

produced) this material.

### Request D(4): "Any . . . evidence related to promises made to Encinas and Chase to not prosecute them for additional crimes"

The Court should deny this request as moot.  The United States will produce (or has

produced) this material to the extent they meet the applicable standards under <u>Brady</u> and

the Jencks Act.

//

//

**Request D(5): "Any communications between . . . Encinas and any political or elected official"**

The Court should deny this request as moot, and otherwise overbroad.  The United States will produce (or has produced) communications that meet the <u>Brady</u> standard or fall within the parameters of the Jencks Act, but it may refrain from producing such communications otherwise.  Of course, "[t]he government has no obligation to produce information which it does not possess or of which it is unaware."  <u>Sanchez</u>, 50 F.3d at 1453.

**Request D(6): "Any . . . information related to any 'Sources of Information' referenced in any investigative report or affidavit"**

The Court should deny this request for substantially the same reasons identified in the United States' discussion of Request B(4), above.

**Request D(7): "Any evidence related to . . . a 'clearance' for Mr. Azano to sell United States technologies overseas"**

The Court should deny this request as unworkably vague.  In addition, the Court should deny this request because it fails to demonstrate any relevance, let alone materiality, to a defense in this case.

//

//

//

29

**Request D(8): "Any press releases by any government agency regarding Mr. Azano or any related defendant . . . ."**

The Court should deny this request; press releases, by their nature, are publicly available.  The United States will, however, endeavor to point out to Azano where those press releases can be found online.

**Request D(9): "Any materials related to any agreements . . . between Chase and Mr. Azano"**

The Court should deny this request as moot.  The United States will produce (or has produced) this material to the extent is satisfies the Brady standard.  Of course, "[t]he government has no obligation to produce information which it does not possess or of which it is unaware."  Sanchez, 50 F.3d at 1453.

**Request D(10): "Any correspondence between government counsel and counsel for any government witness"**

The Court should deny this request as moot.  The United States will produce such material, if it exists and if it reflects substantive communications that satisfy the Brady standard.

**C.    This Court Should Deny Azano's Motion to Be Released from the Protective Order**

Azano moves this Court to rescind its protective order.  This Court should deny the motion principally because the protective order continues to preserve the rights of uncharged individuals while allowing the defendants to defend themselves in court.

As a preliminary matter, in making his motion, Azano relies on the erroneous claim that "[t]he defense is not allowed to use the actual documents provided in discovery in any proceeding." (Motion, 29.) Not true. The protective order provides that the defense may publicly file any document upon a successful motion to unseal and advance notice to the United States. (Docket No. 18, page 2.) Thus, the protective order does not impede Azano's defense, and he gives no other reason for the Court to rescind it.

Meanwhile, the sensitive nature of the discovery materials requires that the protective order remain in effect. As set forth in the unopposed motion for a protective order, under Federal Rule of Criminal Procedure 16(d), a district court may limit the dissemination of discovery material. "In addition, the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure . . . ." Alderman, 394 U.S. at 185. In this case, investigators used some of the most robust available techniques to gather information—including a wiretap, covert audio- and video-recordings, search warrants and grand jury subpoenas seeking documents and testimony. Through these efforts, the United States collected substantial evidence against the charged defendants, while also gathering information about uncharged individuals that is at least embarrassing, and possibly incriminating. In the spirit of broad and early discovery, nearly all of this information has been turned over to the defendants in this case. This does not mean, however, that any defendant should be free to publicly disseminate this sensitive information, or to use it for any purpose other than to defend his case.

Azano's own counsel has provided an example of the mischief that can inadvertently result in the absence of a protective order. On June 2, 2014, Azano's counsel scheduled an emergency hearing with this Court. Speaking in open court, counsel referred to a "letter . . . received in discovery," claiming he had "received numerous press calls regarding that letter today because it is relevant to an election that is tomorrow." Counsel then asked the Court to modify the protective order so that he could release the letter—which bore the names of at least two uncharged individuals—to the news media. Ultimately, this Court denied the motion. While the United States does not question counsel's motivations in scheduling the June 2 emergency hearing, that hearing exemplified the continuing need for a protective order. Without the protective order, there would be an increased risk that sensitive materials would find their way into the public domain for reasons totally unrelated to the adjudication of this case, and to the detriment of uncharged individuals. Accordingly, this Court should deny Azano's motion; the protective order should remain in effect.

//

//

//

# V

## <u>CONCLUSION</u>

The United States respectfully requests that this Court deny Azano's motions as set forth above.

DATED:  August 18, 2014              Respectfully submitted,

                                     WILLIAM P. COLE
                                     Attorney for the United States,
                                     Acting under Authority Conferred by 28
                                     U.S.C. § 515

                                     <u>/s/ Timothy C. Perry</u>
                                     TIMOTHY C. PERRY
                                     ROBERT S. HUIE
                                     Assistant U.S. Attorneys

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 14CR0388-MMA |
| Plaintiff, | |
| v. | CERTIFICATE OF SERVICE |
| JOSE SUSUMO AZANO MATSURA (1),<br>    aka Mr. A, aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>    aka Ravi Singh,<br>ELECTIONMALL, INC. (3),<br>MARCO POLO CORTES (4), | |
| Defendants. | |

IT IS HEREBY CERTIFIED that:

I, Timothy C. Perry, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the above-titled filing on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

(1)   Knut S. Johnson
(2)   Michael Lipman and Jason Ohta
(3)   Frank Vecchione
(4)   Nancy Rosenfeld

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 18, 2014.

/s/ Timothy C. Perry
TIMOTHY C. PERRY