KNUT S. JOHNSON (CSB 125725)
EMERSON WHEAT (CSB 277456)
LAW OFFICE OF KNUT S. JOHNSON
550 West C Street, Suite 790
San Diego, California 92101
(619) 232-7080 (Phone)
(619) 232-7324 (Fax)
knut@knutjohnson.com

JOHN C. LEMON (CSB 175847)
LAW OFFICES OF JOHN C. LEMON, APC
1350 Columbia Street, Suite 600
San Diego, California  92101
(619) 794-0423
john@jcl-lawoffice.com

Attorneys for JOSE SUSUMO AZANO
MATSURA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, | CASE NO. 14-cr-0388-MAA |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO QUASH RULE 17(C) SUBPOENAS FILED BY SEMPRA ENERGY AND JONES DAY** |
| vs. | |
| JOSE SUSUMO AZANO MATSURA, | |
| Defendant. | |

## TABLE OF CONTENTS

I. <u>INTRODUCTION</u>…………………………………………….................1

II. <u>FACTUAL BACKGROUND</u>……...……………….....……………………......3

   A. Litigation with Sempra Over Real Estate
     in Ensenada and the DOJ's Investigation of Sempra
     Under the Foreign Corrupt Practices Act……………………….........3

   B. The FBI's Investigation of Sempra Under the Foreign
     Corrupt Practices Act ………………………………………………………4

   C. The Government's Rebound Investigation of Mr. Azano…………....7

     *1. AUSA Perry's First Application for Disclosure of Email Subscriber
     Information……………………………………………………………………..7*

     *2. The Government Used the Hidden Email to Convince This Court to
     Allow the Government to Obtain Private Information……..………....10*

       a. The Wiretap Applications…………………………….....11

       b. The Sneak and Peek Warrant…………………………...12

       c. The Search Warrant…………………………………….....13

III. <u>THIS COURT SHOULD NOT QUASH THE SUBPOENAS</u>………....14

   A.   The   Subpoenas   Seeks   Materials   Relevant   to   Suppression

Motions.......................................................................................................14

   B. The Subpoenas Specify Materials the Government Has Referenced

in Pleadings…………………………….…………………………………………17

     *Jones Day*………………………………………………………...18

     *Sempra*…………………………………………………………..20

   C. Compliance Will Be Simple for the Non-Parties…..………....21

   D. Privilege Issues…………………………………….………22

IV. <u>CONCLUSION</u>…………………………………………………....23

# I.

## __INTRODUCTION__

Mr. Azano has subpoenaed items that are important for, among other things, his pending motions to suppress evidence and dismiss.  *See*, Docket Entries 106-113.  Mr. Azano argues in those motions that the wiretap evidence in this case should be suppressed because the government misled the court, failed to establish probable cause, and failed to prove necessity.  Mr. Azano also moved for a hearing under *Franks v. Delaware*,  483 U.S. 154 (1978).  *See*, Docket Entry 110-1.  The subpoenaed materials will, among other things, help Mr. Azano prove that the government omitted important information from affidavits in support of wiretaps and searches.  Such evidence will also be relevant for future motions to suppress.

As discussed below, the Federal Rules of Evidence do not apply at a suppression hearing.  At such a hearing, Mr. Azano will attempt to prove that the government hid much of what it knew about Mr. Azano from the court when it applied for a wiretap, thus requiring suppression. Specifically, the government hid from the court Sempra's investigation of Mr. Azano (which is referenced in passing in other government pleadings).  None of that investigation was shared with the court in the wiretap applications, in violation of Title III and the Fourth Amendment. Also, none of that information was presented to the district court when it considered a discovery motion a year ago.

Thus, the subpoenaed materials are material, relevant, and admissible at the motion to suppress.[1]  Furthermore, the subpoenas are

---

[1]   This is the standard suggested by the non-parties.  As discussed below, that standard does not apply in this case and the subpoenaed items are also admissible

*(Footnote cont'd on next page)*

-   14-cr-0388-MAA

quite specific.  The non-party witnesses complaints notwithstanding, they know precisely what the subpoenas have asked for: an email chain they shared with the government to convince the government to prosecute Mr. Azano and the investigation they shared with the government for the same purpose.

Finally, for a Fortune 500 company and one of the world's largest and most prestigious law firms to complain that finding the documents would be "burdensome and oppressive" is absurd.  The government has identified the materials, the non-parties know where the materials are, and the non-parties should produce them.  There is nothing burdensome and oppressive about producing documents in a criminal case that the subpoenaed parties provided to the government to start the criminal case.

Mr. Azano will argue in future motions to suppress and dismiss that government misconduct, negligence, and ineptitude warrant relief.  If there is a trial, he will also argue that government conduct (whether negligent or intentional) creates a reasonable doubt in this case and impeaches the testifying agents and officers.  *See, e.g. Kyles v. Whitley*, 514 U.S. 419, 446-454 (1995) (discrediting the caliber of a police investigation is exculpatory and such evidence must be disclosed under *Brady v. Maryland*, 373 U.S. U.S. 83 (1963).  As an independent basis, under any standard, the subpoenaed materials should be produced for these reasons too.

---

*(Footnote cont'd from previous page.)*

evidence at trial.  Further, the failure to order their production would violate the Confrontation Clause, the Compulsory Process Clause, the Due Process Clause, and the Supreme Court holding in *Kyles v. Whitely*, 514 U.S. 419 (1995).

## II.

## FACTUAL BACKGROUND

On August 12, 2014, the grand jury returned a superseding indictment, consolidating Mr. Azano's case with codefendants Ravneet Singh, Electionmall, Inc., and Marco Polo Cortes.[2]  The superseding indictment also alleged additional violations of campaign-finance regulations, as well as a single charge of being an "alien in possession of a firearm."[3]

Mr. Azano has moved to dismiss the indictment and to suppress wiretap evidence at a hearing recently changed from July 10, 2015 50 July 17, 2015 upon the Court's own motion.

### A.   Litigation with Sempra Over Real Estate in Ensenada and the DOJ's Investigation of Sempra Under the Foreign Corrupt Practices Act

Litigation erupted in Mexico when Sempra claimed to have title to land owned by a man named Ramon Sanchez Ritchie.  Sanchez Ritchie maintained that Sempra had "implemented secret schemes to fraudulently acquire possession" of his property, including the attempted bribery of Mexican officials.[4]  Of significance here, Mr. Azano joined the fray on the side of Sanchez Ritchie, providing capital to support his litigation.  After Sanchez Ritchie sued Sempra in federal district court in San Diego, Sempra counter-claimed on February 21, 2013 and added Mr. Azano as a defendant, alleging violations of RICO and the Foreign Corrupt Practices Act.[5]

---

[2]   CR 42.

[3]   *See* 18 U.S.C. § 922(g)(5)(B).

[4]   10cv1513-CAB CR 1 at 7-8.

[5]   10cv1513-CAB CR 74.

The acts alleged by Sempra in their (later dismissed) civil lawsuit against Mr. Azano included specific allegations of threats and extortion that were earlier set out in sealed government pleadings, which remain sealed.  U.S. District Judge Cathy A. Bencivengo dismissed Sempra's claims against Mr. Azano with prejudice on October 15, 2013.[6]

**B.   The FBI's Investigation of Sempra Under the Foreign Corrupt Practices Act**

In November 2010, Sempra came under significant scrutiny by the *San Diego Union Tribune* and "several other media outlets" as a result of a whistle-blower complaint filed by a former employee, Rodolfo Michelon.[7] In substance, Michelon stated that he was instructed by a high-ranking Sempra employee to provide 180,000 Mexican pesos to another Sempra employee who would "post a bond," which was actually "a bribe to an official at the [Ensenada Attorney General's] office to evict [Sanchez Ritchie] from his property."[8]

As a result of Michelon's complaint and the ensuing media attention, the Department of Justice began an investigation of Sempra.  An FBI report dated March 15, 2011, concluded that, based on a "clear indication of a quid pro quo arrangement" between Sempra and Mexican officials, "there are ample facts and indicators which reflect that Sempra and its business executives may have engaged in criminal activity so as to justify the opening of a full investigation."[9]

---

[6]  10cv1513-CAB CR 114.

[7]  EM-AZANO-MISC-000410 (redacted FBI Report of Investigation).

[8]  EM-AZANO-MISC-000411 (redacted FBI ROI).

[9]  EM-AZANO-MISC-000413-14 (redacted FBI ROI).

Sempra was given the opportunity to investigate *itself* and report its findings to the FBI. Sempra hired Attorney Robert Brewer of Jones Day "to conduct [that] internal investigation,"[10] which found that Sempra was completely blameless.[11] Specifically, Brewer's "investigation concluded that the cash payment [from Sempra] was not a bribe but was used toward the legitimate posting of a bond with the [Ensenada Attorney General's] office."[12]

Brewer's investigatory findings and recommendations were not limited to merely exonerating his own client, however. On at least two occasions, Brewer urged the Department of Justice to investigate his client's adversary in the Sanchez Ritchie dispute, Susumo Azano.[13] On February 16, 2011, Brewer specifically recommended that the DOJ resume HSI Agent Chakwin's then-suspended investigation against Mr. Azano,[14] whom Brewer erroneously blamed for a temporary shutdown of Sempra's LNG plant during a stand-off between Mexican federal and local authorities.[15] And on April 29, 2011, Brewer "renewed his request that the DOJ investigate [Mr. Azano]," falsely claiming that Mr. Azano was "associated

---

[10]    EM-AZANO-MISC-000411(redacted FBI ROI).

[11]    EM-AZANO-MISC-000447 (redacted FBI ROI).

[12]    EM-AZANO-MISC-000447 (redacted FBI ROI).

[13]    EM-AZANO-MISC-000444 (redacted FBI ROI).

[14]    The fact that Brewer, a partner in a large law firm, was aware of Chakwin's investigation of Mr. Azano suggests that there was a leak in the Department of Justice. His allegations also seem to mirror the discredited and baseless accusations of Chakwin.

[15]    EM-AZANO-MISC-000427 (redacted FBI ROI).

with drug dealers" and reiterating his baseless charge that Mr. Azano was responsible for the temporary shutdown of the LNG plant.[16]

On June 1, 2011, the United States Attorney for the Southern District of California, Laura Duffy (who is now recused from this case), wrote to Brewer regarding the alleged FCPA violation "in connection with real estate litigation and an eviction proceeding in Mexico . . . concern[ing] property adjacent to Sempra's [] LNG plant near Ensenada."[17]  Duffy's letter assured Brewer that, on the basis of "certain information" that Brewer had provided, the DOJ "presently does not intend to take any enforcement action against Sempra or its agents."[18]  And in a report dated June 15, 2011 – again based on the information provided by Brewer on behalf of Sempra– the "DOJ concluded that no additional investigation was warranted as all allegations had been adequately addressed by Sempra, and no enforcement action was necessary."[19]

The Department of Justice then did exactly what Brewer had repeatedly urged it to do: it turned its investigatory resources 180 degrees and pointed them directly at Susumo Azano, raising in sealed pleadings the identical claims later raised by Sempra in the civil litigation.  Unlike Sempra, however, Mr. Azano was not afforded the opportunity to have his own lawyers investigate his alleged wrongdoing and then persuade the DOJ that he was innocent.

/ / /

/ / /

---

[16]   EM-AZANO-MISC-000444 (redacted FBI ROI).

[17]   EM-AZANO-MISC-000445 (redacted).

[18]   EM-AZANO-MISC-00445 (redacted).

[19]   EM-AZANO-MISC-000450 (redacted ROI).

*C.*     **The Government's Rebound Investigation of Mr. Azano**

    *1.*     *AUSA Perry's First Application for Disclosure of Email Subscriber Information*

On July 1, 2011 –16 days after the DOJ's conclusion that "no enforcement action [against Sempra] was necessary" – U.S. Attorney Laura Duffy and Assistant U.S. Attorney Tim Perry applied to the Honorable Mitch D. Dembin  for an "Order Authorizing Disclosure Of Subscriber And Other Information" for three email accounts, one of which was Mr. Azano's.[20]  Perry's application was based <u>exclusively</u> on Brewer's allegations that, during the course of the ongoing Sanchez Ritchie litigation, "[a] group of individuals in Mexico and the United States have engaged in extortionate threats [against Sempra]."[21]  Importantly, the application explicitly identified Ramon Sanchez Ritchie as a property owner currently litigating against Sempra over land adjacent to the LNG plant, and Susumo Azano as a financial supporter of Sanchez Ritchie.[22]

Perry's application is significant in several other respects.  First, because its allegations mirror the charges made by Sempra in its now-dismissed counterclaim against Mr. Azano, the application gives the appearance that the U.S. Attorney's Office entered the Sanchez Ritchie dispute on behalf of the influential local energy conglomerate and against its perceived antagonist, Susumo Azano.  Moreover, the fact that Perry's stated reason for the investigation – the alleged extortion of Sempra – would lead nowhere (and would later be dismissed by Judge Bencivengo

---

[20]   EM_PLDGS_00000297 (11 MC 853-MDD).

[21]   EM_PLDGS_00000298.

[22]   EM_PLDGS_00000299.

when Sempra raised in against Mr. Azano in a civil case), but that Mr. Azano would ultimately be indicted for wholly unrelated violations of purely regulatory campaign-finance laws, *heightens* the appearance of impropriety (i.e., that this is a retaliatory prosecution).  Indeed, Perry's application makes no mention whatsoever of a campaign-finance investigation.  Nor could it – the alleged campaign-finance violations did not occur until several months after the application.

Second, Perry's application omits certain critical information, such as the bias of the reporting party.  For example, the application cryptically states that "[a]gents of Sempra are in the possession of an email chain in which Azano participated."[23]  What Perry does not divulge, however, is *how* Sempra acquired confidential emails involving Mr. Azano, who has reason to believe that Sempra's agents obtained the email chain in violation of state and federal law.  Indeed, Perry is careful to state that "agents of Sempra," rather than federal agents, "are in the possession of" the emails.  Also, the application fails to explain how the government obtained the detailed information that they presented to the court.

In this case, after Mr. Azano moved the District Court order the government to produce the "email chain," the government admitted that it did not have it.[24]  According to the government, "Former Assistant United States Attorney Tim Perry's best recollection is that SEMPRA representatives Robert Brewer and/or Kimberly McDonnell showed and/or described the email chain to the Government." That email is the explicit subject of the subpoenas to both Sempra and Jones Day.

---

[23]   EM_PLDGS_00000301.

[24]   Sept. 22, 2014 letter from Acting U.S. Attorney William Cole to Knut S. Johnson, attached as Exhibit A.

That the government has obviously been careful *not* to take possession of the email chain – which could easily be forwarded with the click of a mouse – suggests that it is aware that Sempra broke the law when it acquired the correspondence. At a minimum, Perry's reference to the email chain demonstrates that the U.S. Attorney's Office was working hand-in-hand with Sempra in its prosecution of Mr. Azano.

The existence or lack of existence of that email chain is a critical part of litigation in this case over the validity of virtually every warrant and application in this case (the government applied for over fifty such warrants and applications, many of which relied upon the assertions about the email chain or which relied upon information from a warrant or application that relied upon assertions about the email chain). Thus, Mr. Azano has subpoenaed that email chain.

Although the government has never produced any reports related to Sempra's investigation of Mr. Azano, the government told this Court under oath at least four times that "private investigators hired by Sempra" surveilled Mr. Azano.[25] Because the government does not have possession of that investigation, Mr. Azano must subpoena it from Sempra and Jones Day.

Sempra shared and/or coordinated their investigation with the government. Thus, Mr. Azano subpoenaed the email chain from Sempra and Jones Day as well as the rest of the Sempra investigation that was

---

[25] EM_PLDGS_0000001 (Application for Pen Register, 6/20/12, 12 MC 084) at page 7; EM_PLDGS_00000031 (Application for Pen Register, 8/20/2012 [Unintelligible Case Number], page 7); EM_PLDGS_00000015 (Application for Pen Register, 7/20/12 [Unintelligible Case Number], page 7); EM_PLDGS_00000323 (Application for Subscriber Information, 6/20/12 [Unintelligible Case Number], page 7)

shared with the government.  He proposes to use those materials to support his arguments at the pending motion hearings as discussed below.

2.    *The Government Used the Hidden Email to Convince This Court to Allow the Government to Obtain Private Information*

The government began their investigation of Mr. Azano at the request of Sempra by using the missing email chain in the possession of the non-parties as well as the Sempra investigation.  Despite not having the email chain, the government repeated the allegations about the contents of the email chain over and over as follows:

| <u>Date</u> | <u>Government Application</u> | <u>Discovery</u> <u>(EM_PLDGS_...)</u> | <u>Case Number</u> | <u>U.S. Magistrate Judge</u> |
|---|---|---|---|---|
| 7/1/11 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 00000295 | 11 MC 853 | MDD |
| 7/25/11 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 00000303 | 11 MC 957 | WM |
| 8/4/11 | Under Seal Application for Order Authorizing Disclosure of Subscriber | 0000313 | 11 MC 1014 | WVG |

- 10 -

-   14-cr-0388-MAA

| | | | | |
|---|---|---|---|---|
| | and Other Information | | | |
| 6/20/12 | Pen Register | 00000001 | Unintelligible | BGS |
| 6/20/12 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 00000323 | Unintelligible | BGS |
| 7/30/12 | Pen Register | 00000015 | Unintelligible | NLS |
| 8/20/12 | Pen Register | 00000031 | Unintelligible | JMA |
| 12/28/12 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 00000336 | 12 MC 1703 | JMA |

After spending a year and a half repeating to the court that "agents of Sempra" had the critical email chain and obtaining pen registers and subscriber information in response, the government then used the pen register and subscriber information results as follows:

### a. The Wiretap Applications

In an application for a Title III wiretap filed on or about July 22, 2013 the government represents that it has reviewed "pen registers." Although the application is not specific about which pen registers the government had by that time obtained at least three pen registers and orders providing subscriber information by alleging the existence of the missing email chain. About a month later the government applied for and received an

- 11 -

- 14-cr-0388-MAA

extension of the wiretap. This wiretap is subject to a motion to suppress set for July 10, 2015.

This wiretap applications also hid the government's considerable prior investigation, including the investigation and information received from Sempra.  In an application for a wiretap, the government is obligated to inform the court of *all* the relevant information that agents participating in the investigation  possess concerning necessity. *United States v. Mastroianni*, 749 F.2d 900, 908 (1st Cir. 1984).  Such evidence included the Sempra investigation received by the government, which was hidden from the wiretap application.

Furthermore, the wiretaps are also subject to a request for a hearing under F*ranks v. Delaware*,  483 U.S. 154 (1978), at which Mr. Azano will have to prove omissions from the wiretap applications.  As such, Mr. Azano will have to prove that Sempra provided at least part of its investigation to the government and that the government omitted that information from the wiretap application.[26]  Thus, the subpoenaed materials are material to the pending motions.

### b.    The Sneak and Peek Warrant

A year before the wiretap applications, on August 22, 2012, Federal Task Force Officer Michael McEwen applied for a delayed-service or

---

[26]  The *Franks* standard applies to material omissions as well as to misstatements.  *See, e.g.*, *United States v. Tham*, 960 F.2d 1391, 1395 (9th Cir. 1991).  Moreover, *Franks* extends to "technically accurate statements that have been rendered misleading by material omissions." *United States v. Grant*, 218 F.3d 72, 77 (1st Cir. 2000).  By  reporting  less than  the  total  story the government will manipulate the magistrate.  "To allow a magistrate to be misled in such a manner could  denude the probable cause [or necessity] requirement of all real meaning." *United States v. Stanaert*, 762 F.2d 775, 781 (9th Cir.), amended, 769 F.2d 1410 (9th Cir. 1985) (*citing Franks*, *supra* 438 U.S. at 168).

"sneak-and-peek" search warrant for office suites used by Mr. Azano.[27]  In it McEwan explicitly mentions the alleged (and now dismissed) bribery and "extortionate threats."  The government then applied for and received at least six extensions of the notice requirement by alleging the "threats."  *See, e.g.*, EM_PLDGS_0000369, 377, 390, 402; 403; 451.  The affidavit in support of this warrant notes communications with Sempra.  *See,* EM_PLDGS_00000403, at ¶ 45.

This "sneak and peek" search is subject to a motion to suppress, that by agreement of the parties the court will hear after hearing motions to suppress the wiretap evidence on July 10, 2015.  Troublingly, the allegations in the sneak and peek application (which are still under seal) mirror the allegations raised by Sempra (and later dismissed by Judge Bencivengo) in the civil suit filed by Sempra against Mr. Azano.  *See*, 10-cv-0153-AB-KSC –Document 97, pages 5-9.  Those facts are relevant to a motion to suppress the sneak and peek warrant because the government failed to tell the court that its assertions about bribes and threats in the sneak and peek warrant were based on a Sempra investigation provided to the government by a party with an axe to grind.  Those facts are also relevant to a *Kyles* defense at trial.

### c.    The Search Warrant

On or about January 23, 2014 the government applied for and obtained a search warrant for Mr. Azano's home from the Honorable Barbara L. Major.  *See*, EM_PLSDGS_00002171; 14 MJ 0243.  That application referenced the results of the sneak and peek warrant (¶ 6), the

---

[27]   EM_PLDGS_002333.  The government also failed to tell the court reviewing the wiretap applications about this warrant, another violation of Title III and the Fourth Amendment.

search of email accounts (¶ 7), the intercepts from the wiretap (¶ 8-9), an additional search of emails (¶ 9), among other things.

Thus, that application relied upon information obtained based assertions of the mystery email chain "in the possession of agents of Sempra" and the undisclosed Sempra investigation provided to the government.

That search is the subject of a motion to suppress, that by agreement of the parties the court will hear after hearing motions to suppress the wiretap evidence on July 17, 2015.

## III.

### <u>THIS COURT SHOULD NOT QUASH THE SUBPOENAS</u>

#### A. The Subpoenas Materials Relevant to Suppression Motions

The non-parties rely primarily on their mistaken belief that Judge Anello's ruling of a year ago that the *government* need not produce certain discovery means that *they* need not do so.  They are mistaken.  Judge Anello's ruling related to the defense of the "charges" not to motions to suppress and that ruling in no way related to a request for a third party subpoena.  Furthermore, Judge Anello modified his order orally, resulting in the government advising the defense that they did not possess the email chain.  *See*, Exhibit A.  What is relevant to a trial on the charges is not the same as what is relevant to a motion to suppress or dismiss.

As noted by the Ninth Circuit in *United States v. Yousef*, 327 F. 3d 56, 145 (9th Cir. 2003), the Federal Rules of Evidence (which apply to the "charges" at trial against a defendant) do <u>not</u> apply at motions to suppress evidence:

> The Federal Rules of Evidence explicitly permit the District Court to do so. *See* Fed. R. Evid. 104(a) (court not bound by rules of evidence in preliminary proceedings concerning admissibility

of evidence, except for issues of privilege); Fed. R. Evid. 1101(d)(1) (evidence rules inapplicable to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104"); *see also United States v. Raddatz,* 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.").

*See also*, *United States v. Whitten*, 706 F. 2d 1000, 1019 (9th Cir. 1983) (Trial judge not bound by hearsay rule at suppression hearing.); *Hollinger v. United States*, 651 F. 2d 636, 640 (9th Cir. 1981) ("[A] district judge sitting without a jury has the right to receive evidence that might be inadmissible at trial."); *United States v. Matlock*, 415 U.S. 164, 175 (1974) ( Trial judge erred in excluding hearsay evidence at hearing on motion to suppress.).

Thus, evidence that may not be admissible at trial (such as the missing email chain and the evidence of the Sempra investigation provided to the government) may be admissible at a motion to suppress.

In addition, the non-parties apply the incorrect standard.  Rule 17(c) permits defendants to subpoena information from non-parties.  In *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951), the Supreme Court considered a 17(c) subpoena for documents in the *government's* possession and held that a 17(c) subpoena is not intended to provide discovery in a criminal case.  In *United States v. Nixon*, 418 U.S. 683, 698-700, 702 (1974) the Supreme Court followed *Bowman Dairy Co*. when considering a *prosecution* subpoena for documents from the President of the United States.

In *United States v. Fields*, 663 F.2d 880 (9th Cir. 1981), the court applied the test in *United States v. Nixon*, 418 U.S. 683, 698-99 (1974) and

held that "we see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States." *Id*. at 881. The *Field* Court, therefore, held that Rule 17(c) subpoenas must demonstrate that the materials are "evidentiary and relevant."  The *Field* court, therefore, reversed the *pretrial* production of impeachment material. Id.

Other courts have applied a different standard for Rule 17(c) subpoenas, such as the one in this case, that are from a defendant to a third party. *See, e.g.*, *United States v. Nosal*, 291 F.R.D. 403, (N.D. Cal. 2013) (discussion of courts that have not applied *Nixon* standard to third party subpoenas and employing a test of "(1) reasonable, construed using the general discovery notion of material to the defense; and (2) not unduly oppressive for the producing party to respond." [Citations omitted.]); (*United States v. Tomison*, 969 F. Supp. 587, 593 n. 14 (E.D. Cal. 1997) (*Nixon* standard does not apply to subpoenas to third parties and government has no standing to object); *United States v. Nachamie*, 91 F. Supp. 552, 563 (S.D.N.Y. 2000) (The government has no standing to object to a third party subpoena and lower standard applies to third party subpoenas); *United States v. Tucker*, 249 F.R.D. 58, 67 (S.D.N.Y. 2008) (Requiring heightened *Nixon* standard is inappropriate in connection with subpoena to third party by defense and may violate Confrontation Clause.).

Furthermore, the reliance of the non-parties on *United States v. Zhiqiang Zhang*, 10–cr–00827 LHK (HRL), 2012 WL 195509, *2 (N.D.Cal. Jan. 23, 2012) proves this point:

> Because it is often difficult at the pretrial stage 'to determine with precision the admissibility of certain documents ... if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* "evidentiary" requirement is

likely satisfied.' ") (internal citation and quotation marks omitted)

Using any analysis, the subpoenaed items must be produced. Although Mr. Azano believes that applying a strict *Nixon* analysis to quash the subpoenas would violate the Confrontation Clause, the Fifth amendment (*see, e.g. Chambers v. Mississippi*, 410 U.S. 284 (1972) [state may not interpret rules in a way to deny defendant a defense] , and the Sixth Amendment (*see, e.g. Washington v. Texas*, 388 U.S. 14 (1967) [defendant has a right to present witnesses in his favor]), in this case even under *Nixon* his subpoena requests are proper because the materials subpoenaed are relevant and admissible at the motions to suppress.

Furthermore, the Ninth Circuit has consistently held that "facts demonstrating a skewed or biased investigation may constitute *Brady* material that a Defendant is entitled to obtain and a jury permitted to consider."[28]  The requested subpoenas thus request materials that also supports a classic "shield" claim (i.e., arguing to the jury that the government's case lacked credibility because of a biased investigation) and which should be admissible at trial.  Finally, because the subpoenas are for information showing the collaboration between Sempra and the government, such evidence is also admissible in a motion to dismiss.[29]

**B.  The Subpoenas Specify Materials the Government Has Referenced in Pleadings**

Sempra helps prove the specificity of the subpoenas in this case by citing this Court to *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 164-165 (E.D.N.Y. 2005).   In *RW Prof'l Leasing Servs. Corp.* the court

---

[28] *United States v. Aguilar,* 831 F. Supp. 2d 1180, 1203 (C.D. Cal. 2011).

[29] *See United States v. Chapman,* 524 F.3d 1073, 1084 (9th Cir. 2008).

found the following to be relevant and specific because "the requests appear reasonable and sufficiently tailored so as not to be too burdensome . . "

> 17) All documents reflecting, relating to, or referring to CIT's knowledge of [RW]'s making of payments on behalf of customers, including without limitation, all correspondence, letters, notes, e-mails, memos, telephone messages, and notes of meetings.
>
> 18) All documents relating or referring to CIT's knowledge of bankruptcies relating to any [RW] customer.
>
> 19) All documents relating or referring to any customers that were part of a [RW] portfolio who were also part of another CIT portfolio.

In this case, the subpoena requests by Mr. Azano are more specifically tailored than the approved requests in *RW Prof'l Leasing Servs. Corp.* For example, the subpoenas in *RW Prof'l Leasing Servs. Corp.* were for materials "including without limitation" and "all documents." In contrast, the subpoenas this Court issued for Mr. Azano specify the *contents* of the documents requested: accusations of criminal conduct by Mr. Azano, correspondence about Mr. Azano, surveillance of Mr. Azano, and a specific email chain. Again, the government has conceded that Sempra accused Mr. Azano of crimes, surveilled Mr. Azano, and that Sempra and Jones Day possessed the requested email chain.

*Jones Day*

The subpoena to Jones Day asks for the following:

> 1. *Written or recorded communications . . . between Jones Day (including Robert S. Brewer, Jr. and any other Jones Day attorney, paralegal, or other employee, agent, or contractor)*

*and the Office of the US Attorney or the Federal Bureau of Investigation ("FBI") regarding accusations of criminal conduct by Susumo Azano.*

This request is quite simple: if Jones Day accused Mr. Azano of criminal conduct in a communication with the government, Mr. Azano wants to use that document in, among other things, litigation with the government as explained above.  Jones Day complains that Mr. Azano "has not specified a topic of his criminal activity . . ."  Did they complain about so many criminal topics that they need this category narrowed?  Perhaps Jones Day can explain their confusion to this Court.

Jones Day also complains that this category asks for "custodians inside and outside of Jones Day."  No it does not.  The *subpoena* is directed to the custodian for Jones Day, not to anyone else.  If Jones Day has the documents, they should produce them.  The subpoena does not ask for Jones Day to search outside of their own records.

2.  *Information provided to any agency of the United States by Jones Day regarding Mr. Azano or any person or entity related to him.*

Mr. Azano is happy to narrow this class of documents to "Mr. Azano," although Jones Day knows well what persons and entities are related to Mr. Azano. The discovery in this case is clear that Jones Day provided the government information about Mr. Azano and they should now provide those materials pursuant to the subpoena.

3.  *Any materials or correspondence related to any electronic or other surveillance of Mr. Azano by Sempra.*

The government has conceded that it knew about Sempra's surveillance of Mr. Azano.  *See, supra*, footnote 25.  The government has not produced discovery relating to that investigation, strongly implying

that they do not have it.  This request is not broad at all.  If Jones Day wrote the government about the Sempra investigation of Mr. Azano, they should be ordered to produce the correspondence.

> 4. *The "email chain," shown to, provided to, or discussed with the U.S. Attorney on behalf of Sempra.*

Jones Day knows exactly what this request is for.  It is for the email chain that "Robert Brewer [of Jones Day] and/or Kimberly McDonnell [Chief Counsel to Sempra] showed and/or described" to the government.  *See*, Exhibit A.  According to the government (which, again, failed to preserve this email chain), the email includes Mr. Azano's email address, Juan Manuel Chig's email address, and another person's email address.  Surely the then managing partner of one of the world's largest law firms and the Chief Counsel to a Fortune 500 company kept track of documents they shared with the government while defending the company against serious foreign bribery allegations.

> *Sempra*

Sempra complains very generally that the subpoena does not include "topic or subject matter."  They also claim the subpoena fails to identify "specific types of documents."  They are wrong. The subpoena to Sempra is as follows:

> 1. *Written or recorded communications between Sempra and SDPD or any other law enforcement agency (such as DHS [including ICE Special Agent John Chakwin]), or any other government agency regarding alleged criminal conduct by Susumo Azano.*

This request includes the topic ("alleged criminal conduct by Mr. Azano") and the type of documents ("communications").  This request could not be more specific.

- 20 -

> 2. *Materials or correspondence related to electronic or other surveillance of Mr. Azano*.

Again, this request includes the topic ("electronic or other surveillance of Mr. Azano") and the type of item ("materials or correspondence").  If Sempra has such materials they should provide them.  This is not a "fishing expedition" to see if such materials exist;  they do.  The government has admitted so.  *See, supra*, footnote 25.  Furthermore, to use Sempra's logic, Judge Anello has already ruled that surveillance information must be produced under Rule 16.  *See*, Docket Entry 58, page 4.

> 3. *The "email chain," shown to, provided to, or discussed with the U.S. Attorney*.

Sempra also knows exactly what this request is for.  It is for the email chain that "Robert Brewer [of Jones Day] and/or Kimberly McDonnell [Chief Counsel to Sempra] showed and/or described" to the government.  *See*, Exhibit A.  According to the government (which, again, failed to preserve this email chain), the email includes Mr. Azano's email address, Juan Manuel Chig's email address, and another person's email address.  Surely the then managing partner of one of the world's largest law firms and the Chief Counsel to a Fortune 500 company kept track of what they shared with the government.

## C. Compliance Will Be Simple for The Non-Parties

The non-parties complain that the subpoenas are burdensome and oppressive.  They are wrong about this too.

The non-parties both argue meritless points that they previously made: this is a personal vendetta against Sempra, the documents are irrelevant, the subpoena is overbroad and is a "fishing expedition," and that Judge Anello previously denied a request that the government

produce the documents.  As noted above, the subpoenas are specific, clear, and for information that is, at a minimum, relevant to pending motions and which the government has confirmed exists.

### D. Privilege Issues

The subpoenas in no way ask for privileged communications. However, if Jones Day believes that they have responsive documents that are so privileged, they should provide a privilege log of the documents. *See, e.g.*, *United States v. Krane*, 625 F.3d 568, 571 (9th Cir. 2010) (Skadden Arps law firm produced "privilege log" in response to 17(c) subpoena.)

However, as the subpoenas request documents provided to the government, Jones Day and Sempra have likely waived any privilege claim.  *See, In re Martin Marietta Corp.*, 856 F. 2d 619, 623-24 (4th Cir. 1988) (Disclosure to government waived attorney-client privilege.); *United States v. Suarez*, 820 F.2d 1158, 1161 (11th Cir.1987) ("[I]t has long been held that once waived, the attorney-client privilege cannot be reasserted." (*citing*, among others, 8 Wigmore, Evidence § 2328 at 638 (McNaughton rev. 1961) ("A waiver at one stage of a trial should be final for all further stages....") (additional citations and footnote omitted*)))*; *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C.Cir. 1981) ("The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit.").

/ / /

/ / /

/ / /

/ / /

## IV.
## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the motions to quash.

Dated: June 10, 2015                           Respectfully submitted,

                                               /s/ Knut S. Johnson
                                               **Knut S. Johnson, Esq. for**
                                               Jose Susumo Azano Matsura

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CONSTITUTIONAL AMENDMENTS</u>

U.S. Const. Amend. IV………………………………….......................................1

U.S. Const. Amend V……………………………………………………..16

U.S. Const. Amend. VI………………………………………………………16

## <u>CASES</u>

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951),…………………….……14

*Brady v. Maryland*, 373 U.S. 83 (1963)………………………..……………...2

*Chambers v. Mississippi*, 410 U.S. 284 (1972)……………………………...….16

*Franks v. Delaware*, 483 U.S. 154 (1978)………………………………………1, 11

*Kyles v. Whitley*, 514 U.S. 419 (1995)…………………………….………...2

*United States v. Matlock*, 415 U.S. 164 (1974)……………………………...….14

*United States v. Nixon*, 418 U.S. 683 (1974)………………………………...14, 15

*United States v. Raddatz,* 447 U.S. 667 (1980)……………………………………14

*Hollinger v. United States*, 651 F. 2d 636, 640 (9ᵗʰ Cir. 1981)……………….....14

*United States v. Fields*, 663 F.2d 880 (9th Cir. 1981)……………………………15

*In re Martin Marietta Corp.*, 856 F. 2d 619 (4ᵗʰ Cir. 1988)………………………21

*United States v. Aguilar,* 831 F. Supp. 2d 1180 (C.D. Cal. 2011)………………16

*United States v. Chapman,* 524 F.3d 1073 (9th Cir. 2008)………………………17

*United States v. Grant*, 218 F.3d 72 (1st Cir. 2000)……………………………12

*United States v. Krane*, 625 F.3d 568, 571 (9ᵗʰ Cir. 2010)…………………….21

*United States v. Mastroianni*, 749 F.2d 900 (1st Cir. 1984)………………………11

*United States v. Nachamie,* 91 F. Supp. 552 (S.D.N.Y. 2000)……………………15

*United States v. Nosal*, 291 F.R.D. 403, (N.D. Cal. 2013)…………..,,……………15

*United States v. RW Prof'l Leasing Servs. Corp.*,
228 F.R.D.158 (E.D.N.Y. 2005)………………………………………..,,…………..17

*United States v. Stanaert*, 762 F.2d 775 (9th Cir.) amended,
769 F.2d 1410 (9th Cir. 1985)…………………………………………………..12

*United States v. Suarez*, 820 F.2d 115 (11th Cir.1987)…………………………...21

*United States v. Tham*, 960 F.2d 1391 (9th Cir. 1991)………………………….11

*United States v. Tomison*, 969 F. Supp. 587 n. 14 (E.D. Cal. 1997)……………...15

*United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008)…………………………15

*United States v. Whitten*, 706 F. 2d 1000 (9th Cir. 1983)………………………14

*United States v. Yousef*, 327 F. 3d 56 (9th Cir. 2003)………………………14

*United States v. Zhiqiang Zhang*, 10–cr–00827 LHK (HRL),
2012 WL 195509, *2 (N.D.Cal. Jan. 23, 2012)…………………………………16

## STATUTES
18 U.S.C. § 922(g)(5)(B)……………………………………………………3

## RULES
Fed. R. Crim. P. 17(c)……………………………………………………14, 15

Fed. R. Crim. P. 16……………………………………………………..20

Fed. R. Evid. 104(a)……………………………………………………..14

Fed. R. Evid. 1101(d)(1)…………………………………………………..14

## OTHER RESOURCES
8 Wigmore, Evidence § 2328 (McNaughton rev. 1961)………………………...21