1  WILLIAM P. COLE
2  Acting United States Attorney (under 28 U.S.C. § 515)
   California State Bar No. 186772
3  ANDREW G. SCHOPLER
   HELEN H. HONG
4  Assistant U.S. Attorneys
5  California State Bar Nos. 236585/235635
   880 Front Street, Room 6293
6  San Diego, CA 92101
7  Tel: (619) 546-8068/6990
   Fax: (619) 546-0631
8  Email: william.p.cole@usdoj.gov
9
10 Attorneys for the United States

11              **UNITED STATES DISTRICT COURT**
12           **SOUTHERN DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>JOSE SUSUMO AZANO MATSURA (1),<br><br>RAVNEET SINGH (2),<br><br>            Defendants. | Case No.: 14CR0388-MMA<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS COUNTS 1 AND 3 ON CONSTITUTIONAL GROUNDS [107, 114]**<br><br>Date:  July 17, 2015<br>Time: 1:30 p.m.<br>Ctrm: Hon. Michael M. Anello |

23
24  //
25  //
26  //
27  //
28

# I

## INTRODUCTION

"It is fundamental to the definition of our national political community that foreign citizens do not have a constitutional right to participate in, and thus may be excluded from, activities of democratic self-government." <u>Bluman v. Fed. Election Comm'n</u>, 800 F. Supp. 2d 281, 288 (D.D.C. 2011) (three judge court), <u>aff'd</u> 132 S.Ct. 1087 (2012). "[T]he United States has a compelling interest," therefore, "in limiting the participation of foreign citizens in activities of American democratic self-government, and in thereby preventing foreign influence over the U.S. political process." <u>Id.</u>

Congress addressed that interest most recently in 2002 when the Bipartisan Campaign Reform Act of 2002 amended the Federal Election Campaign Act. Pub. L. No. 107-155, § 303, 116 Stat. 81, 96 (2002) ("BCRA"). The BCRA amendments limit foreign nationals' financial participation in elections when, for example, that participation is designed to support a candidate or to influence the outcome of an election. Those limitations became 2 U.S.C. § 441e (now 52 U.S.C. § 30121), which makes it unlawful for a "foreign national, directly or indirectly, to make"

- A contribution or donation in connection with a federal, state, or local election, 2 U.S.C. § 441e(a)(1)(A);

- A contribution or donation to a committee of a political party, 2 U.S.C. § 441e(a)(1)(B); or

- An expenditure, independent expenditure or disbursement for an electioneering communication, 2 U.S.C. § 441e(a)(1)(C).

Nothing in the statute otherwise limits a foreign national's ability to speak on political issues generally, apart from the restrictions set forth in § 441e(a)(1).  Bluman, 800 F. Supp. 2d at 292.

A three-judge court upheld section 441e when challenged on First Amendment grounds.  Bluman, 800 F. Supp. 2d at 292.  The Supreme Court summarily affirmed. Bluman v. Fed. Election Comm'n, 132 S.Ct. 1087 (2012).  Defendants Azano and Singh nonetheless resurrect the same arguments rejected in Bluman, either failing to address Bluman at all, see Azano Mot. [107], or dismissing its significance in a footnote.  See Singh Mot. [114] at n.4.  It is, however, a "well-established rule that the Supreme Court's summary affirmances bind lower courts, unless subsequent developments suggest otherwise."  United States v. Blaine Cty., Montana, 363 F.3d 897, 904 (9th Cir. 2004).  No such developments disturb Bluman's analysis, and it is binding here.  The defendants' motions to dismiss should be denied.

## II

## BACKGROUND

As it relates to this motion, the Superseding Indictment alleges the following:

Jose Susumo Azano Matsura is a citizen of Mexico, who had never applied for, nor obtained, legal permanent resident status in the United States.  As a result, Azano is a "foreign national" for the purposes of 2 U.S.C. § 441e, prohibited from making

donations and contributions in support of any candidate for elective office.  See Superseding Indictment [42] ¶ 4.

Ravneet Singh is the President of ElectionMall, Inc., which provides social media services to political campaigns.  Id. ¶ 6.

Through at least September 2013, Azano, Singh, and others knowingly conspired to commit two offenses, including a BCRA violation.  Id. ¶ 20.  Among other things, Count 1 of the Superseding Indictment alleges that:

- Azano reimbursed individuals who agreed to make donations to a candidate for San Diego mayor in December 2011 and January 2012, with Azano delivering approximately $10,000 in cash for that effort, id. ¶¶ 22a-c;

- Azano and Singh conspired to donate $100,000 in value of online outreach support for a San Diego mayor candidate in 2012, id. ¶¶ 22g-i;

- Azano through a conduit contributed $30,000 to a political party committee associated with a candidate's federal campaign, id. ¶¶ 22o, t;

- Azano through a conduit donated $120,000 to an independent expenditure committee associated with a campaign for San Diego Mayor in 2012, id. ¶¶ 22p, r, t;

- Azano through a conduit donated $30,000 to a political party committee associated with a candidate's campaign for San Diego mayor, id. ¶¶ 22q, t;

- Azano and Singh coordinated with a campaign for San Diego mayor, creating a "war room" at the campaign offices and telling staffers that Singh was

4

authorized to handle social media efforts.  The in-kind donation of social media work was paid for by Azano, who caused wire transfers totaling close to $190,000 to be sent from his Mexico-based company to Singh's company for Singh's election-related work.  Id. ¶¶ 22u-z.

Azano and Singh are also charged in Count 3 with a substantive violation of the foreign national contribution/donation limitations set forth in section 441e, including two separate donations of approximately $128,000 and $190,000 in services financed by Azano to two candidates for Mayor in 2012.  ¶¶ 26-27.

## III

## ARGUMENT

In Bluman, a three-judge court confronted the same question presented here: are the political contribution and express-advocacy expenditure restrictions set forth in section 441e unconstitutional?  The three judge court concluded that section 441e is a constitutional exercise of the United States's authority to oversee its democratic self-governance, and the Supreme Court affirmed.  That outcome is controlling here.

In Bluman, two foreign citizens living and working in the United States on temporary visas challenged section 441e.  One had resided in the United States since 2006, with a visa that permitted him to work as an associate at a law firm in New York until November 2012, when he would apply for another three-year term.  The other worked as a medical resident at a hospital in New York on a three-year visa, with eligibility to apply for a seven-year extension.  800 F. Supp. 2d at 285.  Both

*14CR0388-MMA*

sought to contribute to federal candidates; one wanted to contribute to a state election candidate; the other wanted to contribute to a political party; one wanted to make independent expenditures on behalf of the President to print flyers; and one wanted to donate to an independent organization that advocated "on behalf of certain issues and candidates." Id. All of those activities were prohibited by section 441e.

The three-judge court found no constitutional infirmity in the restrictions. It recognized the government's compelling interest[1] on the one hand, in preserving the process of democratic self-government for United States citizens. Bluman, 800 F. Supp. 2d at 288. "Self government . . . begins by defining the scope of the community governed and thus of the governors as well." Cabell v. Chavez-Salido, 454 U.S. 432, 439 (1982). "[T]he distinction between citizens and aliens, though ordinarily irrelevant to private activity, is fundamental to the definition and government of a state." Ambach v. Norwick, 441 U.S. 68 (1979).

That process of political self definition, by its nature, requires the exclusion of those who are not United States citizens. The "exclusion of aliens from basic governmental processes is not a deficiency in the democratic system, but a necessary consequence of the community's process of political self definition." Cabell, 454 U.S. at 439 (quoted in Bluman, 800 F. Supp. 2d at 288). Thus, while "foreign citizens in the United States enjoy many of the same constitutional rights that U.S. citizens do,"

---

[1] In Bluman, the court assumed without deciding that strict scrutiny review was appropriate because the statute was constitutional under any level of scrutiny. 800 F. Supp. 2d at 285-86.

they may be denied certain rights and privileges when democratic self-governance is at stake.  800 F. Supp. 2d at 286-87.  "For example, the Supreme Court has ruled that the government may bar aliens from voting, serving as jurors, working as police or probation officers, or teaching at public schools," all activities that form part of the democratic self definition process.  Id. at 283; see also id. at 287 (collecting Supreme Court cases).  Those Supreme Court cases "draw[] a fairly clear line:  the government may exclude foreign citizens from activities 'intimately related to the process of democratic self-government.'"  Id. at 287.  A "State's historical power to exclude aliens from participation in democratic political institutions [is] part of the sovereign's obligation to preserve the basic conception of political community."  Id. (quoting Foley v. Connelie, 435 U.S. 291 (1978) (upholding law barring foreign citizens from serving as police officers)); see also id. ("[T]he government may reserve participation in its democratic political institutions for citizens of this country."); Foley, 435 U.S. at 297 ("[A]lthough we extend to aliens the right to education and public welfare, along with the ability to earn a livelihood and engage in licensed professions, the right to govern is reserved to citizens.").

        Political contributions and express advocacy expenditures are part of the process of democratic self-government that may be limited to citizens.  800 F. Supp. 2d at 288.  Because the Supreme Court "has deemed activities of democratic self-government to include functions as unrelated to the electoral process as teaching in public schools and serving as police and probation officers," it follows that "spending

*14CR0388-MMA*

money to influence voters and finance campaigns is at least as (and probably far more)

closely related to democratic self-government." <u>Id.</u>

Section 441e is narrowly tailored to address the "compelling interest of limiting

participation of non-Americans in the activities of democratic self-government." <u>Id.</u>

at 290 ("A statute that excludes foreign nationals from political spending is therefore

tailored to achieve that compelling interest."). As the court summarized in <u>Bluman</u>

> It is fundamental to the definition of our national political community
> that foreign citizens do not have a constitutional right to participate in,
> and thus may be excluded from, activities of democratic self-government.
> It follows, therefore, that the United States has a compelling interest for
> purposes of First Amendment analysis in limiting the participation of
> foreign citizens in activities of American self-government, and in thereby
> preventing foreign influence over the U.S. political process.

<u>Id.</u> at 288.[2]

This is so particularly since section 441e does not prohibit foreign nationals

from speaking out on matters of public policy. By regulating only campaign-related

spending, Congress has tailored section 441e to address the financial activity most

likely to influence elections. <u>Cf.</u> <u>Ambach</u>, 441 U.S. at 79 n.10 ("[The statute] does not

inhibit [noncitizens] from expressing freely their political or social views or from

---

[2]   For the same reason, Azano's equal protection claim grounded in the due
process clause of the Fifth Amendment fails. <u>See</u> Azano Mot. [107] at 10-11. <u>See,</u>
<u>e.g.</u>, <u>Hamad v. Gates</u>, 732 F.3d 990, 1005-006 (9th Cir. 2013) (alienage classifications
drawn by Congress are subjected to rational basis review). Congress may rationally
treat citizens and lawful permanent residents differently than aliens in processes of
self governance.

8

associating with whomever they please.   Nor are [noncitizens] discouraged from joining with others to advance particular political ends.").

Neither Citizens United nor McCutcheon disturbs that analysis.   Azano and Singh are correct that Citizens United did not consider whether the government has "a compelling interest in preventing foreign individuals or associations from influencing our Nation's political process."   Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 362 (2010) (cited in Azano Mot. [107] at 6; Singh Mot. [114] at 3-4).   But the Supreme Court did pass on that question two years later, when it summarily affirmed the three judge court in Bluman in 2012.   Bluman v. Fed. Election Comm'n, 132 S.Ct. 1087 (2012).   That summary affirmance "bind[s] lower courts," including this one, "unless subsequent developments suggest otherwise."[3]   United States v. Blaine Cty., Montana, 363 F.3d 897, 904 (9th Cir. 2004).   Because Azano and Singh raise the same arguments advanced in Bluman, their motion is controlled by the Supreme Court's affirmance of the three judge court's decision.

Azano and Singh therefore suggest that Citizens United provides the doctrinal development that undercuts the Supreme Court's summary affirmance in Bluman.

---

[3]   Singh suggests that the summary affirmance is of limited precedential value and simply offers his view that Bluman was wrongly decided.   See Singh Mot. [114] at 4 n.4.   "Although [it] is true in the sense that the Supreme Court is more willing to reconsider its own summary dispositions than it is to revisit its prior opinions, this principle does not release the lower courts from the binding effect of summary affirmances. As the [Supreme] Court itself has instructed, 'inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise.'"   Blaine Cty., 363 F.3d at 904.

See Azano Mot. [107] at 5-7; Singh Mot. [114] at 3-4.  But Citizens United was decided two years before the Supreme Court affirmed the three judge court's finding that section 441e is constitutional, and cannot serve as any "subsequent" development to escape Bluman's precedential effect.  In any event, the caption of the case alone demonstrates that the Supreme Court's analysis was limited to "Citizens" who could participate in the process of self government in Citizens United.  For that reason, as the three judge court recognized, "the majority opinion in Citizens United is entirely consistent with a ban on foreign contributions and expenditures."  Bluman, 800 F. Supp. 2d at 289.

The same can be said of McCutcheon.  Indeed, in the first two sentences of the opinion, the Supreme Court explained that the case was about a "Citizen's" right to participate in an election.  McCutcheon v. Fed. Elec. Comm'n, 134 S.Ct. 1434, 1441 (2014).  Nothing in McCutcheon is in tension with Supreme Court authority limiting the rights of aliens in the process of democratic self-governance.[4]  Bluman squarely forecloses the relief Azano and Singh seek here.

_____

[4]    Azano reads McCutcheon to permit restrictions on political spending only when it reaches quid pro quo arrangements, and claims that "no quid pro quo basis" supports section 441e.  Azano Mot. [107] at 7.  That is simply not true.  The BCRA and section 441e followed lengthy Congressional hearings on the effect of foreign contributions on the American political system.  See generally S. Rep. No. 105-167 at 11 (1998).  Senator Fred Thompson chaired what became known as the Thompson Committee, which generated an almost 10,000 page report on foreign influences on American politics.  The Thompson Committee concluded that foreign contributions to the political process "allowed wealthy and well-connected foreign nationals to arrange almost unlimited access to the President and other top U.S. policy makers."  S. Rep. No. 105-167 at 46.  After detailing multiple reports of foreign nationals (and foreign

Azano's as-applied challenge fails for the same reason. Despite Azano's claim that he is "not merely any foreign national"—because he has homes and family here, has bank accounts and businesses here, and has paid payroll taxes in the past, <u>see</u> Azano Mot. [107] at 8-10—he remains, for the purposes of democratic self-governance, an alien who may be excluded from that process. He does not and cannot dispute two crucial facts that permit limitations on his financial participation in United States elections:  he is not a citizen of the United States and is not a lawful permanent resident. As such, he is an alien who may properly be excluded from the democratic self-government process. Indeed, his ties to the United States are more attenuated than the ties that were legally insufficient in <u>Bluman</u>:  there, the plaintiffs had studied and worked in the United States for years on work visas. At the time of the offenses, Azano merely possessed a B1/B2 that permitted him to enter the United States as a "visitor." He may be precluded from financial participation in democratic elections.

//

//

//

//

//

//

governments) using campaign and political contributions for their own purposes, the report urged Congress to formulate legislative proposals that would "prohibit foreign money in United States elections[.]" S. Rep. No. 105-167 at 8, 4578. That legislation became section 441e.

11

IV

**CONCLUSION**

For the foregoing reasons, the Court should deny the motions [107, 114] to dismiss Counts 1 and 3 on constitutional grounds.

DATED: July 3, 2015                    Respectfully submitted,

                                       s/ William P. Cole
                                       s/ Andrew G. Schopler
                                       s/ Helen H. Hong
                                       WILLIAM P. COLE
                                       Acting United States Attorney
                                       ANDREW G. SCHOPLER
                                       HELEN H. HONG
                                       Assistant United States Attorney

12

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 14CR0388-MMA |
| Plaintiff, | |
| v. | CERTIFICATE OF SERVICE |
| JOSE SUSUMO AZANO MATSURA (1), | |
| RAVNEET SINGH (2), | |
| Defendant. | |

IT IS HEREBY CERTIFIED THAT:

I, William P. Cole, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of the foregoing brief on the parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 3, 2015

*s/ William P. Cole*

WILLIAM P. COLE

*14CR0388-MMA*