WILLIAM P. COLE
Acting United States Attorney (under 28 U.S.C. § 515)
California State Bar No. 186772
ANDREW G. SCHOPLER
HELEN H. HONG
Assistant U.S. Attorneys
California State Bar Nos. 236585/235635
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8068/6990
Fax: (619) 546-0631
Email: william.p.cole@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>RAVNEET SINGH (2),<br><br>              Defendant. | Case No.: 14CR0388-MMA<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO SINGH'S MOTION TO DISMISS COUNTS 1, 3, 19, 24, AND 25 [115]**<br><br>Date: July 17, 2015<br>Time: 1:30 p.m.<br>Ctrm: Hon. Michael M. Anello |

/ /

/ /

/ /

/ /

# I

# INTRODUCTION

Singh seeks to dismiss each count pending against him, claiming that the counts fail to state an offense.  But each attack either misapprehends the elements of the offense, fails to consider the import of 18 U.S.C. § 2 liability, or seeks in the Superseding Indictment hyper-detailed factual recitations that are neither required by the Constitution nor the Federal Rules of Criminal Procedure.  Because each of the counts against Singh is adequately set forth, his motion to dismiss should be denied.

# II

# BACKGROUND

As it relates to this motion, the Superseding Indictment alleges the following:

Jose Susumo Azano Matsura is a citizen of Mexico, who had never applied for, nor obtained, legal permanent resident status in the United States.  As a result, Azano is a "foreign national" for the purposes of 2 U.S.C. § 441e,[1] prohibited from making donations and contributions in support of any candidate for elective office.  <u>See</u> Superseding Indictment [42] ¶ 4.

Ravneet Singh was the President of EleectionMall, Inc., which specialized in providing social media services to political campaigns throughout the world.  Singh proclaimed himself a "campaign guru."  <u>Id.</u> ¶ 6.

---

[1]        The statute is now codified at 52 U.S.C. § 30121.

Notwithstanding the prohibition on foreign national contributions and donations, Azano participated in San Diego area elections in 2011, 2012 and 2013 in violation of federal law. Azano designed secret methods to finance candidates' campaigns with his coconspirators because he could not openly contribute as a foreign national. Id. ¶ 21d. The methods ranged from using conduits (or "straw donors") to donate to campaigns, political parties and independent expenditure committees, with Azano reimbursing the conduits for their donations later, id. ¶ 21e, f; to creating an independent expenditure committee and funding it with money from a company he owns, id. ¶ 21g; to funding in-kind donations of social media services to campaigns, id. ¶¶ 21h, i, j. Though the methods varied, the aim remained the same: funnel Azano's own illicit funds to candidates of his choosing.

Singh and Azano developed a way to help candidates with social media work without reporting the funding source of that work, Azano. Generally, the scheme worked as such: through his company ElectionMall, Inc., Singh "would provide social media services to the candidates that" Azano supported. Id. ¶ 21h. Azano would "then fund ElectionMall, Inc.'s services, using a Mexico-based company to transmit payment to ElectionMall, Inc.'s bank account, never providing any invoice or other bill of costs to the campaigns themselves." Id. ¶ 21i. Ultimately, that ensured that Azano's name never "appear[ed] on public filings in connection with the illegal contributions and donations." Id. ¶ 21j.

For example, between at least February and June 2012, Azano and Singh worked to provide ElectionMall's services to a San Diego mayoral candidate. Id. ¶ 10, 22g-i. Singh promoted online outreach in support of the candidate, and invoiced Azano $75,000 for that effort on February 26, 2012. On or about March 13, 2012, ElectionMall invoiced Azano $100,000 for the project, explaining in an email that "Mr. A" (Azano) had "verbally agreed" to provide the additional $25,000. Id. ¶ 22h. On June 13, 2012, Singh replied to an email from a co-conspirator who served as an intermediary between Azano, Singh and the campaigns, admonishing him not to discuss their campaign finance efforts in writing: "I am not responding to this email. Because of the legal ramifications. Please talk to me . . . in person . . ." Id. ¶ 22i.

In October 2012, Singh and Azano used a similar method of providing in kind donations to a mayoral candidate, where they hid the source of the funding for the work. Singh and coconspirators visited the campaign offices of the candidate, and told staff that they were authorized to handle the candidate's social media efforts. Id. ¶ 22u. Singh created a "war room" at the campaign offices for that effort. Id. ¶22w. When asked by the campaign for a quote for his services, he told the campaign that his expenses would be "taken care of." Id. ¶22v. For the work he did in October 2012, ElectionMall received wire transfers of $96,980 and $94,975 from Mexico-based companies associated with Azano.

Campaign donations are recorded by law. The Federal Election Commission maintains records of federal campaign contributions; the State of California maintains

4

records of donations to political committees; and the City of San Diego maintains records of donations to campaigns and independent expenditure committees, as well as records of expenditures made by independent expenditure committees. Id. ¶¶ 16-17. Azano and Singh hid the funding source (Azano) for social media work conducted on behalf of the campaigns, knowing that the campaigns could not accept in-kind donations from foreign nationals. As a result, they caused false entries to be made in campaign records, which now omitted the hundreds of thousands of dollars of work completed at Azano's behest. Id. ¶¶ 22g-i, u-z; 31(19), (24).

The FBI is responsible for investigating the potential influence of foreign money in federal, state and local elections, as well as unlawful conduit contributions in federal elections. 2 U.S.C. §§ 441e, 441f; see also Superseding Indictment ¶ 18. Although Azano and Singh attempted to conceal and cover up Azano's donations, the Federal Bureau of Investigation ("FBI") uncovered the origin of Azano's campaign donations.

As a result, Singh was charged as follows:

- Count 1: he "did knowingly conspire" to commit campaign finance offenses aggregating $25,000 and more in a calendar year from a foreign national and falsification of records;

- Count 3: willfully donating services to mayoral candidates for San Diego, that were financed by Azano;

- Count 19: falsifying records in the San Diego City Clerk's Record of Donations by failing to report $128,000 in services and willfully causing the campaigns to fail to report the donation;

- Count 24: falsifying records in the San Diego City Clerk's Record of Donations by failing to report $191,950 in services and willfully causing the campaigns to fail to report the donation; and

- Count 25: offering and giving $1000 to a federal official in exchange for confidential and classified information.

### III

### ARGUMENT

#### A. Count 3 States an Offense Under 2 U.S.C. § 441e and 437g

Singh contends that the substantive campaign finance charge is deficient and must be dismissed because it purportedly fails to allege (1) that Singh knew that Azano was a foreign national; and (2) that Singh "knew of his legal duty" under 441e, prohibiting foreign national funds. Neither requires dismissal.

A defendant unquestionably enjoys the right to "be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI. The Sixth Amendment right to notice is implemented by the requirement in Federal Rule of Criminal Procedure 7(c) that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). An indictment's sufficiency is analyzed to confirm that it simply

(1) contains the necessary elements of the crime alleged, (2) informs the defendants of the crime charged with sufficient clarity to allow them to adequately defend against the charges, and (3) is stated with sufficient clarity to bar subsequent prosecution for the same offense.  United States v. Buckner, 610 F.2d 570, 573 (9th Cir.1979); Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907 (1974).  The test is not whether an indictment "could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."  United States v. Awad, 551 F.3d 930, 935 (9th Cir. 2009).

An indictment which tracks the words of the statute charging the offense may be sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense. Hamling, 94 S.Ct. at 2907.  The indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied."  United States v. O'Donnell, 608 F.3d 546, 556 (9th Cir. 2010).

A felony conviction under section 441e(a)(1)(A) requires proof that a (1) foreign national; (2) knowingly and willfully; (3) made, either directly or indirectly, a contribution or donation in connection with a federal, state, or local election; and (4) the contributions and donations aggregated to $25,000 or more in one calendar year.  Count 3 alleges just that.  It provides that Singh and others

> willfully did directly and indirectly make a contribution and donations of a foreign national aggregating $25,000 and more during a calendar year in connection with federal and local elections---to wit, . . . (b) by donating approximately $128,000 of services to Candidate 1's campaign

7

for the office of Mayor of San Diego during the 2012 primary election cycle, as financed by Jose Susumo Azano Matsura, . . (f) by donating services worth approximately $190,000, financed by defendant Jose Susumo Azano Matsura to Candidate 3's campaign for office of mayor of San Diego during the 2012 general election cycle; all in violation of Title 2, United States Code, Sections 437g(d)(1)(A) and 441e(a)(1)(A) and Title 18, United States Code, Section 2.

Superseding Indictment ¶ 27.

Singh nonetheless claims that Count 3 is deficient because it fails to expressly state that Singh knew that Azano was a foreign national. But Singh's liability as an aider and abetter under section 2(a) does not require any allegation setting forth such knowledge. While aiding and abetting liability requires proof that a "defendant acted with the knowledge and intention of helping [another] person commit" the substantive offense, Model Jury Instructions for the Ninth Cir. § 5.1, that knowledge "need not be alleged in the indictment." United States v. Garrison, 527 F.2d 998, 999 (8th Cir. 1976) (citing Grant v. United States, 291 F.2d 746, 748-49 (9th Cir. 1961)); Grant, 291 F.2d at 749 ("The word abet contains within it an implication of guilty knowledge on the part of the participant."). Indeed, aiding and abetting liability need not be alleged in the indictment at all, let alone the knowledge required to sustain a conviction under section 2. See, e.g., United States v. Vaandering, 50 F.3d 696, 702 (9th Cir.1995).

In any event, the indictment alleges that Singh acted "willfully." Willfully means that he acted with "an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." Bryan v. United States, 524 U.S. 184, 193

8

(1998).  In the context of campaign finance laws, "willfully" means that "a person knew his conduct violated some law," though the government is not required to "prove which one."  United States v. Whittemore, 944 F. Supp. 2d 1003, 1010 (D. Nev. 2013); see also United States v. Danielczyk, 788 F. Supp. 2d 472, 491 (E.D.Va. 2011), rev'd in part, 683 F.3d 611 (4th Cir. 2012) ("Government must prove that [the defendant] intended to violate the law (whatever the law was); but it need not prove [the defendant's] awareness of the specific law's commands."); accord Bluman v. Fed. Election Comm'n, 800 F. Supp. 2d 281, 292 (D.D.C. 2011) (section 437g's willfulness clause "will require proof of the defendant's knowledge of the law").  By alleging that Singh acted "willfully," the indictment necessarily alleges that Singh acted with the understanding that the campaign contributions and efforts to conceal Azano as the funding source were unlawful—because Azano was a foreign national. Cf. United States v. Davis, 336 F.3d 920, 924 (9th Cir. 2003) (term "escape" unambiguously conveys the required mens rea).  Nothing more is required to fulfill the notice and double jeopardy functions of an indictment.

Moreover, the Superseding Indictment, "read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied," O'Donnell, 608 F.3d at 556, readily establishes that Singh knew that Azano was a foreign national and that the funding procedures he established for ElectionMall, Inc. were designed as a "secret method" to have Azano finance candidates' campaigns without detection.  See, e.g., Superseding Indictment ¶ 21d, h.

9

Singh is alleged to have "arranged unreported in kind contributions to various candidates," to then obtain funding from Azano, never invoice the campaign, and successfully ensure that Azano's "name did not appear on public filings in connection with the illegal contributions and donations." Id. ¶ 21h-j. The contributions were illegal, of course, because Azano was a foreign national.

For many of the same reasons, Singh's challenge to the willfulness requirement of section 437g fails. Singh suggests that the absence of specific words in the indictment indicating that he acted with knowledge of "his legal duty under Sections 437g(d)(1)(A) and 551e(a)(1)(A)" requires dismissal of the indictment. Singh Mot. [115] at 6. As an initial matter, the statute does not require proof that Singh acted with the knowledge that his conduct violates sections 437 and 441e specifically; it requires only that Singh acted with the knowledge that his conduct violates "some law." Whittemore, 944 F. Supp. 2d at 1010 (D. Nev. 2013); see also Danielczyk, 788 F. Supp. 2d at 491 ("Government must prove that [the defendant] intended to violate the law (whatever the law was); but it need not prove [the defendant's] awareness of the specific law's commands.").

But either way, the indictment is sufficient. The term "willful" necessarily conveys knowledge that some law is violated by one's conduct. Bryan, 524 U.S. at 193. No more is required, as the language of the count sets forth the elements required to commit the offense, and provides adequate notice to Singh that his conduct violates the law. Cf. United States v. Thordarson, 646 F.3d 1323, 1337 (9th Cir.

10

1981) ("The word 'willfully' read in the context of the statutory language used in the indictment as a whole, is sufficient to allege the requisite criminal intent."). Moreover, as above, the Superseding Indictment, "read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied," O'Donnell, 608 F.3d at 556, establishes that Singh acted in his secret ways because he knew that they were unlawful. Aside from the email he sent asking his co-conspirator to exercise caution in discussing the campaign finance scheme, "because of the legal ramifications," the methods he designed to provide in-kind services to campaigns were all designed specifically to conceal Azano's financing. See Superseding Indictment ¶¶ 21, 22, 27.

Count 3 alleges the necessary facts and elements required to fulfill Rule 7's command that it set forth a plain, concise and definite statement of Singh's conduct. The motion to dismiss should be denied.

**B. Sections 1519 and 2b Cover the Conduct Alleged in Counts 19 and 24**

Singh next moves to dismiss Counts 19 and 24 for failure to state an offense, contending that omissions in the campaign records cannot constitute obstructive acts under section 1519, and that the counts fail to allege that he acted with the intent "to impede a federal investigation." Mot. [115] at 7-10. Neither supports dismissal here.

Section 1519, colloquially known as the "anti shredding" statute, was enacted in part by the revelation of "massive accounting fraud" at Enron and Arthur Andersen LLP. Yates v. United States, 135 S. Ct. 1074, 1081 (2015). Prior obstruction statutes

reached only records destruction or falsification efforts when a person persuaded another to destroy records, but imposed no liability on individuals who shredded or falsified documents himself.  Id.  The Sarbanes-Oxley Act of 2002, 116 Stat. 745, addressed that gap with the passage of section 1519, which provides

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519.

Although the initial motivation for section 1519 was financial fraud, the legislative history confirms that the statute was intentionally broad.  See 148 Cong. Rec. 14,449 (2002) ("Section 1519 is meant to apply broadly[.]"); S. Rep. No. 107-146 at 14 ("Section 1519 is meant to apply broadly[.]").  "The intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function."  S. Rep. 107-146 at 15.  That breadth simplifies the proof required for a conviction under section 1519.  For example, the statute requires proof only that a person (1) knowingly falsifies a record, (2) with the intent to obstruct or impede or influence the investigation of any matter or in contemplation of such matter and (3) the matter is within the jurisdiction of any department or agency of the United States.

The Superseding Indictment charges that Singh and his coconspirators "did knowingly alter, conceal, cover up, falsify and make a false entry into a record and document with the intent to impede, obstruct and influence the investigation and proper administration of matters within the jurisdiction of the [FBI] – to wit, by concealing and covering up, in records specified below, the fact that [Azano] was the true source of the following campaign donations and contributions." For Count 19, that was causing the creation and submission of a San Diego City Clerk's office record that omitted any reference to $128,000 in in-kind services provided by Singh as financed by Azano. For Count 24, that was causing the creation and submission of a San Diego City Clerk's office record that omitted any reference to $191,950 in in-kind services provided by Singh as financed by Azano.

Under section 1519, that is sufficient to state a claim. The elements are set forth in the language of the count; the facts are identified that would bring Singh's conduct within the scope of section 1519; and the count fulfills the notice and double jeopardy bar functions required to sustain an indictment. Singh nonetheless claims that the omission of his donations from the campaign records cannot support a § 1519 prosecution because omissions are not actionable because he had no duty to report the donations. Mot. [115] at 8-9. But that is not true. Under California law, any person or group of person who donate or independently expend more than $10,000 on behalf of a candidate is considered a "committee." See San Diego Municipal Election Campaign Control Ordinance ("SDMECCO") § 27.2903; Cal. Gov. Code § 82013.

13

"Committees" are required to disclose contributions and expenditures made in connection with an election. Cal. Gov. Code § 84203.5; SDMECCO § 27.2930. Those contributions must be reported on California Form 465 or Form 496, depending on the time of the contribution or expenditure. Id.

The value of the contributions (whether seen as a donation or independent expenditure) alleged in the Superseding Indictment ($128,000 in February 2012 for Count 19 and $191,950 in November 2012 for Count 24) renders Singh a "committee" within the meaning of San Diego and California election law. See San Diego Municipal Election Campaign Control Ordinance § 27.2903; Cal. Gov. Code § 82013. Accordingly, Singh was subject to a reporting duty, making his omissions actionable under section 1519. United States v. Norman, 2015 WL 737649, *4-6 (E.D. Pa. Feb. 23, 2015) (collecting cases and concluding that "an omission can indeed constitute a violation of § 1519"); United States v. Taohim, 529 Fed. App'x 969, 974 (11th Cir. 2013) (describing omission of information from a record book that served as basis for § 1519 prosecution).

Even if Singh had no independent duty to report his donations and expenditures,[2] Singh ignores the import of section 2(b) liability. By his actions, Singh willfully caused the campaign to make and submit falsified campaign records (or make records containing false entries). Under well-established law regarding

---

[2] Courts have premised § 1519 liability on defendants who have no duty to create or retain records at all. See, e.g., United States v. Kernell, 667 F.3d 746, 756 (6th Cir. 2012) ("In addition, courts have imposed liability under § 1519 on defendants who clearly had no legal obligation to create or maintain the records at issue.").

14

section 2(b) liability ("whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal"), Singh is liable for the omissions he willfully caused from the campaigns' disclosures. 18 U.S.C. § 2(b).

Singh does not (and on the face of the indictment cannot) dispute that donations to campaigns "had to be reported to government agencies, which maintained records that the public and law enforcement agencies could access." Superseding Indictment ¶ 16. That is the prevailing law. Campaigns themselves are required to submit donation records under San Diego law. See Superseding Indictment ¶ 16; see also San Diego Municipal Code §§ 27.2930, 27.2931 (requiring disclosure of campaign contributions, which include, among other things, the "forgiveness of a debt or other obligation to pay for goods or services rendered, or reduction of the amount of the debt or other obligation to pay for goods or services rendered"). The campaign records submitted in this case were false: they omitted the in-kind donations financed by Azano. If Singh himself had submitted the campaign records that are the subject of Counts 19 and 24, he would have knowingly created and submitted a falsified record because the record did not contain entries about the money he had donated, a § 1519 offense. Singh does not evade criminal culpability by causing the campaign instead to submit the falsified record. See, e.g., United States v. Fairchild, 990 F.2d 1139, 1141 (9th Cir. 1993) (though defendant did not make false statements himself or direct anyone to make false statements, he could be held liable under 18 U.S.C. § 2(b)

because of actions that caused false statements to be made to the government); <u>United States v. Causey</u>, 835 F.3d 1289 (9th Cir. 1987) (tax preparer may be held liable under § 2 for making a false tax claim when he causes another to file the tax claim); <u>United States v. Rowland</u>, 2014 WL 3341690 (D. Conn. July 8, 2014) (explaining section 2b liability for false statements made by a candidate to the Federal Election Commission, which were caused by the defendant, a political consultant, who attempted to conceal his efforts in the campaign).  Because Singh willfully caused the campaign to falsify a record of campaign donations (by concealing and covering up his funding of Singh's work), he "is punishable as a principal for the offense."  18 U.S.C. § 2(b).

Nor may Singh challenge the counts for failure to allege "that Singh acted with the requisite intent to impede a federal investigation."  Mot. [115] at 10.  First, the statute does not require proof of an intent to impede a <u>federal</u> investigation.  <u>See, e.g.</u>, <u>United States v. McQueen</u>, 727 F.3d 1144, 1152 ("There is nothing in the language that says the defendant must also know that any possible investigation is federal in nature."); <u>id.</u> ("'Any matter within the jurisdiction' is merely a jurisdictional element, for which no mens rea is required."); <u>United States v. Gray</u>, 692 F.3d 514, 519 (2d Cir. 2012) ("[T]he plain language of the statute only requires the Government to prove that [a defendant] intended to obstruct the investigation of <u>any</u> matter that happens to be within the federal government's jurisdiction."); <u>United States v. Yielding</u>, 657 F.3d 688, 714 (8th Cir. 2011).  It requires simply that an obstructive act be taken with the intent to obstruct a matter that happens to fall within the federal government's

jurisdiction. Indeed, section 1519 does not even require a "pending or imminent proceeding or matter" at the time the obstructive conduct is taken. S. Rep. No. 106-146 at 15; see also United States v. Kernell, 667 F.3d 746, 755 (6th Cir. 2012). It requires simply that the obstructive conduct be taken in contemplation of a matter that may occur in the future, with the requisite intent.

Singh does not dispute that the language of the counts includes the allegation that Singh acted with "the intent to impede, obstruct and influence the investigation and proper administration of matters within the jurisdiction of the" FBI. Superseding Indictment ¶ 31; Mot. [115] at 10. Singh claims, however, that the phrase is "conclusory" and divorced from any facts. But where "the language of the statute defining the offense charged is, 'according to the natural import of the words,' fully descriptive of the offense, then ordinarily it is sufficient' to charge a substantive offense by simply adopting or paraphrasing the words of the statute."[3] United States v. Schneiderman, 102 F. Supp. 87, 92 (S.D. Cal. 1951). This is particularly true for allegations about intent. "Intent may always be averred in general terms." Id.

---

[3] Singh cites Schneiderman in support of his argument, claiming that the case shows that an allegation of intent is inadequate. Mot. [115] at 9. But in Schneiderman, the words of the statute were not "fully descriptive of the elements." The statute at issue there had been interpreted by the Supreme Court to require intent to act with violence with temporal limitations, to avoid First Amendment issues that would otherwise arise. The indictment there did not include any allegations that would capture that intent. As a result, the district court concluded that the indictment was insufficient. Here, however, no narrowing construction of the statute beyond the words of the offense is necessary. Accordingly, "the language of the statute defining the offense charged is, 'according to the natural import of the words,' fully descriptive of the offense," so that it is "sufficient' to charge a substantive offense by simply adopting or paraphrasing the words of the statute." Id.

17

(quoting <u>Evans v. United States</u>, 153 U.S. 584, 594 (1894)); <u>Evans</u>, 153 U.S. at 594 ("So, in an indictment for murder, it is necessary to aver that the killing was done willfully, feloniously and of malice aforethought; but the evidence that it was so done, though necessary to be given [at trial], is not necessary to be set forth."). The indictment adequately charges that Singh acted with the requisite intent in the appropriate "general terms."

Beyond the adequacy of the intent language expressly contained in the counts, the indictment's facts establish the requisite intent when "read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." <u>O'Donnell</u>, 608 F.3d at 556. As the facts alleged recount, the entire purpose of Singh and Azano's schemes was to hide Azano's financial participation in the elections from authorities. The efforts to conceal and cover up Azano's donations, either by failing to report them or by willfully causing the campaigns to unreport them, were inherently efforts designed to impede investigation into the financial participation of a foreign national. Accordingly, the facts in the indictment show that Singh acted with the necessary intent. No more was necessary. <u>See also</u> <u>United States v. Boren</u>, 278 F.3d 911, 914 (9th Cir. 2002) (internal citation omitted) (A "motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

The motion to dismiss Counts 19 and 24 should be denied.

### C. Count 1 States a Conspiracy Offense

Singh's challenge to the conspiracy offense in Count 1 of the Superseding Indictment is principally a derivative challenge, grounded in his complaints about the substantive counts set forth above. Singh claims that the failure to allege the requisite mens rea in Count 3 and the failure to state 1519 offenses in Counts 19 and 24 means that "the conspiracy to commit these offenses fails because no substantive offense could have been committed under the facts alleged." Mot. [115] at 11. But as established above, no deficiency infects the substantive counts that could render the conspiracy count deficient as well.

Even if that were not the case, it "is well settled that in an indictment for conspiring to commit an offense---in which the conspiracy is the gist of the crime---it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, or to state such object with the detail which would be required in an indictment for committing the substantive offense." Wong Tai v. United States, 273 U.S. 77, 81 (1927); see also United States v. Lane, 765 F.2d 1376, 1380 (9th Cir. 1985) ("Since conspiracy is the gist of the crime, the indictment need not state the object of the conspiracy with the detail that would be required in an indictment for committing the substantive offense."). In an indictment alleging a conspiracy under section 371, all that is required is an allegation that there was "an agreement, the unlawful object toward which the agreement is directed, and an overt act in furtherance of the conspiracy."

Lane, 765 F.2d at 1380. In the 11 pages setting forth the facts of the conspiracy, the three elements are unquestionably set forth in great detail, and Singh's contrary protests are not grounded in the relevant law or the facts set forth in the Superseding Indictment.

### D. Count 25 States a Bribery Offense

Finally, Singh asserts that Count 25 contains a "bare conclusion of law alone," and is therefore inadequate to set forth a bribery offense under 18 U.S.C. § 201(b). But the count indisputably tracks the language of the statute, which is sufficient here since the words unambiguously set forth all elements necessary to constitute the offense. Hamling, 94 S.Ct. at 2907. In addition, the count identifies facts that both establish the elements of the offense and provide notice of the acts to which Singh must defend. In the relatively short time frame between December 2013 and January 2014, Singh corruptly gave a thing of value to a public official with the intent to influence an official act and to induce the public official to act in violation of his lawful duties, "to wit, by offering and giving $1000 to a federal official in exchange for confidential and classified information." Superseding Indictment ¶ 32. Thus, far from providing just a "bare conclusion of law" and in addition to tracking the language of the statute, the Superseding Indictment identifies when, who and how Singh completed his bribery offense. That satisfies Rule 7's command that the

1  indictment be plain, concise, and contain sufficient facts.[4]   The motion to dismiss

2  should be denied.

## IV

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss
Counts 1, 3, 19, 24 and 25.

DATED: July 3, 2015                              Respectfully submitted,

                                                 s/ William P. Cole
                                                 s/ Andrew G. Schopler
                                                 s/ Helen H. Hong
                                                 WILLIAM P. COLE
                                                 Acting United States Attorney
                                                 ANDREW G. SCHOPLER
                                                 HELEN H. HONG
                                                 Assistant United States Attorney

---

[4]      Singh suggests that additional facts are necessary to determine whether
sufficient evidence supports the indictment.  Mot. [115] at 103.  But an indictment
may not be dismissed "on the ground that [it is] not supported by adequate or
competent evidence." <u>Costello v. United States</u>, 350 U.S. 359, 364 (1956).

*14CR0388-MMA*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

RAVNEET SINGH (2),

        Defendant.

Case No.: 14CR0388-MMA

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

    I, William P. Cole, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action.  I have caused service of the foregoing brief on the parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on July 3, 2015

                    *s/ William P. Cole*

                    WILLIAM P. COLE