1 | **KNUT S. JOHNSON**
California Bar No. 125725
2 | **LAW OFFICE OF KNUT S. JOHNSON**
550 West C Street, Suite 790
3 | San Diego, CA 92101
(619) 232-7080
4 | knut@knutjohnson.com

5 | **JOHN C. LEMON**
California Bar No. 175847
6 | **LAW OFFICES OF JOHN C. LEMON, APC**
1350 Columbia Street, Suite 600
7 | San Diego, California  92101
(619) 794-0423
8 | john@jcl-lawoffice.com

9 | Attorneys for Mr. Azano

10 | UNITED STATES DISTRICT COURT

11 | SOUTHERN DISTRICT OF CALIFORNIA

12 | **(HONORABLE MICHAEL M. ANELLO)**

13 | UNITED STATES OF AMERICA,          )          Criminal No. 14cr388-MMA

14 |          Plaintiff,          )

15 | v.          )

16 | **JOSE SUSUMO**          )          **Statement of Facts and Memorandum**
**AZANO MATSURA (1),**          )          **of Points and Authorities**

17 |          Defendant.          )

18 | _____          )

19 |

20 | *It is [] easier to say what a disinterested prosecutor is not than what [s]he is. [S]he is not*
21 | *disinterested if [s]he has, or is under the influence of others who have, an axe to grind*
*against the defendant, as distinguished from the appropriate interest that members of*
22 | *society have in bringing a defendant to justice with respect to the crime with which he is*
*charged.*[1]

23 |

24 |

25 |

26 |

27 | _____

28 | [1]     *Wright v. United States,* 732 F.2d 1048, 1056 (2d Cir. 1984).

# I.

## Introduction

From its inception, the prosecution of Susumo Azano has been a retaliatory strike, engineered by agents of Sempra and executed by the local U.S. Attorney's Office.  And while the government scoffs at this contention, the cold record says otherwise.  Indeed, despite the government's stonewalling virtually all of Azano's legitimate discovery requests, there is ample evidence for this Court to conclude that Azano has been denied his Fifth Amendment right to a "disinterested prosecutor."  He accordingly moves this Court to dismiss the indictment under its supervisory powers or, failing that, to recuse the entire U.S. Attorney's Office for the Southern District of California.

# II.

## Pertinent Facts[2]

### A.    Background

Susumo Azano is an investor and businessman who is primarily engaged in the sale of security technologies to legitimate governments interested in monitoring and combating organized crime and terrorism.  His company, Security Tracking Devices, has been licensed by the U.S. Department of State to sell surveillance equipment and he has assisted the law-enforcement agencies of several governments, including the United States, on multiple occasions.  For example, in 2008, he helped the governments of both Mexico and the United States rescue dozens of U.S. and Mexican citizens who were being held hostage in Mexico.  And in recognition for that assistance, in 2009 Azano received a commendation from the U.S. government.[3]

---

[2]    The following facts appear almost verbatim in Azano's June 5, 2015 discovery-related motions, CR 108, but are repeated here for the convenience of the Court and the parties.

[3]    *See* CR 113 (Dec. of Knut S. Johnson).

1  He is also a philanthropist who routinely makes significant, unpublicized
2  contributions to good causes.  For example, he donated $75,000 to tsunami relief in 2011,
3  $50,000 to a grade school in 2011, $250,000 to treat a seriously ill child in Mexico in
4  2009, and $10,000 to a law-enforcement foundation in 2011.[4]

5  Apparently because of his status as an affluent foreign national, however, Azano
6  has also been the target of spurious allegations of criminal activity and the victim of a
7  campaign of harassment, which was at first perpetrated principally by a single Homeland
8  Security Investigations (HSI) agent, John Chakwin III.[5]  From 2008 through September
9  30, 2010 (when Chakwin purportedly closed his investigation for insufficient evidence)[6]
10  and again in 2012-13, Chakwin wielded the considerable powers of his agency to
11  investigate Azano for a panoply of imagined offenses (including narcotics trafficking,
12  money laundering, and weapons trafficking) and – because the allegations are completely
13  and utterly false – came up empty.  Moreover, Chakwin failed despite the fact that he
14  routinely subjected Azano's aircraft to intrusive searches, issued numerous investigative
15  subpoenas for Azano's financial records, and threatened to put Azano's employees in jail
16  if they did not corroborate Chakwin's suspicions.[7]  Chakwin's harassment was so
17  persistent and invasive, in fact, that on April 15, 2013, Azano submitted a formal letter of
18  complaint to the Office of the Inspector General and the Federal Bureau of Investigation.[8]
19  //
20  //
21  //

---

[4]   *See* CR 113.

[5]   *See, e.g.,* EM_AGT RPT_ROIs 000003 (anonymous Source of Information
telling Chakwin that Mr. Azano has conspicuous wealth).

[6]   *See* EM_AGT RPT_ROIs_001271.

[7]   *See* EM-AZANO-MISC-000105 - 112 (formal complaint regarding Chakwin).

[8]   EM-AZANO-MISC-000105 - 112.

**B.    Litigation with Sempra Over Real Estate in Ensenada and the DOJ's Investigation of Sempra Under the Foreign Corrupt Practices Act**

*1.    Ramon Sanchez Ritchie's Dispute with Sempra Over Property Adjacent to Sempra's Liquid-Natural-Gas Plant*

In January 2005, the Mexican government awarded a subsidiary of Sempra Energy, Sempra LNG, a 15-year, natural-gas-supply contract estimated at $1.4 billion.  Sempra then began construction of its Costa Azul liquid-natural-gas plant ("LNG plant") in Baja California, which is adjacent to the property of a man named Ramon Sanchez Ritchie.[9]

The lucrative gas-supply contract required Sempra to acquire all the land adjacent to the LNG plant, which the contract designated as "setback cushions."  These setback cushions were required because of the danger to the community posed by the LNG plant.[10] By the time that Sempra was awarded the contract in 2005, it had acquired all the requisite setback-cushion properties, save one: the land belonging to Ramon Sanchez Ritchie, who refused to sell.[11]  Without Sanchez Ritchie's property, Sempra's operation of its LNG plant would violate the terms of its gas-supply contract; Sanchez Ritchie thus posed a significant impediment to Sempra's liquid-natural-gas business in Ensenada.

Naturally, litigation ensued.  The short version of that litigation is that Sempra claimed to have title to Sanchez Ritchie's land, while Sanchez Ritchie – who has consistently prevailed in both the Mexican and U.S. courts – maintained that Sempra had "implemented secret schemes to fraudulently acquire possession" of his property, including the attempted bribery of Mexican officials.[12]  Of significance here, Susumo Azano joined the fray on the side of Sanchez Ritchie, providing capital to support his

---

[9]    Complaint filed by Ramon Sanchez Ritchie against Sempra Energy on July 20, 2010.  10cv1513-CAB CR 1 at 7.

[10]    10cv1513-CAB CR 1 at 6.

[11]    10cv1513-CAB CR 1 at 7.

[12]    10cv1513-CAB CR 1 at 7-8.

litigation.  After Sanchez Ritchie sued Sempra in federal district court in San Diego, Sempra counter-claimed and added Azano as a defendant, alleging violations of RICO and the Foreign Corrupt Practices Act.[13]  U.S. District Judge Cathy A. Bencivengo dismissed these claims against Azano with prejudice on October 15, 2013.[14]

> *2.     The FBI's Investigation of Sempra Under the Foreign Corrupt Practices Act*

In November 2010, Sempra came under significant scrutiny by the *San Diego Union Tribune* and "several other media outlets" as a result of a whistle-blower complaint filed by a former employee, Rodolfo Michelon.[15]  In substance, Michelon stated that he was instructed by a high-ranking Sempra employee to provide 180,000 Mexican pesos to another Sempra employee who would "post a bond," which was actually "a bribe to an official at the [Ensenada Attorney General's] office to evict [Sanchez Ritchie] from his property."[16]

As a result of Michelon's complaint and the ensuing media attention, the Department of Justice began an investigation of Sempra.  An FBI report dated March 15, 2011, concluded that, based on a "clear indication of a quid pro quo arrangement" between Sempra and Mexican officials, "there are ample facts and indicators which reflect that Sempra and its business executives may have engaged in criminal activity so as to justify the opening of a full investigation."[17]

Unlike the vast majority of those who become targets of a federal investigation, however, Sempra was afforded the opportunity to investigate *itself* and report its findings to the FBI.  Sempra hired Attorney Robert Brewer of Jones Day "to conduct [that] internal

---

[13]   10cv1513-CAB CR 74.

[14]   10cv1513-CAB CR 114.

[15]   EM-AZANO-MISC-000410 (redacted FBI Report of Investigation).

[16]   EM-AZANO-MISC-000411 (redacted FBI ROI).

[17]   EM-AZANO-MISC-000413-14 (redacted FBI ROI).

1  investigation,"[18] which – to the surprise of presumably no one – found that Sempra was

2  completely blameless.[19]  Specifically, Brewer's "investigation concluded that the cash

3  payment [from Sempra] was not a bribe but was used toward the legitimate posting of a

4  bond with the [Ensenada Attorney General's] office."[20]

5      Brewer's investigatory findings and recommendations were not limited to merely

6  exonerating his own client, however.  On at least two occasions, Brewer urged the

7  Department of Justice to investigate his client's adversary in the Sanchez Ritchie dispute,

8  Susumo Azano.[21]  On February 16, 2011, Brewer specifically recommended that the DOJ

9  resume HSI Agent Chakwin's now-suspended investigation against Azano,[22] whom

10 Brewer erroneously blamed for a temporary shutdown of Sempra's LNG plant during a

11 stand-off between Mexican federal and local authorities.[23]  And on April 29, 2011, Brewer

12 "renewed his request that the DOJ investigate [Azano]," falsely claiming that Azano was

13 "associated with drug dealers" and reiterating his baseless charge that Azano was

14 responsible for the temporary shutdown of the LNG plant.[24]

15     On June 1, 2011, the United States Attorney for the Southern District of California,

16 Laura Duffy, wrote to Brewer regarding the alleged FCPA violation "in connection with

17 real estate litigation and an eviction proceeding in Mexico . . . concern[ing] property

18

19

---

20     [18]   EM-AZANO-MISC-000411(redacted FBI ROI).

21     [19]   EM-AZANO-MISC-000447 (redacted FBI ROI).

22

23     [20]   EM-AZANO-MISC-000447 (redacted FBI ROI).

24     [21]   EM-AZANO-MISC-000444 (redacted FBI ROI).

25     [22]   The fact that Brewer, a partner in a large law firm, was aware of Chakwin's

26 investigation of Azano suggests that there was a leak in the Department of Justice.

27     [23]   EM-AZANO-MISC-000427 (redacted FBI ROI).

28     [24]   EM-AZANO-MISC-000444 (redacted FBI ROI).

14cr388-MMA

adjacent to Sempra's [] LNG plant near Ensenada."[25]  Duffy's letter (which was also signed by the Deputy Chief of the DOJ's Fraud Section, Charles LaBella) assured Brewer that, on the basis of "certain information" that Brewer had provided, the DOJ "presently does not intend to take any enforcement action against Sempra or its agents."[26]  And in a report dated June 15, 2011 – again based on the information provided by Brewer – the "DOJ concluded that no additional investigation was warranted as all allegations had been adequately addressed by Sempra, and no enforcement action was necessary."[27]  The U.S. Attorney thus permitted Sempra to exonerate itself.

The Department of Justice then did exactly what Brewer had repeatedly urged it to do: it turned its investigatory resources 180 degrees and pointed them directly at Susumo Azano.  Unlike Sempra, however, Azano was not even notified that he was a target, much less afforded the opportunity to have his own lawyers investigate his alleged wrongdoing and then persuade the DOJ that he was innocent.

**C.    The Government's Rebound Investigation of Azano**

> *1.    AUSA Perry's First Application for Disclosure of Email Subscriber Information*

On July 1, 2011 – just 16 days after the DOJ's conclusion that "no enforcement action [against Sempra] was necessary" – U.S. Attorney Laura Duffy and Assistant U.S. Attorney Tim Perry applied to the court for an "order authorizing disclosure of subscriber and other information" for three email accounts, one of which was Susumo Azano's.[28] Perry's application was based exclusively on Brewer's allegations that, during the course of the ongoing Sanchez Ritchie litigation, "[a] group of individuals in Mexico and the

---

[25]   EM-AZANO-MISC-000445 (redacted).

[26]   EM-AZANO-MISC-00445 (redacted).

[27]   EM-AZANO-MISC-000450 (redacted ROI).

[28]   EM_PLDGS_00000297.

1   United States have engaged in extortionate threats [against Sempra]."[29]  Importantly, the

2   application explicitly identified Ramon Sanchez Ritchie as a property owner currently

3   litigating against Sempra over land adjacent to the LNG plant, and Azano as a financial

4   supporter of Sanchez Ritchie.[30]

5       Perry's application is significant in three other respects.  First, because its

6   allegations mirror the charges made by Sempra in its now-dismissed counterclaim against

7   Azano, the application gives the appearance that the U.S. Attorney's Office entered the

8   Sanchez Ritchie dispute on behalf of the influential local energy conglomerate and against

9   its perceived antagonist and San Diego outsider, Susumo Azano.  Moreover, the fact that

10  Perry's stated reason for the investigation – the alleged extortion of Sempra – would lead

11  nowhere, but that Azano would ultimately be indicted for wholly unrelated violations of

12  purely regulatory campaign-finance laws, heightens the appearance of impropriety (i.e.,

13  that this is a retaliatory prosecution).  Indeed, Perry's application makes no mention

14  whatsoever of a campaign-finance investigation.  Nor could it – the alleged campaign-

15  finance violations did not occur until several months after the application.

16      Second, Perry's application cryptically states that "[a]gents of Sempra are in the

17  possession of an email chain in which Azano participated."[31]  What Perry does not

18  divulge, however, is *how* Sempra acquired confidential emails involving Azano, who has

19  reason to believe that Sempra's agents obtained the email chain in violation of state and

20  federal law.  Indeed, Perry is careful to state that "agents of Sempra," rather than federal

21  agents, "are in the possession of" the emails, and the government has subsequently taken

22  the position that it "does not possess the email chain."[32]  That the government has

23  ───────────────

24      [29]   EM_PLDGS_00000298.

25      [30]   EM_PLDGS_00000299.

26      [31]   EM_PLDGS_00000301.

27      [32]   See CR 108, Exhibit A (Sept. 22, 2014 letter from Acting U.S. Attorney

28  William Cole to Knut S. Johnson).

14cr388-MMA

obviously been careful *not* to take possession of the email chain – which could easily be forwarded with the click of a mouse – suggests that it is aware that Sempra broke the law when it acquired the correspondence.  At a minimum, Perry's reference to the email chain demonstrates that the U.S. Attorney's Office was working hand-in-hand with Sempra in its prosecution of Azano.  And because Sempra likely obtained this correspondence through illicit means, Perry's collaboration with Sempra's agents also heightens the appearance of impropriety.

Finally, while Perry's application does disclose that his office had recently investigated Sempra and declined prosecution, it also affirmatively states that "[t]he prosecution team involved in [the Sempra FCPA] investigation does not overlap with the team handling the investigation of Azano and others."[33]  While this representation might have been true at the time it was made, it did not remain true for long; as discussed below, the FBI case agent responsible for the Sempra FCPA investigation, Erin Phan, is also the case agent in this prosecution.

2.     *TFO McKewen's Application for a Sneak-and-Peek Warrant, AUSA Perry's Application for Pen-Register Information, and Agent Phan's Wiretap Affidavits*

On August 22, 2012, Federal Task Force Officer Michael McEwen applied for a delayed-service or "sneak-and-peek" search warrant for office suites used by Azano.[34] Submitted over a year after Perry's first application for email-subscriber information, McKewen's affidavit was – by now – not limited to Sempra's unfounded extortion claim. Rather, McKewen represented to the court that there was "probable cause" to believe that Azano had committed a number of offenses, including tax evasion, structuring of deposits, interference with the Federal Aviation Administration, and (of course) extortion of

---

[33]   EM_PLDGS_00000301.

[34]   EM_PLDGS_002333.

1   Sempra.[35]  It bears repeating that Azano was ultimately indicted on exactly *none* of these

2   charges, which stands to reason, because they are completely false.

3         Notably, however, McEwen's affidavit alleges campaign-finance offenses,[36] while

4   at the same time acknowledging that Azano employed a former SDPD officer, Ernie

5   Encinas, as a security guard.[37]  Similarly, in a June 20, 2012 pen-register application

6   submitted to the court by AUSA Perry, he represented that Azano was under investigation

7   for alleged campaign-finance offenses and also noted that Encinas worked as a security

8   guard for Azano.[38]  These representations are significant because of a subsequent wiretap

9   application submitted by case agent Erin Phan for Encinas's phone and what that

10  application *omits*: any mention of Susumo Azano.

11        On June 21, 2013, when Encinas was still employed by Azano, Phan applied for a

12  wiretap of Encinas's phone.[39]  Phan's affidavit stated – exclusively – that the reason for

13  the wiretap was her investigation into Encinas, who "has sought to deprive the public of

14  honest services."[40]  Although federal prosecutors and agents quite obviously knew that

15  Encinas worked as a security guard for Azano, whom the government was (by now)

16  investigating for campaign-finance violations, Phan's affidavit does not identify Azano as

17  a target.  Indeed, although the wiretap on Encinas was, of course, used in the investigation

18  of Azano, Phan's first wiretap affidavit conspicuously omits any reference to Azano,

19  whatsoever.

20

---

21        [35]   EM_PLDGS_002340.

22

23        [36]   EM_PLDGS_002340.

24        [37]   EM_PLDGS_002345.

25        [38]   EM_PLDGS_00000007 (this application omits any reference to the DOJ's
    short-lived FCPA investigation of Sempra).
26

27        [39]   EM_PLDGS_00000193.

28        [40]   EM_PLDGS_00000197.

**D.     Potential Conflicts of Interest and the Appearance of Impropriety**

The prosecution of Susumo Azano labors under several potential conflicts of interest and appearances of impropriety.  The following list is intended to be representative rather than exhaustive.

●     *United States Attorney Laura Duffy*.  Duffy was the primary signatory on the June 1, 2011 letter from the Department of Justice to Robert Brewer, advising him that – based on information that Brewer had provided – the DOJ was not going to prosecute Sempra for violating the Foreign Corrupt Practices Act with respect to its efforts to evict Sanchez Ritchie.[41]  At Brewer's behest, Duffy then immediately began an investigation of Brewer's fallacious claim that Azano was extorting Sempra.  That investigation promptly mushroomed into a sprawling inquest into several imaginary (and ecumenical) offenses, before ultimately resulting in an indictment alleging violations of campaign-finance regulations.  At some point (apparently between January 28 and February 25, 2013), Duffy recused herself from this prosecution without giving a reason.  Her office, which continues to prosecute Azano, has rebuffed repeated defense requests to disclose the basis for her recusal, characterizing those requests as a "road leading to nowhere."[42]

●     *Attorney Robert Brewer*.  Brewer, a partner at Jones Day, was retained by Sempra after the Department of Justice invited Sempra to investigate itself.  After Brewer's investigation predictably yielded a complete exoneration of his client, he repeatedly urged Duffy to investigate his client's long-standing adversary, Susumo Azano, for what Brewer characterized as Azano's extortion of Sempra.[43]  Later, as a candidate for District Attorney, Brewer ran attack ads against incumbent D.A. Bonnie Dumanis based

---

[41]     EM-AZANO-MISC-000445 (redacted).

[42]     CR 60 at 17.

[43]     EM-AZANO-MISC-000427, 444 (redacted FBI ROI).

1   on her implication in the campaign-finance case against Azano.[44]

2        ●    *Daniel Dzwilewski.*  Dzwilewski is the former FBI Special Agent in Charge
3   for the San Diego division.  In 2007, he resigned that position to become Director,
4   Corporate Security & Chief Security Officer for Sempra.  On May 27, 2011 – just four
5   days before Duffy's non-prosecution letter to Brewer – Dzwilewski corresponded with
6   federal agents regarding his unfounded suspicions that Azano had planted a listening
7   device in Sempra's Tijuana office.[45]

8        ●    *FBI Agent Erin Phan*

9        Erin Phan was the FBI agent in charge of the DOJ's investigation of Sempra for
10  violations of the Foreign Corrupt Practices Act.  On March 15, 2011, she recommended a
11  "full investigation" of Sempra,[46] which was either not undertaken or promptly abandoned
12  by Duffy.[47]

13       On June 30, 2011, AUSA Tim Perry submitted his first of many applications to the
14  court, requesting authorization to monitor Azano's electronic communications.[48]  Perry's
15  declaration in support of that application states that "the prosecution team involved in the
16  [Sempra FCPA investigation] does not overlap with the team handling the investigation of
17  Azano."[49]  Despite the fact that this representation appears in several of Perry's

18

19

20

21  _____

22       [44]  *See, e.g.,* www.youtube.com/watch?v=HuCQz05gOQk.

23       [45]  EM-AZANO-MISC-000006.

24       [46]  EM-AZANO-MISC-000410 (redacted FBI ROI).

25       [47]  *See* EM-AZANO-MISC-000445 (Duffy's June 1, 2011 no-enforcement letter
26  to Brewer).

27       [48]  EM_PLDGS_00000302.

28       [49]  EM_PLDGS_00000301.

1  subsequent declarations,[50] Phan is now a case agent – if not the *lead* case agent – in the

2  prosecution of Azano.[51]

3         And as noted above, on June 21, 2013, Phan submitted a wiretap application for

4  Ernie Encinas's phone.  Despite the fact that Susumo Azano was the primary target of the

5  investigation and that the government was well aware that Azano had retained Encinas's

6  company to provide security services – and despite the longstanding requirement that a

7  wiretap application contain a "full and complete" statement regarding the targets and

8  offenses under investigation – Phan's affidavit fails to identify Azano as a target.  In fact,

9  it does not mention him at all.

10         ●   *Charles LaBella*

11         Charles LaBella is the Deputy Chief, Fraud Section of the Criminal Division at the

12  Department of Justice.  He is one of three signatories on Duffy's June 1, 2011 no-

13  enforcement letter to Robert Brewer (the other is the Chief of the Fraud Section, whose

14  name is also redacted).  LaBella was also formerly a law partner of Brewer's at the firm

15  McKenna and Cuneo.[52]

16  //

17  //

18  //

19

20

21

22

23

24

---

25      [50]   *See, e.g.,* EM_PLDGS_00000307; 00000317 (July 25 and August 4, 2011

26  applications for disclosure of subscriber and other information).

27      [51]   *See* EM_PLDGS_002751 (July 22, 2013 wiretap affidavit submitted by Phan).

28      [52]   *See* CR 113 (Dec. of Knut S. Johnson).

**D.** **Azano's numerous requests for disclosures regarding the DOJ's conflicts of interest and Sempra's involvement in this prosecution have been repeatedly rebuffed by the government and denied by this Court.**

Azano has requested, time and again, that the government disclose: 1) the reason(s) for U.S. Attorney Duffy's recusal; 2) any other conflicts of interest (or the appearance of such conflicts) regarding its lawyers or agents involved in this prosecution; and 3) evidence of Sempra's involvement in this prosecution. *See, e.g.,* CR 41, 71, and 108. The government has repeatedly refused to make those disclosures and this Court has denied Azano's motions to compel.[53] *See, e.g.,* CR 58; CR 168.

Azano nonetheless moves to dismiss the indictment or, alternatively, to recuse the U.S. Attorney's Office – the government's stonewalling notwithstanding.

//

//

//

---

[53] The Court has also denied Azano's requests for *in camera* disclosures.

# III.

## The Court should dismiss the indictment under its supervisory powers because of potential, if not actual, conflicts of interest and the appearance of impropriety.

**A.**   **Where the government has failed to satisfy the Court that it is a "disinterested prosecutor," the Court may dismiss the indictment under its supervisory powers.**

Noting that the "appointment of an interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general," the Supreme Court has held that a criminal defendant has a right to a disinterested prosecutor and that the appointment of an interested prosecutor is a "fundamental and pervasive" error that can never be harmless.[54]  Importantly, the High Court has also emphasized the appearance of justice and the perception of the public:

> A concern for actual prejudice in such circumstances misses the point, for what is at stake is the public perception of the integrity of our criminal justice system.  Justice must satisfy the appearance of justice, and a prosecutor with conflicting loyalties presents the appearance of precisely the opposite.[55]

Similarly, the California Supreme Court has observed that "the general principle [is] that a public prosecutor must be free of special interests that might compete with the obligation to seek justice in an impartial manner"[56] and that "[t]he importance, to the public as well as to individuals suspected or accused of crimes, that [a prosecutor's] discretionary functions be exercised with the highest degree of integrity and impartiality, and with the appearance thereof cannot easily be overstated."[57]

More specifically, the Second Circuit has noted that an indictment may be dismissed by a trial court if it is not satisfied that the "prosecutor [has] avoid[ed] the

---

[54]   *Young v. United States Ex. Rel. Vuitton,* 481 U.S. 787, 812-14 (1987).

[55]   *Id.* at 811-12 (quotation and citation omitted).

[56]   *People v. Eubanks,* 14 Cal. 4th 580, 588 (1996).

[57]   *Id.* at 589 (citation and quotations omitted).

14cr388-MMA

1   appearance or reality of a conflict of interest with respect to official duties."[58]  And the

2   Ninth Circuit has held that, even where "the [government's] conduct does not rise to the

3   level of a due process violation, [a district] court may [] dismiss under its supervisory

4   powers."[59]

5   **B.   The Department of Justice's comportment here falls well short of establishing**
    **that it is a "disinterested prosecutor."**

6

7         Of course, as the Second Circuit noted in *Wright*, "[i]t is a bit easier to say what a

8   disinterested prosecutor is not than what [s]he is."[60]  But a prosecutor "is not disinterested

9   if [s]he has, or *is under the influence of others* who have, an *axe to grind* against the

10  defendant."[61]  Here – despite the nondisclosure of the requested discovery – there is ample

11  evidence that the U.S. Attorney's Office "is under the influence of others" who have "an

12  axe to grind" against Susumo Azano.

13        To briefly recap, this entire affair began in 2011 with the FBI's investigation of

14  Sempra for violations of the Foreign Corrupt Practices Act.  But rather than applying its

15  investigatory resources to Sempra in the same fashion that it later would against Azano,

16  the government not only notified Sempra that it was a target, it also invited the energy

17  conglomerate to investigate – and exonerate – itself.  Moreover, when Sempra's lawyer

18  went a step further and exhorted the government to investigate his client's long-standing

19  adversary in a real-estate dispute – Azano – it promptly did exactly that.  And to be sure,

20  the government's half-hearted investigation of Sempra would be nothing like its pursuit of

21  Azano.

22  //

23  ───────────────

24        [58]  *Wright v. United States,* 732 F.2d 1048, 1055, 1056 n.8 (2d Cir. 1984)
    (quotation and citation omitted).

25

26        [59]  *United States v. Chapman,* 524 F.3d 1073, 1084 (9th Cir. 2008).

27        [60]  732 F.2d at 1056.

28        [61]  *Id.* (emphasis added).

1   Indeed, the government has been relentless – at first investigating baseless FCPA

2   allegations before moving on to similarly spurious (as well as eclectic) offenses (including

3   money laundering, drug trafficking, firearms trafficking, and FAA regulatory violations)

4   before – almost two years later – finally stumbling upon the regulatory campaign-finance

5   charges that are the subject of the current indictment.  This prosecution, in short, has all

6   the hallmarks of a 21st century witch hunt.

7   The government's investigation also labors under the specter of intentional

8   misrepresentations to the court.  As this Court is well aware from the wiretap litigation,

9   Agent Phan submitted an affidavit in support of a wiretap for Ernie Encinas's phone in

10  which she deliberately omitted any reference to either Azano or the campaign-finance

11  investigation, which (by that time) had become the government's focus.  Although this

12  Court did not reach the merits of Azano's motion to suppress evidence based on that

13  subterfuge (finding it moot), the simple fact of the matter is that the prosecutors in this

14  case intentionally withheld pertinent information from pleadings submitted under penalty

15  of perjury to the court.  And they did so after two years of failure in the pursuit of the

16  target that was hand-picked for them by Sempra:  Susumo Azano.

17  This is a significant factor weighing in favor of dismissal.  In *United States v.*

18  *Aguilar Noriega,* a district court in the Central District of California dismissed an

19  indictment under its supervisory powers.[62]  And one of the factors militating toward that

20  exercise of the court's discretion was a similarly material misrepresentation in a warrant

21  affidavit, which the court found to be "part of an overall course of conduct."[63]

22  Additionally – but not exclusively – the government may well have relied upon an

23  illegally obtained email chain that was provided by agents of Sempra, while the U.S.

24  Attorney has recused herself from this case and refuses to tell us why, characterizing

25  Azano's requests for this disclosure as a "road leading to nowhere."

26  _____

27  [62]   831 F. Supp. 2d 1180 (C.D. Cal. 2011).

28  [63]   *Id.* at 1188 n.8.

1    There is, in short, more than sufficient evidence for this Court to conclude that the

2  U.S. Attorney's Office is "under the influence of others" who have an "axe to grind"

3  against Susumo Azano.  It should accordingly dismiss the indictment.

4

5                                                    **IV.**

6  **In the alternative, the Court should recuse the entire U.S. Attorney's Office for the Southern District of California.**

7

8    In the event that this Court does not exercise its discretion to dismiss the indictment,

9  it should, based upon the conduct set forth above, nonetheless recuse the entire U.S.

10 Attorney's office, which is a less drastic remedy that may be appropriate upon "a lesser

11 showing."[64]

12

13                                                    **V.**

14                                              **Conclusion**

15    Mr. Azano respectfully requests that this Court dismiss the indictment.  In the

16 alternative, he asks that the Court recuse the entire U.S. Attorney's Office to ensure that

17 his Fifth Amendment right to a disinterested prosecutor will not be violated.

18

19                                              Respectfully submitted,

20

21

22 Dated: September 15, 2015              /s/ John C. Lemon
                                          **KNUT S. JOHNSON**
23                                        **JOHN C. LEMON**
                                          Attorneys for Mr. Azano
24

25

26

27
_____

28    [64]   *Wright,* 732 F.2d at 1056 n.8.