Knut S. Johnson (CSB 125725)
Emerson Wheat (CSB 277456)
Law Office Of Knut S. Johnson
550 West C Street, Suite 790
San Diego, California 92101
(619) 232-7080 (Phone)
(619) 232-7324 (Fax)
knut@knutjohnson.com

John C. Lemon (CSB 175847)
Law Office of John C. Lemon, APC
1350 Columbia Street, Suite 699
San Diego, California 92101
(619) 794-0423
john@jcl-lawoffice.com

Attorneys for JOSE SUSUMO AZANO MATSURA

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br>Plaintiff,<br><br>v.<br><br>JOSE SUSUMO AZANO MATSURA,<br>Defendant. | Case No. 14-cr-0388-MAA<br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS:<br>(1) TO SUPPRESS FRUITS OF ILLEGAL SEARCHES<br>(2) AUTHORIZE SUBPOENAS<br>Date: October 6, 2015<br>Time: 1:30 p.m. |

**I.**

**INTRODUCTION**

Mr. Azano moves here to suppress evidence and to authorize a subpoena. Mr. Azano strongly maintains his innocence and denies any wrongdoing, but nonetheless moves to suppress based on violations of the

- 1 -

14-cr-0388-MAA

Fourth Amendment and the U.S. Code. Furthermore, rather than repeat factual and legal arguments he raised in his wiretap suppression motions, he incorporates them here by reference.

### A. The Sneak and Peak Warrant

On August 21, 2012, U.S. Magistrate Judge Jan M. Adler issued a "delayed notice" ("Sneak and Peek") warrant for 1542 and 1526 Lancaster Point Way, San Diego, California under 18 USC §§ 3103 and 3103a. A true and correct copy of the Sneak and Peek warrant and the supporting affidavit by San Diego Police Officer Michael McEwan are attached to the Declaration of Knut S. Johnson in Support of Motions: (1) to Suppress Fruits of Illegal Searches; (2) Authorize Subpoenas[1] ("Johnson Decl.")

Section 3103a(b) provides as follows:

> With respect to the issuance of any warrant . . . to search for and seize any property or material that constitutes evidence of a criminal offense in violation of the laws of the United States, any notice required, or that may be required, to be given may be delayed if—
> (1) the court finds reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result (as defined in section 2705, except if the adverse results consist only of unduly delaying a trial);
> (2) . . . ; and
> (3) the warrant provides for the giving of such notice within a reasonable period not to exceed 30 days after the date of its execution, or on a later date certain if the facts of the case justify a longer period of delay.

---

[1] Filed with this motion but under seal.

(c) Extensions of Delay.— Any period of delay authorized by this section were material and warrant a hearing under *Franks v. Delaware*, 438 U.S. 154, 164 (1978) may be extended by the court for good cause shown, subject to the condition that extensions should only be granted upon an updated showing of the need for further delay and that each additional delay should be limited to periods of 90 days or less, unless the facts of the case justify a longer period of delay.

The "adverse results" required before a court may grant a delayed notification warrant under § 2705(2) are as follows:
(A) endangering the life or physical safety of an individual;
(B) flight from prosecution;
(C) destruction of or tampering with evidence;
(D) intimidation of potential witnesses; or
(E) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

The United States received six extensions of time to delay the notice required, the first five based on affidavits by Officer McEwan and the last based on an affidavit by FBI Special Agent Erin Phan.

### B. The Warrant For Mr. Azano's Homes

On January 21, 2014, U.S. Magistrate Judge Barbara Major issued search warrants for residences owned by Mr. Azano at 1 Buccaneer Way and 8 Green Turtle Way, Coronado, California. Both of those warrants were based on the same affidavit signed by FBI Special Agent Erin Phan, which is attached to the Johnson Decl. as Exhibit B.

The "bulwark of Fourth Amendment protection, of course is the Warrant Clause, requiring that, absent certain exceptions, police must obtain a warrant from a neutral and disinterested magistrate before

- 3 -

14-cr-0388-MAA

embarking on a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). It is also fundamental that "the Fourth Amendment protects a person's private conversations as well as his private premises." *Alderman v. United States*, 394 U.S. 165, 178 (1968).

## II.

## THE SNEAK AND PEEK WARRANT

After beginning this investigation with the mysterious and perhaps non-existent email chain, the government sought to secretly enter Mr. Azano's offices to review documents. The court gave the government permission, and then allowed the government to keep that search secret.

### A. *The Affidavit Fails to Establish Probable Cause and Misstatements and Omissions Warrant a Franks Hearing*

The affidavit in support of the Sneak and Peek warrant tries the shotgun approach to try to establish probable cause: raise as many allegations as possible using guessing, false statements, inaccurate statements of law, hyperbole, and nonsense and maybe something will stick.

The affidavit first tries to allege "false statements on a tax return and tax evasion." Exhibit A, ¶¶7-14. These allegations may be summarized as follows: Mr. Azano spent a lot of money and did not pay taxes.

#### 1. Tax Allegations

First, the affidavit refers to Azano's entities as "corporations," despite the fact that they are Limited Liability Companies. This mistake is made numerous times throughout the affidavit and is extremely misleading.

- 4 -

14-cr-0388-MAA

Corporations are separate tax paying entities that are required to file tax returns (Form 1120) and pay tax on any taxable income reported. The entities Mr. Azano is accused of evading taxes with are limited liability companies (LLCs), which do not pay taxes. LLCs may elect to be taxed as corporations, but the three entities in question did not make an election to be taxed as corporations.

In this situation (i.e., no election to be taxed as a corporation), LLCs with two or more members are taxed as a partnership (Form 1065) and LLCs with only a single member will be treated as a sole proprietorship. According to Chief Counsel Advice 200235023: "If the single member owner has not elected to be treated as…..a corporation, the default provision of the check-the-box regulations provides that the LLC is to be disregarded. In other words, the single member owner is the taxpayer."

Airsam N492RM, LLC ("Airsam LLC") is described in the complaint as a sole member LLC, with Azano being the only member. As a result, the IRS should disregard the existence of the Airsam LLC. When the affidavit refers to "Airsam's tax liability," the affiant misled the court because Airsam LLC was not responsible for paying any taxes. The affidavit refers to a Form 1065 that was filed by Airsam LLC, but Airsam LLC was not required file one because a one-member LLC should not file a Form 1065. A taxpayer does not commit tax fraud on a return that is not required to be filed and for an entity that does not pay tax.

The affidavit also indicates that the deposits and withdrawals for Airsam LLC do not match up with the gross receipts and expenses on the Form 1065. This is not unusual. Deposits are not always taxable income and come from a number of sources. The deposits might be loans from the

- 5 -

14-cr-0388-MAA

Corporations are separate tax paying entities that are required to file tax returns (Form 1120) and pay tax on any taxable income reported. The entities Mr. Azano is accused of evading taxes with are limited liability companies (LLCs), which do not pay taxes. LLCs may elect to be taxed as corporations, but the three entities in question did not make an election to be taxed as corporations.

In this situation (i.e., no election to be taxed as a corporation), LLCs with two or more members are taxed as a partnership (Form 1065) and LLCs with only a single member will be treated as a sole proprietorship. According to Chief Counsel Advice 200235023: "If the single member owner has not elected to be treated as…..a corporation, the default provision of the check-the-box regulations provides that the LLC is to be disregarded. In other words, the single member owner is the taxpayer."

Airsam N492RM, LLC ("Airsam LLC") is described in the complaint as a sole member LLC, with Azano being the only member. As a result, the IRS should disregard the existence of the Airsam LLC. When the affidavit refers to "Airsam's tax liability," the affiant misled the court because Airsam LLC was not responsible for paying any taxes. The affidavit refers to a Form 1065 that was filed by Airsam LLC, but Airsam LLC was not required file one because a one-member LLC should not file a Form 1065. A taxpayer does not commit tax fraud on a return that is not required to be filed and for an entity that does not pay tax.

The affidavit also indicates that the deposits and withdrawals for Airsam LLC do not match up with the gross receipts and expenses on the Form 1065. This is not unusual. Deposits are not always taxable income and come from a number of sources. The deposits might be loans from the

shareholder and/or contributions to capital.  Likewise, withdrawals are not always equal to expenses reported on the tax return.  The member of the LLC might pay for expenses of the LLC outside of the entity and get reimbursed for the expenses later.

There is also the question of whether the entity in question carried on a legitimate business.  An LLC may be set up to hold Mr. Azano's personal aircraft for personal use.  Mr. Azano might have been motivated to hold the aircraft in a LLC to limit his liability.  The deposits and withdrawals might not even be related to a business.  The affidavit conveniently ignored these facts.

Also, Beverly Hills Financial Services, LLC ("Beverly Hills LLC") has two members, according to the affidavit, so is required to file a partnership return (Form 1065).  However, partnerships are not tax-paying entities, and the income flows through to each partners' tax return.  If the partner in question does not owe taxes, no Form 1040 will get filed.  This is particularly true with foreign partners.  The affidavit says that Beverly Hills LLC "does not have a unified business purpose."  Beverly Hills LLC, much like Airsam LLC, could have been set up for personal purposes (a fact conveniently ignored by the affidavit).  In that case, the deposits and withdrawals are not be business related.  Once again, the deposits and withdrawals of Beverly Hills LLC might not match up with the gross receipts and expenses shown on the LLC's partnership return.  This is very common and to be expected.  Many of the deposits might be loans from the members and/or contributions to capital, neither of which is taxable income.  Expenses and withdrawals, likewise, are not likely to match up for a number of reasons.  The members of the LLC might be paying for the

entities expenses and will be reimbursed by the entity at a later date. Thus, this part of the affidavit fails to establish probable cause and the factual misstatements and omissions to this section were material and warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

## 2. Campaign Finance Fraud Allegations

The Sneak and Peek affidavit also tries to establish probable cause that campaign finance crimes have occurred. Exhibit A, ¶¶ 15-19. To do so, the affidavit first claims that a witness told agents that Mr. Azano gave $1,000.00 to a third person, who then gave it to the witness to reimburse the witness for a political contribution. If true, this conduct would amount to a misdemeanor. *See*, 2 U.S.C. § 437g. However, the witness could not find a copy of the check he claimed to have written to the campaign, and "publicly available campaign disclosures" did "not appear to show any such donation." In other words, a witness claimed that Mr. Azano committed a misdemeanor but the public record seemed to showed no such crime occurred.

The affidavit then claims that a PAC, San Diegans for Bonnie Dumanis for Mayor 2012, Sponsored by Airsam N492RM, LLC, made independent expenditures in favor of a candidate. The affidavit claims that because "of the similarity in their names," Mr. Azano's LLC must be involved. The affiant then goes further, and states that "[a]ccording to a news story" "the PAC is controlled" by Mr. Azano. The affiant never explains how Mr. Azano "controlled" the PAC, and utterly ignored the public filings that showed he did not. *See*, Johnson Decl., Exhibits D and E.

The affidavit also failed to disclose that the Federal Election Commission ("FEC") issued an Advisory Opinion (Advisory Opinion 2000-17 (the "FEC Opn."), stating that a foreign owned corporation may donate to a PAC: "a corporation organized under the laws of any State within the United States that has its principal place of business in the United States is not a foreign principal. Therefore, it follows that such a corporation would not be a foreign national under 2 U.S.C. § 441e." The affidavit never explains that a donation from such a company to a PAC was illegal (probably because it is not).

In other words, the affidavit shows no evidence of campaign finance crimes, misstates the evidence, misstates the law, and these factual misstatements and omissions to this section were material and warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

### 3. **Allegations of Attempts to Influence Officials**

In a fantastic leap of logic, the affidavit claims that because Ernie Encinas tried to hire a detective from the San Diego Police Department, Mr. Azano must be doing something (the affidavit is unclear what) he should not be doing. Again, the affidavit's fanciful logic fails to establish probable cause, and the factual misstatements and omissions to this section were material and warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

### 4. **Structuring Deposits**

Agents copied a ledger belonging to a "secretary for Azano's accounting office . . ." Her ledger indicated deposits of $2,000 to $9,000

- 8 -

14-cr-0388-MAA

every two to ten days. The affidavit does not state whether the deposits were by check or cash.

In June 2012, agents claim that they saw the secretary receive "envelopes." They claim she "moved her hand as if counting money." She then drove to a bank. Some time that day, according to a bank employee, the secretary deposited $9,6000 into one account and $1,700 in another. That secretary had three accounts in the bank, and Mr. Azano had ten.

Again, the affidavit's fanciful logic fails to establish probable cause, and the factual misstatements and omissions to this section were material and warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

### 5. <u>Conspiracy to Obstruct the Federal Aviation Authority ("FAA")</u>

In paragraphs 27 to 35 the affidavit claims that as a non-citizen, Mr. Azano "cannot own an aircraft registered in the United States (sometimes called an 'N-registered' aircraft)." ¶ 28. The affidavit then goes on to note that Mr. Azano has several airplanes with a "connection" to him that have an N-registration and which are owned by a trust. The affidavit then argues that Mr. Azano owned aircraft in trusts to disguise his "illegal ownership."

However, the affidavit complete ignores the long history of the FAA specifically allowing non-citizens to register aircraft as part of a trust. *See*, 14 C.F.R. § 47.7; <u>FAA Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations Involving Non-Citizen Trustors and Beneficiaries</u>, Docket FAA-201100012 (a trued and correct copy of which is attached to Johnson Decl. as Ex. F). The affidavit never

- 9 -

14-cr-0388-MAA

sets forth any facts to show that any aircraft with a "connection" to Mr. Azano was registered in violation of any FAA regulations, and the factual misstatements and omissions to this section were material and warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

### 6. Extortion of Sempra

The affidavit repeats the often stated, but baseless allegation based *exclusively* on Sempra's allegations that, during the course of the ongoing litigation, "[a] group of individuals in Mexico and the United States have engaged in extortionate threats [against Sempra]."[2] ¶¶ 36-50. On October 13, 2013, Judge Bencivengo dismissed those claims in case number 10-cv-1513-CAB.

The government's "proof" of that claim rested only the assertion that "[a]gents of Sempra are in the possession of an email chain in which Azano participated." The U.S. Attorney does not have possession of that email chain.[3] Sempra and Jones Day have resisted subpoenas for that chain (and other materials) and Mr. Azano brings a motion filed herewith to enforce those subpoenas.

These allegations in the affidavit in no way establish probable cause that Mr. Azano was engaged in any crime, and the factual misstatements

---

[2] EM_PLDGS_00000298.

[3] *See*, Sept. 22, 2014 letter from Acting U.S. Attorney William Cole to Knut S. Johnson, previously provided to this Court. Counsel has attempted obtaining that email chain from both Sempra and Jones Day, but both are resisting the subpoena for the email chain the government claims they have.

- 10 -

14-cr-0388-MAA

and omissions to this section were material and warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

### B. *The Request For Delayed Notice Was Without Merit and Based on Material Misstatements and Omissions*

The affidavit makes wild and unsubstantiated claims that immediate notification of the warrant may "threaten the life and physical safety of" persons. ¶¶ 57-58. The affidavit also alleges that immediate notification might cause Mr. Azano "to flee the United States" (¶ 61), destroy evidence and intimidate witnesses (¶ 62), and "threaten the investigation" (¶ 63).

All of the allegations for delayed notice are based on the worst kind of speculation with no facts to back them up. There is no evidence presented (because none exists) that Mr. Azano is a threat to anyone, or that he has ever tried to flee the United States (where his U.S. citizen wife and children live and were he owns real and personal property worth tens of millions of dollars). There is no evidence he ever attempted to destroy evidence, intimidate witnesses, or do anything warranting delayed notification.

Sections 3103 and 3103a provide for delayed notice of a search only if there is "reasonable cause to believe that immediate notification of the execution of the warrant may have an adverse result (as defined in section 2705[4] . . .)." As noted above, there was no such "reasonable cause for the

---

[4] Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. § 2510 *et seq*.) is meant to protect the privacy of both wire and oral communications and to regulate "the use of electronic surveillance

*(Footnote cont'd on next page)*

initial delay order or any of the subsequent extensions. *See*, Ex.s G-L. Because there was no reason to delay notification—much less to extend notification—this Court should suppress and/or hold a *Franks* hearing. *See, e.g.*, *United States v. Villegas*, 899 F.2d 1324, 1337 (2nd Cir 1990); *United States v. Freitas*, 800 F. 2d 1451 (9th Cir. 1986); *United States v. Johns*, 851 F.2d 1131 (9th Cir. 1988).

### III.
### THE WARRANT TO SEARCH MR. AZANO'S HOMES

The 104-page affidavit in support of the warrants to search Mr. Azano's homes (the Home Affidavit) is attached to the Johnson Decl. as Ex. B.

### A. *The Affidavit Failed to Establish Probable Cause*

The affidavit to search Mr. Azano's homes reached back to rely upon other searches that were without probable cause.

#### 1. The Sneak and Peek Warrant

The Home Affidavit relies upon evidence seized using the Sneak and Peek warrant, which as noted above was without probable case. See, ¶¶ 6, 34-55; 118-120

#### 2. The Title III Intercept

The Home Affidavit also relies upon evidence seized using wiretaps. ¶ 8-9, 96-99. Mr. Azano previously moved to suppress this wiretap evidence, but this Court declined to rule on probable cause (or the request

---

*(Footnote cont'd from previous page.)*

evidence obtained by law enforcement under specified conditions." *Bartnicki v. Vopper*, 532 U.S. 514, 523 (2001).

for a *Franks* hearing), holding that Mr. Azano lacked standing (in part) and otherwise finding the motion moot. [Dkt. 188.] Mr. Azano incorporates by reference his previously filed arguments regarding the wiretaps, and argues here that he has standing and the issue is not moot because the government used the illegally intercepted conversations to justify a search of Mr. Azano's homes.

### 3. The IRS Conspiracy

Mr. Azano here incorporates his earlier argument regarding the alleged IRS conspiracy. He again asks for a *Franks* hearing and asserts that this section fails to establish probable cause.

### 4. Campaign Finance

Mr. Azano here incorporates his earlier arguments in this pleading and his arguments for his motion to suppress wiretap intercepts regarding campaign finance. In addition, the affidavit misleads when it states that Mr. Azano "never again created his own political action committee." ¶ 70. That statement is false in that he never <u>before or after</u> created a PAC.

Further, the affidavit contains evidence that Mr. Azano is *innocent* because he never knew that he could not donate: In Spring 2013 (long after the events in the indictment but well before even Encinas knew about the investigation) Mr. Azano wrote a personal check for a candidate with his name and address on the check, showing a total lack of intent to hide his donation. See, e.g. ¶ 112 and EM-PHYSICAL EV_00000027. This Court should conduct a *Franks* hearing and/or find a lack of probable cause.

/ / /

/ / /

- 13 -

14-cr-0388-MAA

## IV.
## THIS COURT SHOULD ORDER THE SUBPOENA ISSUED

Attached to the Johnson Decl. as Ex. C is the order of the Magistrate quashing the subpoena to Jones Day and Sempra for the missing email chain. After Mr. Azano moved this Court for an order the government produce the missing email chain, this Court heard argument about the email on August 25, 2014. At that hearing, the Court stated as follows: "Can you at least go back and figure out how you got it and tell him how you got it?" Transcript, 27: 4-5. In response, the government sent counsel for Mr. Azano a letter stating:

> The government does not possess the email chain referenced in . . . of the pen register application in 11mc0853. Rather, as stated in the pen register application, the email chain was in possession of SEMPRA. Former Assistant United States Attorney Tim Perry's best recollection is the SEMPRA representative Robert Brewer and/or Kimberly McDonnell showed and/or described the email chain to the government.

The government used the allegations about the missing email chain as follows:

| *Date* | *Government Application* | *Discovery* (EM_PLDGS_ . . .) | *Case Number* |
|---|---|---|---|
| 7/1/11 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 00000295 | 11 MC 853 |
| 7/25/11 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 00000303 | 11 MC 957 |
| 8/4/11 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 0000313 | 11 MC 1014 |

- 14 -

14-cr-0388-MAA

| | | | |
|---|---|---|---|
| 6/20/12 | Pen Register | 00000001 | Unint. |
| 6/20/12 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 00000323 | Unint. |
| 7/30/12 | Pen Register | 00000015 | Unint. |
| 8/20/12 | Pen Register | 00000031 | Unint. |
| 12/28/12 | Under Seal Application for Order Authorizing Disclosure of Subscriber and Other Information | 00000336 | 12 MC 1703 |

The order quashing the subpoena for the missing email chain notes, "If Judge Anello determines that any document identified in either subpoena is relevant to a motion to suppress, Defendant Azano may reapply to this Court for enforcement (or re-issuance) of the subpoena." Ex. C, page 11: 14-17. The government cited the missing email chain repeatedly in their applications for information, all of which were relied upon in the warrants for Mr. Azano's homes. Thus, the email chain (or lack thereof) is relevant to the now pending motions to suppress and any *Franks* issues related thereto. This Court should order the issuance of subpoenas to Jones Day and Sempra for the missing email chain.

## V.
## CONCLUSION

For the foregoing reasons, this Court should grant the above motions.

Dated: March 21, 2014             Respectfully submitted,

                                                     /s/ Knut S. Johnson
                                           **Knut S. Johnson, Esq. for**
                                           Jose Susumo Azano Matsura