BLAIR C. PEREZ
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
ANDREW G. SCHOPLER, CASB# 236585
MARK W. PLETCHER, Colorado State Bar No. 034615
HELEN H. HONG, CASB# 235635
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8068/9714/6990
Email: helen.hong@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE SUSUMO AZANO MATSURA (1),<br>　　aka Mr. A.,<br>　　aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>　　aka Ravi Singh,<br>ELECTIONMALL, INC. (3),<br>MARCO POLO CORTES (4),<br>EDWARD SUSUMO AZANO HESTER (5),<br>　　aka Susu,<br>　　aka Junior,<br><br>　　　　　　　Defendants. | Case No. 14CR0388-MMA<br><br>Date:　July 12, 2016<br>Time:　9:00 a.m.<br><br>**UNITED STATES' MOTIONS IN LIMINE TO:**<br><br>**A. PRECLUDE AZANO FROM RAISING ENTRAPMENT BY ESTOPPEL DEFENSE TO THE FIREARM POSSESSION OFFENSE, COUNT 39**<br>**B. PRECLUDE IMPROPER IMPEACHMENT OF WITNESSES UNDER RULE 608**<br>**C. ADMIT RULE 404(B) EVIDENCE OF OTHER EFFORTS TO INFLUENCE POLITICIANS**<br>**D. ADMIT TESTIMONY FROM GUN EXPERT, A-FILE CUSTODIAN, AND STATE DEPARTMENT, SAN DIEGO COUNTY ETHICS COMMISSION, SAN DIEGO CITY CLERK'S OFFICE, AND FEDERAL ELECTION COMMISSION WITNESSES**<br>**E. LIMIT CROSS-EXAMINATION OF WITNESSES ON COLLATERAL MATTERS** |

F. DESIGNATE EXHIBITS FOR OPENING STATEMENT

# I
# INTRODUCTION

The United States presents the following motions in limine in an effort to address issues that are likely to arise during trial.

The motions in limine are not meant to provide a comprehensive overview of the evidence that the United States intends to introduce; nor do they comprise a comprehensive set of legal arguments supporting the admission and preclusion of all the anticipated testimony and evidence that the United States will introduce at trial.

# II
# PROCEDURAL HISTORY

On February 18, 2014, a grand jury returned the original one-count indictment against defendant Azano for illegal campaign contributions. Doc. 1. On August 12, 2014, the grand jury handed down the first superseding indictment, which charged Azano and codefendants Ravneet Singh, his company ElectionMall, Inc., and Marco Polo Cortes with conspiracy, campaign finance crimes, and records falsification. Doc. 42. In addition, the new indictment charged Singh with bribery and Azano with being an alien in possession of a firearm. Doc. 42, at 17-18.

On March 4, 2016, the grand jury returned a second superseding indictment, which added codefendant Edward Susumo Azano Hester to those four defendants, as well as adding a number of new substantive counts. Doc. 252.

# III
# FACTS

Because the motions do not rely on many common relevant facts, we address the pertinent details within each argument section below.

# IV

# ARGUMENT

### A. MOTION TO PRECLUDE DEFENDANT AZANO FROM RELYING ON ENTRAPMENT BY ESTOPPEL DEFENSE BASED ON THE BARE CLAIM THAT THE FIREARM SEIZED FROM HIS CLOSET WAS PROVIDED TO HIM BY A FEDERAL AGENT

As the United States established in its opposition to Azano's Motion to Dismiss Count 39, Azano's current claims about "entrapment by estoppel" are insufficient as a matter of law to present the defense at trial. Although Azano contends that the gun found in his closet "was provided to him by a federal agent," Doc. 294-1, at 1, that bare allegation is inadequate to pursue an entrapment by estoppel defense at trial. Azano must make a pretrial offer of proof to demonstrate that the evidence supports an affirmative defense of "entrapment by estoppel" before he may pursue the defense before a jury.

"A criminal defendant has the right to have a jury resolve disputed factual issues." *United States v. Arellano-Rivera*, 244 F.3d 1119, 1125 (9th Cir. 2001). However, "[w]here the evidence, even if believed, does not establish all of the elements of a defense, ... the trial judge need not submit the defense to the jury." *United States v. Dorrell*, 758 F.2d 427, 430 (9th Cir.1985). "If the defendant's offer of proof is insufficient as a matter of law to support the proffered defense, "then the trial court should exclude the defense and the evidence offered in support." *Id.*

A district court may require a criminal defendant to make a pretrial offer of proof to demonstrate that the evidence in support of an affirmative defense, like entrapment by estoppel, is sufficient as a matter of law to satisfy the elements of the defense. See *United States v. Mack*, 164 F.3d 467, 474 (9th Cir.1999) (defenses of public authority and entrapment by estoppel ruled inadmissible prior to trial); *United States v. Brebner*, 951 F.2d 1017, 1027 (9th Cir.1991) (entrapment by estoppel); *Dorrell*, 758 F.2d at 430–34 (necessity). If the defendant fails to present sufficient evidence, the district court may preclude the defendant from presenting the defense at trial, as well any evidence supporting the defense. See *United States v. Moreno*, 102 F.3d 994, 997–99 (9th Cir.1996)

(holding that evidence related to an affirmative defense is not admissible if the defendant fails to make a prima facie case of the defense).

"A defendant bears the burden of proving entrapment by estoppel." *United States v. Batterjee*, 361 F.3d 1210, 1216 (9th Cir. 2004). To invoke an entrapment-by-estoppel defense, a defendant must establish a *prima facie* case that:

> (1) an authorized government official, empowered to render the claimed erroneous advice,
>
> (2) who has been made aware of all the relevant historical facts,
>
> (3) affirmatively told him the proscribed conduct was permissible,
>
> (4) that he relied on the false information, and
>
> (5) that his reliance was reasonable.

*Batterjee*, 361 F.3d at 1216 (citations and internal quotation marks omitted; original not in list format).

Defendant Azano has failed to carry his burden of establishing a prima facie case for the affirmative defense. Azano has never alleged that the agent, CBP Officer Gilberto Torres, was an authorized official who was empowered to render advice about the firearms laws. Nor does he allege that Officer Torres was made aware of Azano's foreign national status (indeed, Officer Torres avers that he never knew Azano's immigration status). And, even more critically, Azano fails to show that any federal official affirmatively told him that it was legal to possess a firearm. The third element of the defense has two salient aspects: (i) an unambiguous statement by the federal official that (ii) the proscribed conduct is legal. *United States v. Hancock*, 231 F.3d 557, 567 (9th Cir. 2000) ("It is not sufficient that the government official's comments were vague or even contradictory.") (citation omitted); *Brebner*, 951 F.2d at 1024 ("The entrapment by estoppel defense applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official.") (citations omitted). Here Azano has not alleged that Officer Torres made *any* statement to him about the legality of his firearms possession, and in fact he did not.

4

In the absence of any false or misleading statements by an authorized federal official who was made aware of all the relevant historical facts, there can be no due process entitlement to an entrapment by estoppel defense. The Ninth Circuit has frequently upheld the preclusion of entrapment-by-estoppel defenses where the defense failed to establish a *prima face* case. *See, e.g.*, *United States v. Ramirez-Valencia*, 202 F.3d 1106, 1108-09 (9th Cir. 2000) (affirming trial court's refusal to allow entrapment by estoppel defense); *United States v. Brebner*, 951 F.2d 1017, 1019 (9th Cir. 1991) (upholding District Court's exclusion of "evidence in support of an entrapment by estoppel defense" in firearms case); *United States v. Dixon*, No. 13-30112, 572 F. App'x. 553, 553 (9th Cir. May 15, 2014) (affirming "district court's pretrial ruling that precluded [the defendant] from asserting entrapment by estoppel as a defense at trial"); *United States v. Sandusky*, 564 F. App'x. 282, 284 (9th Cir. Mar. 17, 2014) (upholding trial court's exclusion of "all evidence of entrapment by estoppel"); *United States v. Deravin*, No. 06-30605, 234 F. App'x. 677, 678 (9th Cir. June 18, 2007) (upholding pretrial exclusion of entrapment by estoppel defense as to charge of being an illegal alien in possession of a firearm). So here. Unless Azano can make a pretrial proffer satisfying the court that a prima facie case for entrapment by estoppel exists, he must be precluded from raising an "entrapment by estoppel" defense at trial.

**B.   MOTION TO PRECLUDE EXTRINSIC EVIDENCE ABOUT AND CROSS-EXAMINATION OF WITNESSES BASED ON PAST CRIMINAL INVESTIGATIONS**

In the course of discovery, the United States has disclosed numerous reports, affidavits, and applications connected to criminal investigations involving some potential witnesses. None of those investigations resulted in any arrests or criminal charges. Some date back to investigations conducted in the early 1990s. In all cases, the United States has never even disclosed to the potential witnesses that they were the subject of criminal investigations in the past. While some may have received notice, for example, that their vehicles were subject to tracking warrants, they have never been told whether they have

5

been the target of the investigation or the scope of any criminal investigation.[1] The investigations primarily focus on money laundering allegations in violation of 18 U.S.C. §§ 1956, 1957, to conceal or promote or facilitate narcotics trafficking offenses. Because the investigations are not matters that may be used to cross-examine a witness under Federal Rule of Evidence 608(b) and do not otherwise go to a witness' bias, the United States moves to preclude the introduction of extrinsic evidence of the witness's alleged conduct or to cross-examine the witnesses about that conduct.

For example, Potential Witness 1 was the subject of money laundering investigations in the 1990s. In one report of investigation, a Federal Bureau of Investigation Special Agent wrote:

> Information developed through interviews indicates that Bernard and Marc Chase have been involved in narcotics trafficking and other illegal activity. Subjects also may be involved in violation of Title 18 U.S.C. Section 1957 which effectively criminalizes any knowing monetary transaction or attempted monetary transaction and criminally derived property when the property is derived from specified unlawful activities. The suspected specified unlawful.

Discovery Bates Number EM_AGT RPT_ROI'S_002439; see also, e.g., EM_AGT RPT_ROI'S_007517 (Potential Witness 1 "and others . . . are believed to be involved in large scale money laundering and drug trafficking"). The discovery also includes details from "Suspicious money transactions" where a financial institution flagged an account associated with Potential Witness 1 because of the number of transactions involving amounts near—but not at or over—$10,000. Potential Witness 1 was never charged with any money laundering or narcotics trafficking offenses, and has not been told that he was the subject of such an investigation.

---

[1] Because the existence of the prior investigations has not been disclosed to the witnesses, they cannot inform whether the witness is biased. For that reason, the United States does not identify the witness or the investigation related to that witness in this motion.

6

Potential Witnesses 2, 3, and 4 were each identified in an investigation into money laundering and structuring of deposits, in connection with narcotics trafficking. See, e.g., EM-AZANO-MISC-002336. The investigation details how a confidential source attempted to gain the trust of Potential Witness 2 in order to engage in money laundering transactions. According to the report of investigation, the confidential source was unable to gain the witness's trust and the investigation was closed in 2010. Law enforcement continued to monitor the witness's financial accounts, and a special agent opined in an affidavit that Potential Witness 2 continued to engage in "suspicious financial activity" that was "evidence of money laundering in an effort to conceal or disguise the nature, location, source, ownership or control of the proceeds of a specified unlawful activity." EM-AZANO-MISC-002339. That specified unlawful activity was identified as "narcotics trafficking" based on Potential Witness 2's "contacts with people who are or have been investigated for drug trafficking." *Id.* Potential Witnesses 2-4 were never charged with any money laundering or narcotics trafficking offenses, and have not been told that they were the subject of such an investigation.

Potential Witnesses 5 and 6 were identified in a 2010 investigation related to money laundering and narcotics trafficking. EM_AGT RPT_ROI'S007721. At the time, Potential Witness 5 was "not listed as a target subject" in a wiretap application involving a now-convicted drug smuggler, but tolls with Potential Witness 5 were included "because he has the most frequent and recent contact" with a target subject. An agent speculated that Potential Witness 5 "could be a financial investor or consultant" for the target subject. EM_AGT RPT_ROI'S007668. Potential Witness 5 was also linked to Potential Witness 4 because of common associates. Potential Witnesses 5 and 6 were never charged with any money laundering or narcotics trafficking offenses, and have not been told that they were the subject of such an investigation.

None of these investigations are "specific instances of a witness's conduct" that are "probative of the character for truthfulness of untruthfulness of" the potential witnesses. Fed. R. Evid. 608(b). As Rule 608 provides, "[e]xcept for a criminal conviction under

7

Rule 609, extrinsic evidence is not admissible to prove specific instances of a witnesses's conduct in order to attack or support the witness's character for truthfulness." Because none of the conduct resulted in criminal convictions that may be used under Rule 609, extrinsic evidence relating to the investigations is not admissible.[2]

Nor may any of the defendants seek to cross-examine the potential witnesses with information relating to the criminal investigations. In order to cross examine a witness about specific instances of the witness's conduct, the conduct must be "probative of the character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). The impeachment evidence "should be limited to specific modes of conduct that are generally agreed to indicate a lack of truthfulness." 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 608.12[4][c] (2d ed.1998); *Lyda v. United States*, 321 F.2d 788, 793 (9th Cir. 1963) ("A witness may not be degraded by accusing him of improprieties not directly relevant to his veracity."). Drug dealing does not reflect on a person's character for truthfulness. See, e.g, *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir. 1980) (upholding district court's determination that cocaine selling was not probative of untruthfulness); *United States v. McDonald*, 905 F.2d 871, 875 (5th Cir.) (drug use is not probative of truthfulness), cert. denied, 111 S.Ct. 566 (1990); *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) (selling drugs not probative of truthfulness); *United States v. Bentley*, 706 F.2d 1498, 1509-10 (8th Cir.) (no abuse of discretion in excluding

---

[2] Extrinsic evidence of the investigations is not admissible to establish bias of the witnesses either. If the witnesses knew that they were the subject of these investigations and it could be said to color their testimony or inform whether the witness believed the FBI could now help them with those investigations (even though they are all long closed), then defendants could possibly seek to introduce evidence of the witnesses' bias. But here, the potential witnesses are not even aware that the investigations were pending. As a result, it cannot be said that the existence of the investigations (or their conduct in the past) goes to any possible bias. *United States v. Collins*, 90 F.3d 1420, 1429 (9th Cir. 1996) ("We cautioned that our holding [permitting extrinsic evidence of bias] was limited to cases where the defendant offers a 'threshold level' of evidence that the witness's drug dealing might cause bias.").

inquiry into prior drug indictment), cert. denied, 464 U.S. 830 (1983), 467 U.S. 1209 (1984). Nor does money laundering. See, e.g., Ninth Circuit Model Criminal Jury Instructions § 8.146-8.150 (jury instructions for money laundering offenses, that do not contain any finding relating to truthfulness).

Even if the allegations contained in the investigations could be said to touch on a witness' credibility, cross-examination on those allegations is improper under Rule 403. *United States v. Hernandez*, 618 F. App'x 319, 320 (9th Cir. 2015) ("Rule 608(b) of the Federal Rules of Evidence authorizes courts to permit inquiry into specific instances of conduct during cross-examination if they are probative of the character for untruthfulness of the witness—subject ... to the balancing analysis of Rule 403."). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Given the remoteness of some of the allegations, the fact that many potential witnesses could simply invoke the Fifth Amendment to avoid answering any questions about any more recent allegations of criminal conduct, the insubstantial nexus that the allegations bear on a witnesses' character for truthfulness, and the time that could be spent cross-examining on these collateral matters, the probative value of cross-examination would be substantially outweighed by the harms.

For those reasons, this Court should preclude the defense from introducing extrinsic evidence about and cross-examination of any potential witnesses relating to allegations of uncharged criminal conduct.

C.  **MOTION TO ADMIT 404(B) ACTS RELATED TO DEFENDANTS' EFFORTS TO INFLUENCE FOREIGN POLITICIANS**

The defendants have been charged with campaign finance crimes and the United States will prove that Azano, for example, was motivated to support local candidates for his hope of future financial gain. The evidence at trial will show, for example, that Azano

threw his support behind local candidates with the hope of cutting "red tape" so he could secure the right to develop various waterfront locations. In short, Azano provided financial backing for candidates with the expectation that he would receive business-related benefits later.

The crimes charged are not Azano's only instance of attempting to curry favor with politicians. Witnesses have said that Azano, for example, purchased condominiums and town homes in San Diego for Mexican officials, in exchange for contracts. One such condo was purchased by Azano for a Tijuana official in 2010. Azano provided the money for the condominium, but it was purchased in the Mexican official's name. Azano's interest in the property later became evident when the official took a hard money loan on the property to help Azano with Azano's cash flow in 2014. In exchange for Azano's "generosity," Azano reportedly secured contracts for his surveillance equipment company. Another witness described Azano as a "professional corrupter," who admitted to wiring "millions" to "offshore accounts" for various Mexican officials. In return, Azano realized business-related benefits.

Those other acts provide evidence of one of Azano's motives for backing local San Diego area politicians: financial support in exchange for business-related benefits. As such, they are squarely admissible as evidence probative of Azano's motives in San Diego.

Evidence is admissible under Rule 404(b) when it is relevant to prove motive, opportunity, preparation, plan, knowledge, identity, or lack of mistake or accident. Fed. R. Evid. 404(b); *United States v. Montgomery*, 150 F.3d 983, 1000-01 (9th Cir. 1998). The district court has wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance. See *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1977) (citing *Huddleston v. United States*, 485 U.S. 681, 687-88 (1988)).

The Ninth Circuit has uniformly recognized that Rule 404(b) is a rule of inclusion, not exclusion, and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity. See *United States v. Mehrmanesh*, 689

10

F.2d 822, 830 (9th Cir. 1982). In fact, other acts evidence can be "critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston*, 485 U.S. at 685. "In making admissibility decisions, the court will admit Rule 404(b) evidence if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir.2004) (citing *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir.1994)).

In this case, each of the acts identified above tend to prove a material point in trial and will not be offered to show the Defendants' criminal propensity. Defendant's prior acts were also made in temporal proximity to the offense charged in the indictment. The condominium was purchased in 2010, shortly before Azano and his conspirators made local donations in 2011 and 2012. Acts far more remote in time have been held admissible. See also *United States v. Johnson*, 132 F. 3d 1279, 1283 (9th Cir. 1997) ("depending upon the theory of admissibility and the similarity of the acts some remote acts may be extremely probative and relevant.") (internal citations omitted). Each of the alleged acts are also supported by sufficient evidence. See *Huddleston v. United States*, 485 U.S. 681, 685 (1988) (Evidence under Rule 404(b) should be admitted if "there is sufficient evidence to support a finding by the jury that the defendant committed the similar act."). Azano's former business associates have identified the transactions, which have been corroborated by records. The witnesses also recount Azano's own admissions about the other acts designed to influence politicians.

Finally, the allegations in the indictment are sufficiently similar to the counts charged. See *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004) (evidence is offered to show knowledge or intent, the Court considers whether the prior act "is similar to the offense charged"). The modus operandi is the same: financially support a

politician in exchange for personal business gain. Even if it could be said that the acts are not identical to the charged offense, this Court has held that degree of similarity required "will depend on the evidential hypothesis which is being employed." *United States v. Ramirez–Jiminez*, 967 F.2d 1321, 1326 (9th Cir.1992). Here, the United States is offering evidence of motive for attempting to influence local San Diego elections, which is made plain by Azano's prior dealings with Mexican officials.

### D. MOTION TO ADMIT TESTIMONY FROM WITNESSES WITH KNOWLEDGE OF THE ELECTION PROCESS, A GUN EXPERT, AND A-FILE AND STATE DEPARTMENT WITNESSES

The United States seeks to admit the testimony from the following witnesses:

#### 1. Gun Expert Matthew Beals

The United States provided notice of its intent to call ATF Special Agent Matthew Beals to testify about the firearm seized from Azano's residence. Testimony from an expert about the interstate movement of a firearm is testimony that has been squarely upheld by the Ninth Circuit. See, e.g., *United States v. Hatcher*, 487 F. App'x 416, 417 (9th Cir. 2012) ("expert's testimony on the ultimate issue—whether the gun traveled in interstate commerce" admissible under Ninth Circuit law); *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991), as amended (Oct. 1, 1991) ("The Ninth Circuit allows expert testimony regarding the identity of the manufacturer to establish that a gun travelled in interstate commerce before the defendant received it."). So here.

#### 2. A-File Custodian/State Department Witness

The United States intends to call an A-File custodian and State Department witness to testify regarding Azano's A-file, the documents it contains, and his status as a foreign national. Although the United States does not believe such testimony is expert testimony under the Federal Rules of Evidence, it is providing this notice in an abundance of caution. See, e.g., *United States v. Villegas-Gutierrez*, 500 F. App'x 692, 694 (9th Cir. 2012) ("Nor was admission of the custodian's statements plain error, as the statements did not obviously require that the custodian be qualified as an expert."); *United States v.*

*Ballesteros-Selinger*, 231 F. App'x 652, 658 (9th Cir. 2007) ("Gale's testimony regarding the process of deportation proceedings was permissible as lay witness testimony because it was grounded in the first-hand knowledge she gathered from her experience working in the immigration field.").

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536 (9th Cir. 1995).

An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704. The A-File custodian and the State Department witness will establish Azano's status as a foreign national, as well as the predicates for Count 39, the firearms offense.

3. **Testimony about San Diego and Federal Election Filing Requirements**

The United States also intends to call witnesses from the San Diego Ethics Commission, the San Diego City Clerk's Office and the Federal Election Commission (FEC) to describe the requirements associated with monetary and in-kind donations in local and federal elections. Their testimony bears directly on a campaign's obligation to file records with the San Diego City Clerk's office and FEC. The United States has alleged that the defendants caused those bodies to submit false records, which concealed that Azano provided the money for the donations, in violation of 18 U.S.C. §§ 1519, 2. Although the United States does not believe such testimony is expert testimony under the Federal Rules of Evidence, it is providing this notice in an abundance of caution.

13

### E. LIMIT CROSS-EXAMINATION ON COLLATERAL MATTERS, LIKE SEMPRA ENERGY

Defendants have pledged to cross-examine law enforcement witnesses "for days" about an investigation into Sempra Energy, in order to probe putative biases of the witnesses. While the defendants have the right to explore the biases of witnesses, they must "offer a threshold level of evidence to show that the defendant's allegations of witness misconduct have some grounding in reality. If the facts are material, the defendant has a right to present them to the jury." *United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir. 1984). Unless the defendants make that "threshold" showing here first, the United States requests that the court, at a minimum, limit the time that the defendants may spend cross-examining the witnesses on collateral matters. See also Fed. R. Evid. 403.

### F. USE EXHIBITS IN OPENING STATEMENT

The United States anticipates using exhibits that will be introduced at trial during the opening statement. The United States will confer with defense counsel in advance of trial. Should the defense object, the United States will seek a preliminary determination of admissibility before using the exhibits.

## V

## CONCLUSION

For the foregoing reasons, this Court should grant the United States's motions in total.

DATED: June 20, 2016           Respectfully submitted,

                                             BLAIR C. PEREZ
                                             Attorney for the United States
                                             Acting Under 28 U.S.C. § 515

/s/ *Helen H. Hong*
ANDREW G. SCHOPLER
MARK W. PLETCHER
HELEN H. HONG
Assistant U.S. Attorneys

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE SUSUMO AZANO MATSURA (1),<br>    aka Mr. A.,<br>    aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>    aka Ravi Singh,<br>ELECTIONMALL, INC. (3),<br>MARCO POLO CORTES (4),<br>EDWARD SUSUMO AZANO HESTER (5),<br>    aka Susu,<br>    aka Junior,<br><br>            Defendants. | Case No. 14CR0388-MMA<br><br><br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, declare under penalty of perjury that I have served the foregoing document on the above-captioned party(ies) by:

- ■ electronically filing it with the U.S. District Court for the Southern District of California using its ECF System, which electronically notifies the party(ies).

- ☐ causing the foregoing to be mailed by first class mail to the parties identified with the District Court Clerk on the ECF System.

- ☐ causing the foregoing to be mailed by first class mail to the following non-ECF participant at the last known address, at which place there is delivery service of mail from the United States Postal Service:

Executed on June 20, 2016.

/s/ *Helen H. Hong*
HELEN H. HONG
Assistant U.S. Attorney

15