Knut S. Johnson (CSB 125725)
Emerson Wheat (CSB 277456)
LAW OFFICES OF KNUT S. JOHNSON
550 West C Street, Suite 790
San Diego, California 92101
(619) 232-7080 (Phone)
(619) 232-7324 (Fax)
knut@knutjohnson.com
*Attorneys for Jose Susumo Azano Matsura*

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
## (THE HONORABLE MICHAEL M. ANELLO)

|  |  |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Jose Susumo Azano Matsura,<br>Defendant. | Case No. 14-CR-0388-MAA<br>**Memorandum of Points and Authorities in Support of Motion to Suppress Firearm and All Related Materials**<br>Time: 2:00 p.m.<br>Date: July 31, 2017 |

## I.

## INTRODUCTION

Jose Susumo Azano Matsura moves to suppress items protected by the Second Amendment from a home with numerous U.S. citizens. Those items were nether mentioned in the application for the search warrant or in the warrant itself and are in no way associated with any of the crimes

14-cr-0388-MAA

listed in the warrant and application.  [Dkt. 760-2, Exhibit C.][1]  Mr. Azano has previously litigated whether the search warrant for his home was supported by an affidavit that established probable cause and was free of material misstatements.  He now moves to suppress the firearm and all related materials, which were not listed in the warrant and were in personal clothing closet, nowhere near any place where items that could be found that were listed in the warrant.[2]

## II.

## PROCEDURAL POSTURE

Mr. Azano previously moved to suppress the fruits of the search of his residence at 1 Buccaneer Way in Coronado, California by arguing that the affidavit in support of that motion failed to establish probable cause and were supported by material misstatements.  *See*, dkt. 190.  This Court denied that motion, finding that the warrant affidavit established probable cause and that Mr. Azano had not made the requisite showing for a *Franks* hearing.  *See*, dkt. 202 and 204.

Mr. Azano now raises the issue of whether the seizure of the firearm and related materials violated the Fourth Amendment because the application and warrant did not mention firearms, the warrant does not allow the seizure of firearms, the firearm was in a home with numerous

---

[1]  Mr. Azano incorporates by reference the Exhibits attached to his Motion to Suppress Statements (docket entry 760-2) filed on July 17, 2017.

[2] Mr. Azano still asserts that the search of his home was made without probable cause and because  of material misstatements in the warrant.  This Court has not previously ruled on the specific issues raised in this motion.

14-cr-0388-MAA

U.S. citizens who could lawfully possess a firearm, and the firearm was not in plain view.

### III.

### FACTS

The government obtained a warrant to search Mr. Azano's residence at 1 Buccaneer Way for evidence of tax crimes.  The application in support of that warrant was filed with this Court under seal in connection with docket entry 190 and the warrant was filed in docket entry 760-2 as Exhibit C.  Neither the application nor the warrant ever mentions firearms.

### IV.
### THE SEIZURE OF THE FIREARM AND RELATED MATERIAL WAS BEYOND THE SCOPE OF THE WARRANT

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,  shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.   Justice Jackson explained in *Johnson v. United States*, 333 U.S. 10 (1948).

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence.  Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.  Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . When the right of privacy must reasonably yield to

3

the right of search is, as a rule, to be decided by a judicial
officer, not by a policeman or government enforcement agent.

*Id.* at 13-14.  The zenith of Fourth Amendment protections shields the
home.   "In the home, our cases show, all details are intimate details,
because the entire area is held safe from prying government eyes." *Kyllo v.
United States*, 533 U.S. 27, 37 (2001); *see also Payton v. New York*, 445
U.S. 573, 590 (1980) (the Fourth Amendment draws "a firm line at the
entrance to the house"); *Florida v. Jardines*, 133 S.Ct. 1409, 1414 (2013)
("But when it comes to the Fourth Amendment, the home is first among
equals.").

### 1. *<u>Absence of particularity demands suppression of the firearm</u>*

Warrants must describe with particularity the evidence sought in
connection with the suspected crime under investigation, and only then
may the officers lawfully seize the evidence.  "It is well settled that, when
properly invoked, the Fifth Amendment protects every person from
incrimination by  the use of evidence obtained through search or seizure
made in violation of his rights under the Fourth Amendment." *Agnello v.
United States*, 269 U.S. 20, 33-34 (1925) (*citations omitted*).   The
constitutional prohibition of general warrants "makes general searches . . .
impossible and prevents the seizure of one thing under a warrant
describing another.  As to what is to be taken, ***nothing is left to the
discretion of the officer executing the warrant***.'" *Stanford v.
Texas*, 379 U.S. 476, 485 (1965) (emphasis added), *quoting Marron v.
United States*, 275 U.S. 192, 196 (1927); *see also Andresen v. Md.*, 427 U.S.
463, 480 (1976).  The Fourth Amendment demands that police executing a
warrant act in accordance with the objectives outlined in the warrant.  *See
Arizona v. Hicks*, 480 U.S. 321, 325 (1987); *see also Maryland v.*

14-cr-0388-MAA

*Garrison*, 480 U.S. 79, 87 (1987) (""The purposes justifying a police search strictly limit the permissible extent of the search.").

The search warrant for Mr. Azano's residence never authorized the seizure of a firearm for a search concerning tax crimes.  The agents failed to apply to a neutral and detached magistrate for a "piggyback warrant" after rummaging through a locked cabinet in the master bedroom closet to retrieve the firearm.[3]  It is not clear that the neutral and detached magistrate had any basis to believe that the agents intended search the closet of the master bedroom––*undoubtedly one of the most intimate, private, and  constitutionally protected areas of home*––for evidence of alleged tax crimes.  Because the warrant completely failed to describe a firearm in any manner whatsoever, the firearm and related evidence should be suppressed.

### 2. *Seizure of the firearm was beyond the scope of the search warrant issued to search and seize evidence, fruits, and instrumentalities of a Conspiracy to Defraud the IRS (18 U.S.C. § 371)*

In *United States v. Cardwell*, 797 F.2d 1461 (9th Cir. 1986), the Ninth Circuit addressed the claim that the government failed to describe with particularity the records sought in a tax fraud investigation.  The warrant directed seizure of:

> corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules, of the fellowing (sic) corporations: Midwest Growers

---

[3]  *See, e.g.*, *United States v. Davis*, 2013 U.S. Dist. LEXIS 71696, *6-7 (D. Nev. Apr. 23, 2013) ("The first was a telephonic search warrant for evidence of the robbery.  While executing the search warrant for the robbery, the officers discovered evidence used to prosecute Davis in this case and obtained a "***piggyback warrant***" which authorized the seizure of the firearms, ammunition, drugs and drug paraphernalia.") (emphasis added).

14-cr-0388-MAA

Cooperative Corporation, Coast Express Inc., West Coast Systems Inc., and Interstate Carriers Corporation(,) which are the fruits and instrumentalities, of violations of 26 U.S.C. § 7201.

*Id*. at 76.  The court considered the fact that the IRS conducted a lengthy investigation prior to securing the warrant, had already conducted a civil audit, and nevertheless failed to incorporate these findings into the search warrant affidavit to refine the scope of the search and seizure.  *Id*. at 78. The Ninth Circuit found the general warrant to be invalid for the preparation of a false corporate tax return charge, and ordered complete suppression of the evidence because "no portion of the warrant [was] sufficiently particularized to pass constitutional muster."  *Ibid*.

A thorough investigation preceding the search demands greater particularity in the search warrant affidavit.  "The use of a generic term or a general description in a warrant, however, is acceptable to the judicial officer issuing the warrant only when a more specific description of the things to be seized is unavailable."  *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981).  Partial suppression of evidence is appropriate where some items are described in the search warrant affidavit with sufficient particularity.  In *Cook*, the court suppressed all evidence seized (1,305 of 1,317 items) except the twelve illegally "pirated motion pictures" that were sufficiently described in the affidavit accompanying the warrant.  *Id*. at 732, 735-736.

The FBI sent Special Agent Gerald Cook and other members of the Public Corruption Squad to participate in the sixteen person search team of 1 Buccaneer Way.  [Dkt. 760-2, Exhibit B, pg. 127.]  However, the search warrant application made absolutely no mention of firearms, suspected illegal campaign contributions by a foreign national, falsification of campaign records, or bribery; however, the application curiously sought

6

14-cr-0388-MAA

immigration records, travel records, passports, visas, and correspondence with the U.S. Department of State.  [Dkt. 760-2, Exhibit C, pg. 2007.]  Of course the warrant materials never explained how a firearm could evidence fraud against the IRS.  More importantly, the warrant never authorized the seizure of a firearm for any purpose.  The agents' decision to seize the firearm and related evidence without judicial authorization demands suppression of this evidence.

### 3. *Inapplicability of the "plain view" exception to the warrant requirement*

The Supreme Court explained in *Horton v. California*, 496 U.S. 128 (1990) that, "[a]n example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character."  *Id*. at 135, *citing Go-Bart Importing Co. v. United States*, 282 U.S. 344, 358; *United States v. Lefkowitz*, 285 U.S. 452, 465; *Steele v. United States*, 267 U.S. 498; *Stanley v. Georgia*, 394 U.S. 557, 571 (Stewart, J., *concurring in result*).  The Supreme Court determined that an "inadvertence" is not required for the government to invoke the "plain view" exception to the warrant requirement, as had been suggested by Justice Stewart in *Coolidge v. New Hampshire*, 496 U.S. 128 (1990).  *Id*. at 140.  However, the Court simplified the Fourth Amendment requirement:

> *if the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the  relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.*  Thus, in the case of a search incident to a lawful arrest, "if the police stray outside the scope of an authorized *Chimel* search they are already in violation of the Fourth Amendment, *and evidence so seized will be excluded.*"

14-cr-0388-MAA

1   *Ibid.*, (emphasis added).  The majority explained that, "JUSTICE WHITE's

2   dissenting opinion in *Coolidge* is instructive: 'Police with a warrant for a

3   rifle may search only places where rifles might be and must terminate the

4   search once the rifle is found.'"  *Id.* at 141.  Conversely, a search for tax and

5   business records should occur only in places where tax and business

6   records are found and must terminate when those records are seized.

7          In *Horton*, police applied for a search warrant based on a suspected

8   armed robbery of a coin dealer describing with particularity both the

9   firearms and proceeds of the robbery in the search warrant affidavit.  *Id.* at

10  130-131.  The warrant, however, only listed the proceeds of the robbery and

11  made no mention of the firearms.  *Id.* at 131.  The officer searched the

12  residence and located in plain view the firearms, stun guns, a handcuff key,

13  and a brochure for the Coin Club, but not the proceeds of the robbery.  *Id.*

14  at 131.  The Supreme Court explained that, "the scope of the search was not

15  enlarged in the slightest by the omission of any reference to the weapons in

16  the warrant. . . .  He had probable cause, not only to obtain a warrant to

17  search for the stolen property, but also to believe that the weapons and

18  handguns had  been used in the crime he was investigating."  *Id.* at 141.

19         By contrast, the Search Warrant in this case authorized government

20  agents to search for and seize evidence of a conspiracy to defraud the

21  Internal Revenue Service, including corporate, tax, and financial records,

22  as well as immigration documents, specific communications and electronic

23  media, and documents evidencing dominion and control for Mr. Azano

24  and his businesses.  [Dkt. 760-2, Exhibit C, EM_PLDGS_00002004—

25  00002014.]  As detailed in a separate *Motion to Suppress Statement*

26  (docket entry number 760) filed by Mr. Azano, the unwarned statement

27  concerning the firearm was unlawfully obtained in violation of *Miranda v.*

28  *Arizona*, 384 U.S. 436 (1966) and should be suppressed.  Moreover, none

8

of the sixteen federal agents applied for a "piggyback warrant" authorizing the seizure of the firearm once it was removed from a locked cabinet in the closet of the master bedroom.

This is not a case similar to *Coolidge* or *Horton* where the officers seized evidence that clearly could have been involved in the respective investigations that were the subject of the search warrants. *Coolidge* involved firearms, clothing, vehicles, and even gunpowder vacuumed from the car's interior as part of a murder investigation.  403 U.S at 447-448. *Horton* involved weapons used in the robbery of a coin dealer, as well as proceeds of that robbery.  496 U.S. at 130-131.

By contrast, the search warrant for Mr. Azano's residence generally described tax crimes and never mentioned firearms.  Moreover, the agents directed Mr. Azano to take them to the location of the firearm, and his wife had to retrieve the key to unlock the cabinet.  This could not be described as a "protective sweep" because both occupants of the house were brought from the lower level to the upstairs master bedroom where the firearm was stored, and were tasked with assisting the agents with locating the firearm and unlocking the cabinet in the closet.  It strains credibility to suggest that evidence of tax crimes would be found in a locked cabinet of a master bedroom inside a gray handgun case.  [Dkt. 760-2, Exhibit A, pg. 140.]  In sum, the firearm and related items were not in "plain view," and this exception to the warrant requirement cannot be invoked to justify this illegal search.

**4. *Suppression of the firearm and all related materials***

The Fifth Circuit explained three purposes for suppressing evidence illegally obtained during the execution of a general search warrant in *Cook*.

First, it erects a deterrent to illegal searches.  Second, the court prohibits the Government from benefiting from its own wrong

9

14-cr-0388-MAA

by using the illegally seized evidence to convict.  Third, by removing illegally obtained evidence from the courtroom, the court precludes itself from serving as an accomplice in the violation of the Constitution.

*Id.* at 734.

Here, there the search warrant materials authorizing the search of the residence at 1 Buccaneer Way for evidence of tax crimes never once referenced a firearm or related material.  The application never suggested that Mr. Azano was believed to have somehow committed a tax crime with the firearm in question.  The government failed to obtain a "piggyback warrant" after discovering the firearm in a locked cabinet in the master bedroom.  Instead, sixteen federal agents opted to seize the firearm and related materials without any sort of judicial authorization whatsoever.  As noted nearly a century ago in *Marron*, *supra*, "[a]s to what is to be taken, ***nothing is left to the discretion of the officer executing the warrant***."  275 U.S. at 196 (emphasis added).   Suppression of the firearm and related materials is the appropriate remedy under the circumstances.

## V.
## REQUEST FOR A HEARING TO ADDRESS ISSUES CONCERNING THE SEIZURE OF THE FIREARM AND RELATED MATERIALS

The government violated the Fourth Amendment by seizing evidence far beyond the scope of the tax crimes under investigation, and not explicitly authorized by a neutral and detached magistrate.  An evidentiary hearing is necessary––particularly without any reports written contemporaneously by FBI Agents Gerald Cook and Omar Meisel––to determine how the agents got to the firearm and related materials, the condition and circumstances that they found these materials, and to determine if the firearm and related materials were in "plain view."  These

14-cr-0388-MAA

factual determinations are essential to evaluate whether the government complied with the strict requirements of the Fourth Amendment and the search warrant authorized by the neutral and detached magistrate.

## VI.
## CONCLUSION

For the foregoing reasons, this Court should grant the above motion.

Dated: July 17, 2017                          Respectfully submitted,

                                              /s/ *Knut S. Johnson*
                                              Knut S. Johnson
                                              for Jose Susumo Azano Matsura

14-cr-0388-MAA